Carolyn J. Fairless (admitted *pro hac vice*)
Jennifer J. Oxley (admitted *pro hac vice*)
Nicholas J. Steverson (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email: fairless@wtotrial.com
        oxley@wtotrial.com
        steverson@wtotrial.com

John D. Munding
Munding, P.S.
309 E. Farwell Road, Suite 310
Spokane, WA  99218
Telephone: 509.590.3849
Email: john@mundinglaw.com

Hon. Whitman L. Holt

Attorneys for Defendant Perkins Coie LLP

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>ICAP ENTERPRISES, INC., *et al.*<br><br>         Debtors.<br>_____<br><br>Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,<br><br>   Plaintiffs,<br><br>v.<br><br>Perkins Coie LLP, a Washington limited liability partnership,<br><br>   Defendant. | Chapter 11<br><br>Lead Case No. 23-01243-WLH11 (Jointly Administered)<br><br>Adv. Case No. 25-80084-WLH<br><br><br>**MOTION FOR LEAVE TO APPEAL ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>**[Related to ECFs 18, 27, 30, 38, 43, 45, & 48]** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................2

    A.    The Christensens allegedly ran iCap as a Ponzi scheme. ..........................2

    B.    iCap declared bankruptcy and Plaintiffs sued Perkins..........................2

    C.    Perkins moved to dismiss Plaintiffs' Complaint.........................................3

        1.    There is no "close nexus" with the Plan. .........................................4

        2.    Plaintiffs cited two cases from within the Ninth Circuit— one of which doesn't apply, and one of which is wrong. ...............5

    D.    Chief Judge Holt found jurisdiction but acknowledged that the Ninth Circuit has not answered the question presented. ...........................6

QUESTION PRESENTED..................................................................................................7

RELIEF SOUGHT.........................................................................................................7

BASIS FOR RELIEF ......................................................................................................7

    A.    There is substantial ground for disagreement. .............................................8

    B.    An immediate appeal will materially advance this case. .........................10

CONCLUSION.............................................................................................................10

Motion for Leave to Appeal Order
Page - i

# TABLE OF AUTHORITIES[1]

**CASES**

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ................................................................. 4, 6, 8

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011) ................................................................................. 10

*In re Bergeron*,
  No. C24-1682 MJP, 2025 WL 1167929
  (W.D. Wash. Apr. 22, 2025) ....................................................................... 7

*In re Consol. Meridian Funds*,
  485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................................. 6, 7, 9

*In re Consol. Meridian Funds*,
  511 B.R. 140 (W.D. Wash. 2014) ............................................................ 5, 9

*In re Heller Ehrman LLP*,
  461 B.R. 606 (Bankr. N.D. Cal. 2011) ........................................................ 5

*In re Int'l Mfg. Grp., Inc.*,
  574 B.R. 717 (Bankr. E.D. Cal. 2017) ..................................................... 5, 9

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2005) ............................................................... 4, 6, 8

*In re Price*,
  79 B.R. 888 (BAP 9th Cir. 1987) ......................................................... 7, 8, 10

*In re Ray*,
  624 F.3d 1124 (9th Cir. 2010) ............................................................. 1, 3, 4, 8

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) .................................................................... 4, 9

*In re The Fairchild Corp.*,
  452 B.R. 525 (Bankr. D. Del. 2011) ........................................................... 5

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) .................................................................... 2

*In re Wilshire Courtyard*,
  729 F.3d 1279 (9th Cir. 2013) .................................................................... 4

*ML Serv. Co., Inc. v. Greenberg Traurig, LLP*,
  No. CV11-0832-PHX DGC, 2011 WL 3320916
  (D. Ariz. Aug. 2, 2011) ........................................................................... 5, 8

---

[1] The unpublished cases cited in this motion are attached as Exhibit F, pursuant to LCivR 7(g)(2).

*VHS Liquidating Tr. v. Blue Cross of Cal.*,
No. 21-4034, 2021 WL 11134503
(Bankr. N.D. Cal. Nov. 22, 2021).................................................................1, 5, 8, 9

**STATUTES**

28 U.S.C. § 1292 .................................................................................................7

28 U.S.C. § 1334 .........................................................................................passim

28 U.S.C. § 158 ..........................................................................................2, 7, 10

**RULES**

Fed. R. Bankr. P. 8002 .......................................................................................2

Fed. R. Bankr. P. 8003 .......................................................................................7

Fed. R. Bankr. P. 8004 ................................................................................2, 7, 10

Fed. R. Bankr. P. 8006 .......................................................................................2

Motion for Leave to Appeal Order
Page - iii

## INTRODUCTION

This case concerns legal services that Perkins Coie LLP ("Perkins") provided years ago to now-bankrupt real estate funds, which Plaintiffs claim operated as a Ponzi scheme. Plaintiffs (who have obtained assignments of claims from hundreds of non-party investors in the funds) allege that Perkins "aided and abetted" this scheme by providing routine legal services to some of the funds. And Plaintiffs claim that they can bring the investors' state-law claims in federal court—even though the investors themselves could not have done so—simply because the claims were assigned to Plaintiffs after the confirmation of the funds' bankruptcy plan. Yet Plaintiffs fail to show how the investors' assigned state-law claims, which existed before the bankruptcy and raise no questions of bankruptcy law, fall within the jurisdiction of federal courts.

Plaintiffs cite only one basis for jurisdiction: 28 U.S.C. § 1334(b). But the Ninth Circuit has held that jurisdiction under § 1334(b) *shrinks* after the confirmation of a bankruptcy plan. There is no post-confirmation jurisdiction when the claims "could have existed entirely apart from the bankruptcy proceeding"—like the Plaintiffs' state-law claims. *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010). Thus, courts within the Ninth Circuit have repeatedly held that there is no post-confirmation jurisdiction under § 1334(b) over claims that pre-existed a bankruptcy, even when the claims are assigned to a liquidating trust under the bankruptcy plan. *E.g.*, *VHS Liquidating Tr. v. Blue Cross of Cal.*, No. 21-4034, 2021 WL 11134503, at *6 (Bankr. N.D. Cal. Nov. 22, 2021).

The Bankruptcy Court (Hon. Whitman Holt) split with that precedent and denied Perkins' motion to dismiss for lack of subject-matter jurisdiction. (Order [ECF 38], attached as **Ex. A**, at ¶ 1.) Still, Chief Judge Holt recognized that the Ninth Circuit could conclude that the sole decision he relied on was "wrong" and that Perkins has raised plausible arguments that there is no jurisdiction here. Thus, an interlocutory appeal of the Order is warranted. As Chief Judge Holt recognized, his Order involves a question of law as to which there is substantial ground for difference of opinion, and an

Motion for Leave to Appeal Order
Page - 1

immediate appeal could end this case now. Perkins therefore asks the District Court to permit an appeal under 28 U.S.C. § 158 and Fed. R. Bankr. P. 8004.[2]

**BACKGROUND**[3]

### A.    The Christensens allegedly ran iCap as a Ponzi scheme.

Chris and Jim Christensen founded iCap Enterprises, Inc. in 2007. (Compl. ¶ 11.) They later formed other companies under its umbrella (together, "iCap"), which they used to solicit investments in real estate. (*Id.* ¶ 12.) Plaintiffs claim, however, that the Christensens began to secretly operate iCap as a Ponzi scheme in 2013. (*Id.* ¶ 1.)

Plaintiffs allege that Perkins provided legal services to iCap, including drafting documents for some of its funds. (*Id.* ¶¶ 92–94.) They also allege that, by 2017, Perkins knew some of the funds had not performed and advised iCap about the extension of those funds' maturity dates (including advising iCap about disclosures to investors). (*Id.* ¶¶ 117–27, 137–42.) In 2019, Perkins learned that iCap had ignored its advice and told Chris Christensen that he could authorize Perkins to tell iCap's auditors or the firm would cease further communications with the auditors. (*Id.* ¶ 148). After that, Perkins only provided unspecified litigation and intellectual property advice to iCap. (*Id.* ¶ 157.)

### B.    iCap declared bankruptcy and Plaintiffs sued Perkins.

iCap filed for bankruptcy on September 29, 2023. (*Id.* ¶ 77.) And on October 9, 2024, iCap and the bankruptcy's Official Committee of Unsecured Creditors jointly proposed a liquidation plan (the "Plan"). (*Id.* ¶¶ 4, 77.) Chief Judge Holt confirmed the

---

[2] This appeal is timely, as Chief Judge Holt granted a motion to extend the time for filing a notice of appeal to July 21, 2026 (as allowed by Fed. R. Bankr. P. 8002). (*See* Order Granting Stip. Motion [ECF 43] (July 2, 2026), attached as **Ex. B**.) Perkins has also asked Chief Judge Holt to certify his Order for direct appeal to the Ninth Circuit under Fed. R. Bankr. P. 8006 and 28 U.S.C. § 158(d)(2)(A). That rule requires Perkins to simultaneously pursue this appeal. Fed. R. Bankr. P. 8006(a) (a certification of a bankruptcy court's order for Ninth Circuit review does not become effective unless the appellant also appeals to the District Court). Interlocutory review of the Order is equally appropriate in the District Court if the Ninth Circuit does not accept immediate review.

[3] Plaintiffs' allegations (which Perkins disputes) are presented as true solely for Perkins' motion to dismiss. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Motion for Leave to Appeal Order
Page - 2

Plan on October 18, 2024 (the "Confirmation Order"). (*Id.* ¶ 4.)[4] The Plan and Confirmation Order incorporated the iCap Trust Agreement, under which the iCap Trust was formed to pursue recoveries on behalf of individual investors in iCap. (*Id.* ¶¶ 5–7; Ex. D, Confirmation Order, ¶ 107; Plan, Ex. C, Arts. V.D and F.) Individual investors may assign their claims related to iCap, including "[c]laims against third parties that aided and abetted [iCap's] conduct," to the Trust. (Plan, Ex. C, Art. I.A.28–29, Art. V.F.3.e.) Plaintiffs allege that "a substantial majority" of individual investors in iCap have since assigned their claims against third parties to the Trust. (Compl. ¶ 7.)

On September 26, 2025, Plaintiffs sued Perkins. Plaintiffs brought ***only*** claims that former investors in iCap assigned to them. (*Id.* ¶ 5.) On behalf of those unnamed investors, Plaintiffs raised ***only*** state-law tort claims: a claim that Perkins aided and abetted iCap's alleged fraud, and a claim that Perkins aided and abetted the Christensens' alleged breach of fiduciary duty. (*Id.* ¶¶ 5, 165–79.) The claims are each based on iCap's pre-bankruptcy conduct. (*See, e.g., id.* ¶ 1 (alleging that the iCap Ponzi scheme ended in July 2023).) Likewise, all of Perkins' alleged conduct occurred before the entry of the Confirmed Plan. (*See, e.g., id.* ¶ 12.)

## C.    Perkins moved to dismiss Plaintiffs' Complaint.

Plaintiffs cited one basis for federal jurisdiction over their state-law claims: 28 U.S.C. § 1334(b). That statute provides that federal courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). State-law claims do not "arise under" the Bankruptcy Code or "arise in" a bankruptcy proceeding—so those provisions of § 1334(b) cannot establish jurisdiction here, and Plaintiffs did not argue otherwise. *See Ray*, 624 F.3d at 1132–33. Because the remaining provision of § 1334(b) (for cases "related to" a bankruptcy) does not apply either, Perkins moved to dismiss for lack of subject-matter jurisdiction.

---

[4] The Plan and Confirmation Order were filed in Lead Case No. 23-01243-WLH11, in the United States Bankruptcy Court for the Eastern District of Washington, at ECF Nos. 1360 and 1414 respectively. The Plan and Confirmation Order are attached as **Exs. C and D**, respectively.

Motion for Leave to Appeal Order
Page - 3

     1.  *There is no "close nexus" with the Plan.*

Post-confirmation jurisdiction over proceedings "related to" a bankruptcy case is "necessarily more limited than pre-confirmation jurisdiction." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). For jurisdiction to exist in a post-confirmation case, there must be a "close nexus" between the claims and the bankruptcy plan. *Id.* And only claims that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan" have the requisite "close nexus." *Id.* (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004)).

In contrast, there is no "close nexus" between a plan and a claim "that could have existed entirely apart from the bankruptcy proceeding and [does] not necessarily depend upon resolution of a substantial question of bankruptcy law." *Ray*, 624 F.3d at 1135. For jurisdiction to exist after the confirmation of a bankruptcy plan, the plaintiff's claim must require the "resolution of disputes over ***the meaning of the plan's terms***," and not "merely the application of the plan's plain or undisputed language." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 762 (9th Cir. 2022) (emphasis added). The dispute must concern the manner in which ***the plan itself*** should be interpreted; it is not enough that the court may need to refer to the plan sometime during the case. *Id.*

Every Ninth Circuit case on this issue has drawn the same line: Post-confirmation jurisdiction under § 1334(b) ***exists*** over claims that involve the contested interpretation of the plan's terms, but it ***does not exist*** over disputes that involve no such interpretation. *Compare In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013) (there was jurisdiction under § 1334(b) over claim that transactions made under the plan were "sales" for tax purposes, when interpretation of the plan was "essential to classifying the character of the transaction"), *and Pegasus Gold Corp.*, 394 F.3d at 1194 (there was "related to" jurisdiction over a claim that the defendant breached agreements in the plan itself), *with Ray*, 624 F.3d at 1135 (there was no jurisdiction over a "breach of contract action that could have existed entirely apart from the bankruptcy proceeding").

Motion for Leave to Appeal Order
Page - 4

Thus, Ninth Circuit trial courts have repeatedly held there is no "related to" jurisdiction over state-law claims that existed before the bankruptcy—even if the claims were assigned to a liquidating trust under the bankruptcy plan. *VHS Liquidating Tr.*, 2021 WL 11134503, at *6 (there was no jurisdiction over claims assigned to a liquidating trust under plan); *ML Serv. Co., Inc. v. Greenberg Traurig, LLP*, No. CV11-0832-PHX DGC, 2011 WL 3320916, at *2 (D. Ariz. Aug. 2, 2011) (there was no "related to" jurisdiction over claim against debtor's attorneys when the court would not "be required to interpret the bankruptcy plan in order to resolve Plaintiffs' claims"); *In re Int'l Mfg. Grp., Inc.*, 574 B.R. 717, 719–20 (Bankr. E.D. Cal. 2017) (there was no jurisdiction over claims that would "have no impact on the interpretation, implementation, consummation, execution, or administration of the confirmed liquidation plan"). As those courts have explained, state-law claims that existed before the bankruptcy—like Plaintiffs' claims—do not "create a bonafide dispute that requires [the] court to 'interpret' the Plan." *VHS Liquidating Tr.*, 2021 WL 11134503, at *6; *In re Heller Ehrman LLP*, 461 B.R. 606, 610 (Bankr. N.D. Cal. 2011) ("claims based on pre-petition conduct that were asserted post-confirmation, but could have been brought prior to confirmation lack a nexus sufficient to confer jurisdiction upon the bankruptcy court" (quoting *In re The Fairchild Corp.*, 452 B.R. 525, 531 (Bankr. D. Del. 2011))).

> 2. *Plaintiffs cited two cases from within the Ninth Circuit—one of which doesn't apply, and one of which is wrong.*

In response, Plaintiffs cited only two cases from within the Ninth Circuit. **First**, Plaintiffs cited *In re Consol. Meridian Funds*, 511 B.R. 140 (W.D. Wash. 2014) ("*Berg*"). In *Berg*, Judge Robert Lasnik ruled that there was a "close nexus" between the bankruptcy plan and claims against the operator of a Ponzi scheme—but only because the claims were specifically described in the plan and required the court to interpret the plan. *See id.* at 148–49. As other courts have recognized, *Berg* does not apply when (as here) the claims are **generically** mentioned in the plan. *VHS Liquidating*

Motion for Leave to Appeal Order
Page - 5

*Tr.*, 2021 WL 11134503, at *6. And Plaintiffs failed to identify (in briefing or argument) any term of the Plan that the fact-finder will need to interpret to resolve their claims.

**Second**, Plaintiffs cited *In re Consol. Meridian Funds*, 485 B.R. 604 (Bankr. W.D. Wash. 2013) ("*Zions Bancorporation*"). There, Judge Karen Overstreet found jurisdiction under § 1334(b) solely because it would be more convenient for a liquidating trustee to litigate in bankruptcy court. *See id.* at 614–15. But that's wrong—the Ninth Circuit has stated that jurisdiction cannot exist solely "because the action could conceivably increase the recovery to the creditors." *Pegasus Gold Corp.*, 394 F.3d at 1194 n.1. And Plaintiffs made no effort to reconcile Judge Overstreet's jurisdictional ruling with binding Ninth Circuit precedent, which requires a merits dispute over the terms of the Plan itself. *See Chevron Corp.*, 32 F.4th at 762.

> **D.    Chief Judge Holt found jurisdiction but acknowledged that the Ninth Circuit has not answered the question presented.**

Chief Judge Holt held a hearing on Perkins's motion to dismiss, where he recognized that "the Ninth Circuit has not spoken directly on this issue." (Hrg. Tr. (June 18, 2026) [ECF 45], attached as **Ex. E**, at 113:24–114:3.) He also asked Plaintiffs whether the Plan specifically referenced the claims against Perkins. (*Id.* at 101:18–102:13.) Plaintiffs had no answer and could only point to generic references in the Plan to the contribution of claims against third parties. (*Id.* at 102:14–103:6; 110:14-17.)

Still, Chief Judge Holt concluded that there was subject-matter jurisdiction. (*Id.* at 110:22-23.) He reasoned that litigation by the iCap Trust "implements, executes, or consummates the plan" because the provisions of the Plan regarding the iCap Trust fall within Article V of the Plan, which is entitled "Implementation of the Plan." (*Id.* at 111:3-14.) He further reasoned that "retaining recoveries and [distributing] them to investors is how this particular plan will be consummated." (*Id.* at 112:2-4.) Last, he reasoned that "at some point it may be necessary for the Court to either interpret the plan or the Confirmation Order, including which specific investors have standing and

Motion for Leave to Appeal Order
Page - 6

whether these particular claims were contributed claims." (*Id.* at 112:17-25.) He primarily relied on Judge Overstreet's order in *Zions Bancorporation*. (*Id.* at 112:4-10.)

Chief Judge Holt recognized, though, that Perkins's jurisdictional arguments were colorable. (*Id.* at 112:4-13.) He noted that the Ninth Circuit could plausibly conclude that the jurisdictional ruling in *Zions Bancorporation* was wrong. (*Id.* at 113:25–114:3.) And Chief Judge Holt acknowledged that because a dispute over the contribution of claims "has not been raised here," "there's a little bit of bootstrapping [into] jurisdiction because . . . the possibility that there will be a dispute with standing, in and of itself, can't create subject matter jurisdiction." (*Id.* at 113:5-23.) After Chief Judge Holt concluded that there was jurisdiction, he proceeded to dismiss Plaintiffs' claim for aiding and abetting breach of fiduciary duty but deny Perkins's motion to dismiss the remaining claim for aiding and abetting fraud.[5] (*Id.* at 114:8–117:11.)

## QUESTION PRESENTED

Is there federal subject-matter jurisdiction over this post-confirmation adversary case under 28 U.S.C. § 1334, when Plaintiffs bring only state-law claims that existed before the bankruptcy, but which third party investors assigned to Plaintiffs?

## RELIEF SOUGHT

Perkins asks that the District Court grant leave to appeal the Order and answer the Question Presented in the negative.

## BASIS FOR RELIEF

Under 28 U.S.C. § 158, the District Court may grant leave to appeal from an interlocutory order of the Bankruptcy Court. 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004(a). When determining whether to grant leave, courts apply the analogous standard for appeals under 28 U.S.C. § 1292(b). *In re Price*, 79 B.R. 888, 889 (BAP 9th Cir. 1987); *In re Bergeron*, No. C24-1682 MJP, 2025 WL 1167929, at *1 (W.D. Wash. Apr. 22, 2025) ("In deciding whether to grant leave to appeal under Section 158(a)(3), courts

---

[5] This appeal is limited to Chief Judge Holt's ruling that there is subject-matter jurisdiction here. *See* Fed. R. Bankr. P. 8003(a)(6).

Motion for Leave to Appeal Order
Page - 7

look to the analogous provisions of [§ 1292(b)] governing review of interlocutory district court orders by the courts of appeal."). Thus, leave should be given when the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation." *Price*, 79 B.R. at 889. Both circumstances weigh in favor of an immediate appeal here.

### A.    There is substantial ground for disagreement.

The Ninth Circuit has considered the scope of 28 U.S.C. § 1334(b) following the confirmation of a bankruptcy plan. *See, e.g.*, *Ray*, 624 F.3d at 1135; *Chevron Corp.*, 32 F.4th at 762. But as Chief Judge Holt acknowledged during his hearing on Perkins' motion to dismiss, "the Ninth Circuit has not spoken directly on [the] issue" here— whether post-confirmation jurisdiction under § 1334(b) extends to state-law claims assigned to a liquidating trust under the bankruptcy plan. (Ex. E at 113:24-25.)

Ninth Circuit precedent suggests that § 1334(b) does ***not*** extend to such claims. The Ninth Circuit has repeatedly said that post-confirmation jurisdiction requires a merits dispute over the terms of the confirmed bankruptcy plan—for instance, a claim that the trustee breached the plan. *See, e.g.*, *Pegasus Gold Corp.*, 394 F.3d at 1194 (there was "related to" jurisdiction over a claim that the defendant breached agreements memorialized in the confirmed plan). And the Ninth Circuit has repeatedly held that there is ***no*** post-confirmation jurisdiction over claims that do not involve such a dispute. *See, e.g.*, *Chevron Corp.*, 32 F.4th at 762. Yet trial courts within the Ninth Circuit have disagreed over which rule applies in a case like this—where the plaintiff's claims existed before the bankruptcy, but were assigned to the plaintiff under the plan. Lower courts considering this issue have given three answers.

Most have ruled that there is no post-confirmation jurisdiction under § 1334(b) over state-law claims like Plaintiffs' claims, even if they are assigned to a liquidation trust. *E.g.*, *VHS Liquidating Tr.*, 2021 WL 11134503, at *6; *ML Serv. Co., Inc.*, 2011

Motion for Leave to Appeal Order
Page - 8

WL 3320916, at *2; *Int'l Mfg. Grp., Inc.*, 574 B.R. at 719–20. Under those decisions, there would be no jurisdiction over this case because Plaintiffs' assigned, state-law claims existed before the bankruptcy, do not depend on a dispute over the meaning of the plan's terms, and do not depend on a substantial question of bankruptcy law.

One court has ruled that there may be jurisdiction over such claims, but only if the claims were specifically negotiated in the formation of the plan and appear in disclosure statements in the underlying bankruptcy. *Berg*, 511 B.R. at 148–49. The *Berg* court's ruling does not apply when the claims are instead ***generically*** described in the plan—which is the case here. *VHS Liquidating Tr.*, 2021 WL 11134503, at *6. During Chief Judge Holt's hearing, Plaintiffs' counsel could not point to ***any*** specific reference to Perkins in the Plan or disclosure statements in the underlying bankruptcy. (Ex. E at 102:14–103:6; 110:14-17.) So *Berg* does not allow for subject matter jurisdiction here.

Plaintiffs have cited only one decision where a court within the Ninth Circuit ruled that § 1334(b) applies to claims like Plaintiffs' claims: *Zions Bancorporation*, 485 B.R. at 614–15. When Chief Judge Holt made his ruling, he found that decision persuasive—but recognized that the Ninth Circuit may decide that *Zions Bancorporation*'s jurisdictional ruling was wrong. (Ex. E at 113:24–114:3.) And the jurisdictional ruling in *Zions Bancorporation* ***is*** wrong, because it would allow for post-confirmation jurisdiction in ***any case*** where the plan allows for the assignment of claims to a liquidating trust. Parties cannot "'write their own jurisdictional ticket' by simply declaring in the Plan that the bankruptcy court has jurisdiction." *Berg*, 511 B.R. at 145 (quoting *Resorts Int'l*, 372 F.3d at 161). Nor can Plaintiffs do so by baking the assignment of investors' claims into the Plan. Those claims existed before the iCap bankruptcy, existed before the Plan, and could have been brought even if the Plan had never existed; the assignment of the claims to a new owner does not change anything.

Because courts have reached conflicting decisions when answering the Question Presented—and because Chief Judge Holt himself recognized that there is substantial

Motion for Leave to Appeal Order
Page - 9

ground for disagreement as to the Question Presented—the District Court should grant leave to appeal from his Order. 28 U.S.C. § 158(a)(3); *Price*, 79 B.R. at 889.

**B.    An immediate appeal will materially advance this case.**

Parties cannot waive objections to subject-matter jurisdiction. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). And courts have a continuing obligation to assess whether they have subject-matter jurisdiction—even after years of discovery, a verdict, or a judgment. *Id.* Failing to do so now may "result in the waste of judicial resources," because "many months of work on the part of the attorneys and the court may be wasted" if a court later decides there is no jurisdiction. *Id.* at 434–35. As things stand, Plaintiffs and Perkins will spend years litigating this case, which involves the assigned claims of hundreds of individual investors. The parties will then need to try those claims in the District Court, at significant cost to the parties, the Court, and the public. Absent a permissive appeal, the District Court will not have an opportunity to decide whether subject-matter jurisdiction exists until then—even though jurisdiction is a threshold issue. If the District Court (or the Ninth Circuit) disagrees with the Order years from now, years of work will be wasted at significant expense to the parties, the judiciary, and the public. There is no need to incur that waste, particularly given that no discovery is necessary to answer this foundational question. Instead, the District Court should grant leave for an immediate appeal under § 158(a)(3), materially advancing the end of the case without the need for years of wasteful litigation. *Price*, 79 B.R. at 889.

**CONCLUSION**

As Chief Judge Holt recognized, there are plausible arguments that subject-matter jurisdiction is lacking here—and other courts could disagree with his ruling that it exists. The threshold issue of subject-matter jurisdiction should be finally resolved now—not years from now, after years of litigation and millions of dollars in fees and costs. Thus, Perkins respectfully asks that the District Court grant leave to appeal Judge Holt's Order under 28 U.S.C. § 158(a)(3) and Fed R. Bankr. P. 8004.

Dated:  July 21, 2026

By:   */s/ John D. Munding*

John D. Munding (WSBA # 21734)
Munding, P.S.
309 E. Farwell Road, Suite 310
Spokane, WA  99218
Telephone: 509.590.3849
Email: john@mundinglaw.com


And:  */s/ Nicholas J. Steverson*

Carolyn J. Fairless (admitted *pro hac vice*)
Jennifer J. Oxley (admitted *pro hac vice*)
Nicholas J. Steverson (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:   303.244.1879
Email: fairless@wtotrial.com
oxley@wtotrial.com
steverson@wtotrial.com

*Attorneys for Defendant Perkins Coie LLP*

Motion for Leave to Appeal Order
Page - 11

<u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on July 21, 2026, I electronically filed the above **MOTION FOR LEAVE TO APPEAL ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties, including Plaintiffs' counsel, through the Court's Electronic Case Filing System. Parties may access this filing through the Court's ECF system.

_/s/ Nicholas J. Steverson_

# Exhibit A

**Dated: June 23rd, 2026**

**Whitman L. Holt**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| iCAP ENTERPRISES INC., *et al.*, | |
| Debtors. | Lead Case No. 23-01243-WLH11 |
| | Jointly Administered |
| Lance Miller and Seth Freeman as Co-Trustees for the iCap Trust, | Adv. Pro. No. 25-80084-WLH |
| Plaintiffs, | **ORDER ON PERKINS COIE LLP'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM** |
| v. | |
| Perkins Coie LLP, a Washington limited liability partnership, | |
| Defendant. | [Related to ECF 1, 18, 27 & 30] |

4937-0781-7398.1 39502.00002

CLASSIFICATION: RESTRICTED

THIS MATTER came before the court upon *Perkins Coie LLP's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (the "Motion") (ECF No. 18).  The court has reviewed the Motion, the Trustees' opposition to the Motion (ECF No. 27), Perkins Coie's reply thereto (ECF No. 30), and the record and files in this case and heard argument on the Motion and it is ~~hereby~~:

ORDERED that, for the reasons recited on the record at the hearing on the Motion held on June 18, 2026:

1.    The Motion [ECF No. 18] is denied in part with respect to Perkins Coie's request for dismissal of the Complaint under Fed. R. Civ. P. Rule 12(b)(1).  The court finds that it has subject matter jurisdiction over this adversary proceeding over Perkins Coie's objections, which are preserved.

2.    The Motion is denied in part with respect to Perkins Coie's request for dismissal of the First Cause of Action of the Complaint (Aiding and Abetting Fraud) under Fed. R. Civ. P. Rule 12(b)(6).

3.    The Motion is granted in part with respect to Perkins Coie's request for dismissal of the Second Cause of Action of the Complaint (Aiding and Abetting Breach of Fiduciary Duty) under Fed. R. Civ. P. Rule 12(b)(6), with leave to amend.

4.    The Trustees' deadline for filing any amended complaint is July 17, 2026.

5.    Perkins Coie will respond to either the amended complaint (or, if the Trustees elect to proceed without amendment, to the original Complaint (ECF No. 1)) by July 31, 2026.

4937-0781-7398.1 39502.00002
ORDER ON PERKINS COIE LLP'S
MOTION TO DISMISS COMPLAINT
Page - 1

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067
Telephone: (310) 277-6910

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

CLASSIFICATION: RESTRICTED

~~##END OF ORDER##~~///End of Order///

~~PRESENTED BY~~Presented by:

BUSH KORNFELD LLP


*/s/ Jason Edward Wax*
JASON EDWARD WAX (WSBA #41944)
BUSH KORNFELD LLP

ALAN J. KORNFELD (admitted *Pro Hac Vice*)
JEFFREY W. DULBERG (admitted *Pro Hac Vice*)
JAMES W. WALKER (admitted *Pro Hac Vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Plaintiffs, Lance Miller and*
*Seth Freeman as Co-Trustees for the iCap Trust*


MUNDING, P.S.


*/s/ John D. Munding*
JOHN D. MUNDING (WSBA #21650)
MUNDING, P.S.

CAROLYN J. FAIRLESS (admitted *Pro Hac Vice*)
JENNIFER J. OXLEY (admitted *Pro Hac Vice*)
NICHOLAS J. STEVERSON (admitted *Pro Hac Vice*)
WHEELER TRIGG O'DONNELL LLP

*Attorneys for Defendant, Perkins Coie LLP*

* Changes made by court

4937-0781-7398.1 39502.00002
ORDER ON PERKINS COIE LLP'S
MOTION TO DISMISS COMPLAINT
Page - 2

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067
Telephone: (310) 277-6910

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

# Exhibit B

**Dated: July 2nd, 2026**

Whitman L. Holt
Bankruptcy Judge

<span style="color:red">* TEXT REDACTED IN AREA RESERVED FOR COURT USE PER LBR 9013-1(c)(2)(A)</span>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>ICAP ENTERPRISES, INC., *et al.*<br><br>              Debtors. | Chapter 11<br><br>Lead Case No. 23-01243-WLH11<br>(Jointly Administered) |
| Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,<br><br>     Plaintiffs,<br><br>v.<br><br>Perkins Coie LLP, a Washington limited liability partnership,<br><br>     Defendant. | Adv. <span style="color:red">Pro.</span> ~~Case~~ No. 25-80084-WLH<br><br><br>~~[PROPOSED]~~ ORDER GRANTING STIPULATED MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL AND MOTION FOR LEAVE UNDER FED. R. BANKR. P. 8002<br><br>[Related to ECF Nos. 38, 41] |

THIS MATTER came before the ~~C~~court upon the *Stipulated Motion for Extension of Time to File Notice of Appeal and Motion for Leave Under Fed. R. Bankr. P. 8002* (the "Stipulated Motion") [ECF No. 41]. The Stipulated Motion requests an extension of time to file a notice of appeal and motion for leave to appeal from the ~~C~~court's Order regarding Perkins Coie LLP's Motion to Dismiss for Lack of

Subject Matter Jurisdiction and Failure to State a Claim dated June 23, 2026 (the "Order") [ECF No. 38], pursuant to Fed. R. Bankr. P. 8002(d). Plaintiffs consent to the relief requested in the Stipulated Motion.

The Ccourt has reviewed the Stipulated Motion and the record and files in this case and finds good cause to order the requested relief. Therefore, it is:

ORDERED AS FOLLOWS:

1. The Stipulated Motion [ECF No. 41] is GRANTED.

2. The deadline for Perkins Coie LLP to file a notice of appeal and motion for leave to appeal from the Order under Fed. R. Bankr. P. 8002 is EXTENDED to July 21, 2026.

///End of Order///

Presented by:

/s/ Nicholas J. Steverson

Carolyn J. Fairless (admitted *pro hac vice*)
Jennifer J. Oxley (admitted *pro hac vice*)
Nicholas J. Steverson (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP

John D. Munding (WSBA #21650)
Munding, P.S.

*Attorneys for Defendant Perkins Coie LLP*


/s/ Jason E. Wax (per permission)

Jason Edward Wax (WSBA #41944)
Bush Kornfeld LLP

Alan J. Kornfeld (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
James W. Walker (admitted *pro hac vice*)
Cia H. Mackle (admitted *pro hac vice*)

*Attorneys for Plaintiffs, Lance Miller and Seth Freeman as Co-Trustees for the iCap Trust*

* Changes made by court

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0980–2 | User: notice | Date Created: 7/2/2026 |
| Case: 25–80084–WLH | Form ID: pdf002 | Total: 1 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| aty | Nicholas J. Steverson | c/o Wheeler Trigg O'Donnell LLP | 370 Seventeenth Street, Suite 4500 | Denver, CO 80202–5647 |

TOTAL: 1

# Exhibit C

HONORABLE WHITMAN L. HOLT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| In re | Chapter 11 |
|---|---|
| iCap ENTERPRISES, INC., *et al.*, | Lead Case No. 23-01243-WLH11 Jointly Administered |
| Debtors.[1] | SECOND MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF iCap ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## INTRODUCTION[2]

iCap Enterprises, Inc. and its affiliated debtors propose this Plan, which resolves the outstanding Claims and Equity Interests that have been asserted against the Debtors. The court has approved the Disclosure Statement filed by the Debtors and it contains a detailed discussion of the Debtors' historical operations and assets; a summary of this Plan; and a discussion of risk factors and uncertainties associated with the Plan that may impact both consummation of the Plan as well as any Distributions projected to be made under the Plan.

YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY TO DETERMINE HOW THEY MAY IMPACT YOUR CLAIM BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Definitions**

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules, as applicable. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    <u>Administrative Expense Claim</u>:  A Claim entitled to priority under Bankruptcy Code section 507(a)(2), including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in Bankruptcy Code section 503(b); (b) all Allowed Claims of Professional Persons pursuant to Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

2.    <u>Allowed Claim</u>:  Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the

---

[2] Capitalized terms in the Introduction have the meanings set forth in Article I below.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Chapter 11 Cases, or in the absence of such proof, as set forth in the Schedules filed in the Chapter 11 Cases, unless:

(i) with respect to a Scheduled Claim that is not otherwise the subject of a proof of Claim, such Claim has been (a) listed in the Schedules as disputed, contingent, or unliquidated or (b) objected to or is objected to after Confirmation, in which case such Claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court;

(ii) with respect to a Filed Claim, such Claim has been objected to or is objected to after Confirmation, in which case such claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court; or

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

3.    Available Cash: All Cash held by the Debtors on the Effective Date or by the iCap Trust on or after the Effective Date, after accounting for the Senior Claims Reserve and the Secured Claims Reserves. Available Cash shall be determined after payment, allocation, or reserve in accordance with the Plan for unpaid or unutilized amounts for iCap Trust Funding.

4.    Avoidance Actions:  Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

5.    Ballot:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot that is executed by the Holder of an Allowed Claim but that does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6.      Bankruptcy Code or Code:  The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

7.      Bankruptcy Court or Court:  The United States Bankruptcy Court for the Eastern District of Washington at Yakima, before which the Chapter 11 Cases are pending, or if that Court ceases to exercise jurisdiction over the Chapter 11 Cases, the Court that does exercise jurisdiction.

8.      Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court, as amended from time to time.

9.      Broker Settlement: Any settlement between the iCap Trust and any "broker," registered investment advisor, salesperson, consultant, affiliated entity, or professional who is not an Excluded Party and was involved in any way in the marketing or sale of any products offered by any of the Debtors.

10.      Business Day:  Any day except Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

11.      Case Closing Date: The date on which all Chapter 11 Cases have been closed.

12.      Cash:  Legal tender of the United States of America or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

13.      Causes of Action:  Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise, including any and all claims that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

constitute property of the Estates pursuant to Bankruptcy Code section 541. For the avoidance of doubt, "Causes of Action" include: (a) the right to object to Claims or Equity Interests; (b) any claim pursuant to Bankruptcy Code section 362; (c) any counterclaim or defense, including fraud, mistake, duress, usury, or recoupment; and (d) any Avoidance Actions.

14.    Chapter 11 Cases: The chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption In re iCap Enterprises, Inc., et al., Case No. 23-01243-WLH.

15.    Claim:  A claim as defined in Bankruptcy Code section 101(5).

16.    Claim Objection Deadline: The first Business Day that is on or before (a) the 180th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim, or (b) such later date as may be fixed in accordance with the terms of the Plan.

17.    Claims Agent: BMC Group, Inc., the Debtors' court-appointed claims, noticing, and balloting agent.

18.    Claims Bar Date: July 10, 2024, the deadline for filing proofs of Claim in the Chapter 11 Cases by non-Governmental Units, and March 27, 2024 for Governmental Units.

19.    Class:  A class of Claims or Equity Interests as defined in Article II of this Plan.

20.    Class A iCap Trust Interests: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims under the Plan.

21.    Class B iCap Trust Interests: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims under the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

22.    Collateral: Any Estate asset that is subject to a Lien to secure the payment or performance of an Allowed Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.

23.    Collateral Source Recoveries: Any recoveries from other sources (other than those pursuant to the Plan) that an Investor receives or has ever received on account of losses represented by its Investor Claim, including, without limitation, proceeds of insurance, litigation, or settlements.

24.    Confirmation:  The entry of the Confirmation Order by the Bankruptcy Court.

25.    Confirmation Hearing: The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a).

26.    Confirmation Order: The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

27.    Contingent Claim: Any Claim that is Scheduled or Filed as contingent.

28.    Contributed Claims: All Causes of Action that a Creditor has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, excluding any Individual Investor-Specific Claims.

29.    Contributing Claimants: The Creditors that elect on their Ballots to contribute Contributed Claims to the iCap Trust.

30.    Contributing Claimants Enhancement Multiplier: The Claim of a Contributing Claimant shall be multiplied by 1.10.

31.    Creditor:  A "creditor" within the meaning of Bankruptcy Code section 101(10).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80084-WLH11   Doc 936   Filed 07/02/26   Entered 07/02/26 15:26:45   Pg 6 of 69

32.     CRO: Lance Miller solely in his capacity as the Chief Restructuring Officer of the Debtors.

33.     D&O Insurance: All primary and excess insurance polices that provide coverage for the Debtors' former and current directors and officers, including any "tail" or "runoff" coverage for such policies.

34.     Debtor or Debtors:  Individually and collectively, iCap Enterprises, Inc., and each of the entities listed in footnote 1 on page 1 of this Plan.

35.     DIP Parties: The banks and other financial institutions party to the Supplemental DIP Credit Agreement from time to time, in their capacities as lenders thereunder.

36.     Disclosure Statement: That certain disclosure statement relating to the Plan, including all referenced exhibits and schedules, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Plan Proponents.

37.     Disputed Claim:  With respect to a Scheduled Claim, a Claim that (a) was listed in a Debtor's Schedules as "disputed," and that has not subsequently been Allowed or (b) is the subject of a timely Filed objection that has not been resolved. With respect to a Filed Claim, a Claim that is the subject of a timely Filed objection that has not been resolved.

38.     Distribution: Any payment or transfer of consideration made pursuant to the Plan or the iCap Trust Agreement.

39.     Distribution Agent: (i) The persons or entities serving as the iCap Trustees, but solely in their separate capacity as distribution agent under the Plan with respect to Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Claims in Classes 1 and 2 on account of such Allowed Claims, or (ii) any party designated by the iCap Trustees to serve in such capacity.

40.     Distribution Date: The date on which the iCap Trustees determine, in their sole discretion, to make a Distribution.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-01243-WLH11   Doc 1936   Filed 07/02/24   Entered 07/02/24 18:26:45   Pg 7 of 69

41.    Distribution Record Date: The Effective Date.

42.    Distribution Reserve: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43.    Document Destruction Notice Parties: As defined in Article X.M of the Plan.

44.    Effective Date:  The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45.    Equity Interest:  An equity interest in the Debtor.

46.    Estate Assets: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47.    Estates: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48.    Excluded Debtors: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49.    Excluded Parties: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of the Debtors. For the avoidance of doubt, Excluded Parties shall not include any consultant retained or engaged by the Debtors during the Chapter 11 Cases except for Christopher Christensen and Jim Christensen.

50.     Exculpated Parties: The Debtors; the Unsecured Creditors Committee and its current and former members (in their capacities as such); the CRO; and the preceding's respective Related Parties, *provided*, *however*, that the Exculpated Parties shall not include any Excluded Party.

51.     Exit Financing: Financing comprised of amounts loaned pursuant to (a) the First Lien Exit Loan Facility and (b) the Tritalent Exit Loan Facility to fund the iCap Trust Expenses, plus such amounts as necessary to make payments required to made in connection with the Plan . The material terms of the Exit Financing will be included in the Plan Supplement.

52.     Federal Judgment Rate: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for postjudgment interest in federal court proceedings.

53.     File, Filed, or Filing: Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of Claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

54.     Final Order:  An order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay, or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal further or seek certiorari, further review, reargument, stay, or

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 25-01234-WLH11   Doc 1-3   Filed 07/10/26   Entered 07/10/26 15:26:45   Pg 109 of 769

rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to Bankruptcy Code sections 502(j) or 1144, rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 and 9024 may be filed with respect to such order or judgment.

55.     First Lien Exit Loan Facility:  That certain senior term loan in the aggregate principal amount of five million and 00/100 Dollars ($5,000,000.00) provided by iCap DIP Finance Group LLC. The material terms of the First Lien Exit Loan Facility will be included in the Plan Supplement.

56.     General Unsecured Claim:  A Claim that is (a) based upon (i) a proof of Claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtors' Schedules as other than disputed, contingent, or unliquidated, and (b) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Supplemental DIP Claim, Priority Claim, Subordinated Claim, or Investor Claim.

57.     General Unsecured Class A Claim: A General Unsecured Claim equal to the Outstanding Principal Amount for each particular Holder of a General Unsecured Claim.

58.     General Unsecured Class B Claim: A General Unsecured Claim comprised of any Claim for prepetition interest, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with Investor Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued prepetition interest at the applicable contract rate. The calculation and allowance of General Unsecured Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

59.     Governmental Unit: A "governmental unit" as defined in Bankruptcy Code section 101(27).

60.     Holder: A holder of a Claim or Equity Interest as the case may be.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

61.    iCap Trust: A trust established on the Effective Date for the benefit of the iCap Trust Beneficiaries in accordance with the terms of the Plan and the iCap Trust Agreement.

62.    iCap Trust Actions: Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the iCap Trust as Contributed Claims, in each case as against any Person that is not a Released Party.

63.    iCap Trust Agreement: The agreement substantially in the form Filed in the Plan Supplement and reasonably acceptable to the Debtors and the Unsecured Creditors' Committee establishing and delineating the terms and conditions of the iCap Trust, including the rights and duties of the iCap Trustees and the iCap Trust Supervisory Board.

64.    iCap Trust Assets: Collectively, (a) the iCap Trust Actions; (b) the iCap Trust Funding; (c) 100% of the ownership interests in the Debtors (and all assets, proceeds, and distributions from such entities); (d) Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the iCap Trust after the Effective Date; and (e) other assets that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the iCap Trust (on or after the Effective Date) by any Person.

65.    iCap Trust Beneficiary: Each Holder of an iCap Trust Interest.

66.    iCap Trust Expenses: Any and all reasonable fees, costs, and expenses incurred by the iCap Trustees in managing and operating the iCap Trust not inconsistent with the Plan or the iCap Trust Agreement, including the maintenance or disposition of the iCap Trust Assets (including iCap Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the iCap Trustees, personnel-related expenses, and any taxes imposed on the iCap Trust, in respect of the iCap Trust Assets), and any other expenses incurred or otherwise payable in accordance with the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

67.     iCap Trust Funding: Any Cash or reserves existing as of the Effective Date, and all Cash required (a) to make payments in accordance with the Plan to Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Secured Claims; or (b) to fund any other unfunded post-Confirmation reserve requirements of the iCap Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders.

68.     iCap Trust Interests: Collectively, the Class A iCap Trust Interests and the Class B iCap Trust Interests. All iCap Trust Interests will be evidenced by entry into the Distribution Agent's books and records, without a separate certificate of interest.

69.     iCap Trust Interests Waterfall: On each Distribution Date, the iCap Trust shall distribute its Available Cash as follows:

a.     The iCap Trust shall distribute Available Cash to each Holder of a Class A iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class A iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims have been paid in full without post-petition or post-Confirmation interest;

b.     Thereafter, the iCap Trust shall distribute Available Cash to each Holder of a Class B iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class B iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims have been paid in full without post-petition or post-Confirmation interest.

70.     iCap Trust Supervisory Board: A three-person supervisory board for the iCap Trust, whose initial members shall be Lilian Tan, Thomas Temple, and Jay Kornfeld of the firm Bush Kornfeld LLP. In the event of a vacancy or resignation of a board member, such board seat will remain vacant.

71.     iCap Trustees: Lance Miller and Seth Freeman; and any successor appointed pursuant to the terms of the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

72.    Insider: Any "insider," as defined in Bankruptcy Code section 101(31), and with respect to a limited liability company, any director, officer, person in control, or relative of any of the foregoing.

73.    Intercompany Claim: A Claim of one Debtor against another Debtor.

74.    Intercompany Lien: Any lien securing or purporting to secure an Intercompany Claim.

75.    Investor: A Person or entity that purchased an investment product (including any debentures, promissory notes, or other debt securities issued by the Debtors) or made an investment offered by any Debtor pursuant to an offering memorandum or private placement memorandum that was issued by a Debtor.

76.    Investor Avoidance Settlement: Any settlement between the iCap Trust and one or more Investors related to a potential or actual Avoidance Action against the Investors.

77.    Investor Claims: Any and all Claims of an Investor against any Debtor, which shall be composed of (i) an Investor Class A Claim and (ii) an Investor Class B Claim.

78.    Investor Claims Special Provisions: As defined in Article III.C.1 of the Plan.

79.    Investor Class A Claim: An Investor Claim for restitution of an Investor to be treated *pari passu* with General Unsecured Class A Claims. Such Claim shall equal the total Outstanding Principal Amount for each particular Investor. For avoidance of doubt, an Allowed Investor Class A Claim shall be reduced dollar for dollar on account of any Collateral Source Recoveries the Investor receives on account of the losses represented by its Investor Claim, and if such Allowed Investor Class A Claim is reduced to zero, the Investor's Allowed Investor Class B Claim will be reduced dollar for dollar on account of any additional Collateral Source Recoveries that may be received by the Investor.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

80. Investor Class B Claim: An Investor Claim comprised of any Claim by the Investor for prepetition interest in connection with such Investor's principal investment in a Debtor, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with General Unsecured Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued interest from the time of the Investor's principal investment to the Petition Date at a rate of seven percent (7%), compounded annually. The calculation and allowance of Investor Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

81. Lien: Has the meaning ascribed in Bankruptcy Code section 101(37), including any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, deed of trust, assignment of rents, assignment or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

82. Net Prepetition Investor Recovery: With respect to a specific Investor, (a) the total Cash value remitted to the Investor from the Ponzi Start Date until the Petition Date (whether the payment was considered a return on the investment, interest, a referral fee, or a repayment of principal), minus (b) the total Cash value invested prepetition as principal by the Investor, (provided that the value of (a) is greater than the value of (b)), capped by the amount of total Cash value remitted to the Investor.

83. Notes: Any and all investments, interests, or other rights with respect to any of the Debtors that were referred to, marketed, or sold as "notes," "loans," or "mortgages."

84. Notice and Hearing: Proceedings as contemplated under Bankruptcy Code section 102(1).

85. Outstanding Principal Amount: An amount equal to the aggregate principal balance outstanding as of the Petition Date, excluding any purportedly accrued prepetition interest.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

86.    Person: Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

87.    Petition Date:  September 29, 2023, the date upon which the lead Debtor commenced its Chapter 11 Cases.

88.    Plan:  This Joint Plan of Liquidation, all exhibits to the Plan, and the Plan Supplement, as such may be amended from time to time in the reasonable discretion of the Plan Proponents.

89.    Plan Proponents: The Debtors and the Unsecured Creditors' Committee.

90.    Plan Supplement: The supplementary documents regarding the implementation and effectuation of the Plan, to be filed on or before the date that is eleven (11) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented from time to time prior to the Confirmation Hearing in the reasonable discretion of the Plan Proponents.

91.    Ponzi Finding: A finding by the Bankruptcy Court that the Debtors' prepetition operations constituted a Ponzi scheme, as set forth more fully in Article III.C of the Plan.

92.    Ponzi Start Date: No later than October 2018.

93.    Priority Claim: A Claim entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

94.    Priority Tax Claims:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of Bankruptcy Code section 507(a)(8), and statutory interest accruing thereon prior to the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

95.    Professional Person:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to Bankruptcy Code sections 326, 327, 328, 330, and/or 1103.

96.    Pro Rata: Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or iCap Trust Interest to (b) the amount or number of that Allowed Claim or iCap Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all applicable iCap Trust Interests to (y) as applicable, the amount of all Allowed Claims in that Class or the number of applicable iCap Trust Interests.

97.    Related Parties: Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who (a) are employed by the Debtors on the Effective Date or (b) whose employment was approved by the Bankruptcy Court.

98.    Released Parties: The Debtors; the Unsecured Creditors' Committee and its current and former members (in their capacities as such); the CRO; the DIP Parties; and the preceding's respective Related Parties, *provided*, *however*, that the Released Parties shall not include any Excluded Party.

99.    Releasing Parties: The Debtors; the Estates; and any Person exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Unsecured Creditors' Committee (but not its current or former individual members), the iCap Trustees, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

100.    Scheduled: As set forth in the Schedules.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

101.    Schedules:  The schedules of assets, liabilities, and executory contracts and the statement of financial affairs filed on behalf of each Debtor pursuant to Bankruptcy Code section 521, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

102.    SEC:  The United States Securities and Exchange Commission.

103.    Secured Claim:  A Claim that is a secured Claim against a Debtor determined in accordance with Bankruptcy Code section 506(a).

104.    Securities Act: The Securities Act of 1933, as amended.

105.    Secured Claims Reserves: Individual reserves of Cash in respect of each Holder of a Secured Claim (including such Secured Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), comprised of the proceeds of the Collateral securing such Secured Claim, to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which the Distribution Agent will make Distributions to the Holders of Secured Claims (if and to the extent Allowed) from the applicable reserve for such Holder in accordance with the Plan.

106.    Senior Claims Reserve: One or more reserves of Cash in respect of, as applicable, Administrative Expense Claims, Priority Tax Claims, and Priority Claims (including such Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), in amounts to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which (i) the Distribution Agent will make Distributions to the Holders of the foregoing Claims (if and to the extent Allowed) in accordance with the Plan, and (ii) the iCap Trustees and their agents, including the Distribution Agent (if not the iCap Trustees), will be reimbursed from such monies for reasonable costs and expenses incurred by said parties (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions out of the Senior Claims Reserve and the Secured Claims Reserves).

107.    Subordinated Claim: Any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim, but not any Investor Class B Claims.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

108.    Supplemental DIP Claim: Any Claim arising under or relating to the Supplemental DIP Credit Agreement.

109.    Supplemental DIP Credit Agreement: That certain *Debtor-In-Possession Loan and Security Agreement* dated as of July 18, 2024, by and among, the Debtors, Socotra REIT I, LLC; WE Alliance Secured Income Fund, LLC; Jason Yelowitz, in his capacity as trustee of the Jason Yelowitz 2006 Trust Dated March 31, 2006; and Keith Holdings, LLC; as the same may have been further amended, modified, ratified, extended, renewed, restated, or replaced, and any other agreements and documents related thereto.

110.    Tritalent:  Tritalent Funding Group and Halton Co.

111.    Tritalent Exit Loan Facility:  That certain junior term loan in the aggregate principal amount of five hundred thousand and 00/100 Dollars ($500,000.00) provided by Tritalent. The material terms of the Tritalent Exit Loan Facility will be included in the Plan Supplement.

112.    Unliquidated Claim: Any Claim that is Scheduled as unliquidated or Filed in an unliquidated amount.

113.    Unsecured Creditors' Committee: The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102.

114.    Voting Deadline: The deadline by which all Ballots to accept or reject the Plan must be received in order to be counted.

**B.    Rules of Interpretation**

The rules of construction set forth in Bankruptcy Code section 102 shall apply to the Plan. For purposes of the Plan and unless otherwise specified herein: (i) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (ii) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (iii) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (iv) the words "include" and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

"including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (v) all references to articles or Articles are references to the Articles hereof; (vi) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (vii) any reference to a Person as a Holder of a Claim or Equity Interest includes that Person's successors and assigns; (viii) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, modified, or supplemented; (ix) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (x) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; and (xii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against the Debtors are classified as set forth below. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1: Priority Claims
Class 2: Secured Claims
Class 3: Investor Claims
Class 4: General Unsecured Claims
Class 5: Subordinated Claims
Class 6: Equity Interests

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE III.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Equity Interests shall be as follows:

**A.    Unclassified Claims**

1.    <u>Administrative Expense Claims</u>. Administrative Expense Claims incurred in the ordinary course of the Debtors' business following the Petition Date (including fees owed to the CRO and/or either of Paladin Management Group, LLC and Pivot Management Group, LLC) shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations (as such terms were modified by any orders approving such agreements), or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. All other Administrative Expense Claims, including Claims of Professional Persons, shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. Claims arising under 28 U.S.C. § 1930 shall be paid as required by that statute.

a.    <u>Administrative Expense Claims Bar Date</u>. Administrative expense requests asserting Administrative Expense Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professional Persons in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than 30 days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

b.    <u>Final Fee Applications</u>. All final requests for compensation or reimbursement of Professional Persons retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the iCap Trustees, (i) Pivot Management Group, LLC, 1230 Rosecrans Ave.,

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Suite 530, Manhattan Beach, CA 90266 (Attn: Lance Miller (Lance.miller@pivotgrp.com)) and (ii) B. Riley Advisory Services, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612 (Attn: Seth Freeman (SFreeman@brileyfin.com)); (b) counsel to the Debtors, O'Melveny & Myers LLP (i) 400 South Hope Street, Suite 1900, Los Angeles, CA 90071 (Attn: Julian Gurule (jgurule@omm.com)) and (ii) 1301 Avenue of the Americas, Suite 1700, New York, NY 10019 (Attn: Diana Perez (dperez@omm.com)); (c) counsel to the Unsecured Creditors' Committee, (i) Bush Kornfeld LLP, 601 Union Street, Suite 5000, Seattle, WA 98101 (Attn: Armand J. Kornfeld (jkornfeld@bskd.com) and Aimee S. Willig (awillig@bskd.com)) and (ii) Corr Cronin LLP, 1015 Second Ave., Floor 10, Seattle, WA 98104 (Attn: John T. Bender (jbender@corrcronin.com)); (d) the Office of the United States Trustee, United States Department of Justice, 920 West Riverside Avenue, Room 593, Spokane, WA 99201 (Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov)); and (e) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors or the iCap Trustees, as applicable. Objections to any Claims of Professional Fees must be filed with the Bankruptcy Court and served on the iCap Trustees and the applicable Professional Person no later than fourteen (14) days after service of such applicable final fee application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash.

2. <u>Priority Tax Claims</u>. Allowed Priority Tax Claims shall be paid, at the iCap Trust's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty);

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the iCap Trust shall have agreed upon in writing.

3.    <u>Supplemental DIP Claims</u>. On the Effective Date, (a) all obligations of the Debtors under the Supplemental DIP Credit Agreement shall be assumed by the iCap Trust; (b) all Liens and security interests granted to secure the Debtors' obligations under the Supplemental DIP Credit Agreement shall remain in place and shall be otherwise subject to the terms and conditions of the Supplemental DIP Credit Agreement and any related subordination terms; and (c) the legal, equitable, and contractual rights of the parties under the Supplemental DIP Credit Agreement shall be unaltered by the Plan.

**B.    Classified Claims and Interests**

**1.    Class 1: Priority Claims**

Class 1 consists of Priority Claims. Class 1 is unimpaired and deemed to accept the Plan.

On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Priority Claim becomes an Allowed Priority Claim, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash from the iCap Trust equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing.

**2.    Class 2: Secured Claims**

Class 2 consists of the following sub-classes of Secured Claims:

a. **Class 2A: UW 17th Ave, LLC Secured Claims**
    (i)  Class 2A.1 Studio 19 Architects Secured Claim
    (ii) Class 2A.2 UW 17th Davido Consulting Group
    (iii) Class 2A.3 Dhillon Secured Claim

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-01242-WLH11    Doc 1360    Filed 07/02/24    Entered 07/02/24 15:28:45    Pg 22 of 69

b. **Class 2B: VH 1121 14th LLC Secured Claims**
   (i) Class 2B.1 14th Wilmington Savings Fund Secured Claim

c. **Class 2C: VH Willows Townhomes, LLC Secured Claims**
   (i) Class 2C.1 Willows Wilmington Savings Secured Claim

d. **Class 2D: VH Senior Care, LLC Secured Claims**
   (i) Class 2D.1 Redmond Funding Group Secured Claim

e. **Class 2E: 725 Broadway, LLC Secured Claims**
   (i)  Class 2E.1 Christopher Jones Architects Secured Claim
   (ii) Class 2E.2 Broadway Davido Consulting Secured Claim
   (iii) Class 2E.3 Malsam Tsang Engineering Secured Claim
   (iv) Class 2E.4 Broadway Davido Consulting Secured Claim
   (v) Class 2E.5 Broadway Oak Hills Construction LLC

f. **Class 2F: Senza Kenmore, LLC Secured Claims**
   (i) Class 2F.1 Van Hoof Construction Secured Claim
   (ii) Class 2F.2 T.S. Dance Construction Secured Claim

g. **Class 2G: iCap Campbell Way, LLC Secured Claims**
   (i) Class 2G.1 Campbell Davido Consulting Secured Claim
   (ii) Class 2G.2 Deed of Trust of Pacific NW Opportunity & Income Fund, LLC

h. **Class 2H: VH Pioneer Village, LLC Secured Claims**
   (i) Class 2H.1 Tritalent Funding Group Secured Claim

i. **Class 2I: CS2 Real Estate Development Secured Claims**
   (i) Class 2I.1 BRMK Management Secured Claim
   (ii) Class 2I.2 United Rentals Secured Claim
   (iii) Class 2I.3 Sunbelt Rentals Secured Claim
   (iv) Class 2I.4 CS2 Oak Hills Construction Secured Claim
   (v) Class 2I.5 Rexel USA, Inc. dba Platt Electric Supply Claim

j. **Class 2J: Secured Real Property Tax Claims**

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Class 2 is unimpaired and deemed to accept the Plan.

Except as explicitly provided for in the Plan, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, *provided* that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Secured Claim becomes an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the option of the Debtors or the iCap Trust, either (a) the net proceeds from the sale of the Collateral securing such Allowed Secured Claim; *provided, however*, that if the sale of the Collateral securing an Allowed Secured Claim closes after the occurrence of the Effective Date, the payment of the net proceeds shall be delivered to the Holder of the Allowed Secured Claim within thirty (30) calendar days of the closing of such sale, (b) the surrender of the Collateral securing such Allowed Secured Claim, or (c) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing. Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim.

### 3.    Class 3: Investor Claims

Class 3 consists of Investor Claims, as more particularly described below. Class 3 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Investor Claims will receive (i) on the later of the Effective Date and thirty (30) calendar days following the date on which such Investor Claim becomes an Allowed Investor Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed Investor Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed Investor Class B Claims held by the applicable Investor (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

such iCap Trust Interest), and (ii) the other consideration provided for in the Investor Claims Special Provisions set forth in Article III.C.1 of the Plan. All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

For clarity, the practical effect of the above is the following:

Class A iCap Trust Interests, which consist of Investors' principal balance owed on the Petition Date, will be paid through Distributions by the iCap Trust until fully satisfied. Once all of the Class A iCap Trust Interests are paid in full, then Distributions will be made to Class B iCap Trust Interests, which consist of Investors' accrued interest due as of the Petition Date.

As an example, if Investor X invested $100,000 one year before the Petition Date with the Debtors, under the Plan, Investor X will receive (i) a $100,000 Investor Class A Claim (*i.e.*, the original principal investment of $100,000); and (ii) a $7,000 Investor Class B Claim (representing 7% per annum interest on the $100,000 investment).

The treatment of any and all Investor Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person that is not a Released Party (including those rights that may be included in the Contributed Claims and contributed to the iCap Trust by making the Ballot election described below).

Each Holder of an Investor Claim may agree by electing on its Ballot to contribute its Contributed Claims to the iCap Trust. By electing such option on its Ballot the Investor agrees that, subject to the occurrence of the Effective Date and the formation of the iCap Trust, it will be deemed, without further action, (i) to have contributed its Contributed Claims to the iCap Trust and (ii) to have agreed to execute any documents reasonably requested to memorialize its contribution. The relative share of iCap Trust recoveries for any electing Investor will be enhanced by having the amounts that otherwise would be its Allowed Investor Class A Claim and its Allowed Investor Class B Claim each increased by the Contributing Claimants' Enhancement Multiplier – *i.e.,* **10%**.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### 4. Class 4: General Unsecured Claims

Class 4 consists of General Unsecured Claims, as more particularly described below. Class 4 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed General Unsecured Claims will receive on the later of the Effective Date and thirty (30) calendar days following the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed General Unsecured Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed General Unsecured Class B Claims held by the applicable Holder (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of such iCap Trust Interest). All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

### 5. Class 5: Subordinated Claims

Class 5 consists of all Subordinated Claims. Class 5 is impaired under the Plan and deemed to reject the Plan.

The Holders of Allowed Subordinated Claims will retain a residual right to receive Available Cash that remains in the iCap Trust after the final administration of all iCap Trust Assets, and the complete satisfaction of all senior payment rights within the iCap Trust Interests Waterfall, including satisfaction of all Investor Class B Claims and General Unsecured Class B Claims. The Plan Proponents have decided not to solicit the votes of the Holders of any Subordinated Claims, and such Holders are therefore deemed to have rejected the Plan.

### 6. Class 6: Equity Interests

Class 6 consists of all Equity Interests and purported Equity Interests in the Debtors. Class 6 is impaired under the Plan and deemed to reject the Plan.

On and after the Effective Date, (a) Holders of Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property under the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan on account of such Equity Interests and (b) the Equity Interests shall be deemed to be held by the iCap Trust under applicable non-bankruptcy law and the iCap Trustees shall be authorized to exercise all of the rights and powers of a sole member as provided by the Plan.

Any purported Equity Interests or Liens on Equity Interests held by an Investor in any Debtor will be considered void, cancelled, and of no further force and effect. These Claims will be regarded as Class 3 Investor Claims in accordance with the Plan, irrespective of any labels used by the Debtors and/or Investors prior to the Petition Date.

## C.    Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

The Plan Proponents will also seek findings in the Confirmation Order (the "**Ponzi Findings**") that (i) beginning no later than the Ponzi Start Date through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the iCap enterprise operated as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors. The Plan Proponents shall not seek Ponzi Findings that would be binding on any other court or governmental or regulatory authority.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

**1.    Special Provisions Relating to Investor Claims.** The following provisions apply to Investor Claims (the "**Investor Claims Special Provisions**"):

a.    The Holders of Allowed Investor Claims will receive the treatment provided for such Holders under the Plan. For the avoidance of doubt, any and all purported Equity Interests of an Investor in any Debtor shall be deemed and treated as Investor Claims of the Investor pursuant to the Plan, regardless of the prepetition designations used by the Debtors and/or Investors.

b.    The iCap Trust will be created to pursue the iCap Trust Actions for the benefit of all the iCap Trust Beneficiaries; to establish and hold the Distribution Reserves; and to receive and distribute to the holders of iCap Trust Interests the net proceeds of the monetization or other disposition of the iCap Trust Assets in accordance with the Plan and the iCap Trust Agreement.

c.    The iCap Trustees shall have discretion, subject to the iCap Trust Agreement, to determine whether and how to make demand upon, or sue, Investors liable for a Net Prepetition Investor Recovery, including, but not limited to, the discretion not to bring suit or make a demand because of the Investor's financial hardship. That discretion shall be exercised in accordance with guidelines developed by the iCap Trustees in consultation with the iCap Trust Supervisory Board subject to the iCap Trust Agreement. No party should assume that they will be entitled to the exercise of such discretion.

d.    In the event that an Investor Claim has been transferred or assigned, all Collateral Source Recoveries that were received by a prior Holder of the Claim shall be included for purposes of determining the Allowed amount of an Investor Claim as if such transferee or assignee had received such distribution or recovery.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

e.      Upon request, Investors must, within twenty-one (21) calendar days of receipt of such request, respond to requests for information by the iCap Trustees with respect to Investor Claims. Failure to respond to a request for information may subject the Investor's Claim to disallowance  in the iCap Trustees' full discretion.

f.      At the end of each quarter, beginning with the first full quarter after the iCap Trust is established, the iCap Trustees will provide a report to the Investors summarizing the recovery actions the iCap Trust has engaged in during the quarter and detailing whether the iCap Trust is abandoning any specific Avoidance Actions or Causes of Action that it has determined it will not pursue, thus allowing Investors to pursue such actions, at their option.

**2.      Special Provisions Relating to Individual Investor-Specific Claims.** Investors retain the right to independently pursue any claims against third parties where they have independent legal standing, and where such claims are **not** owned by the iCap Trust under this Plan, specifically claims owned by the iCap Trust and defined in the Plan as Causes of Action and Avoidance Actions ("**Individual Investor-Specific Claims**"). Examples of such claims include, but are not limited to: loss of lien or lien priority; claims against the investor's own professional advisors; claims against retirement service providers; and other claims arising from an investor's specific situation. For the avoidance of doubt, Individual Investor-Specific Claims do not encompass claims shared by all Investors or claims to recover commissions or referral fees paid by the Debtors to third parties in relation to an Investor's investment with the Debtors. The Plan will not interfere with an Investor's right to pursue these Individual Investor-Specific Claims, except as required (as determined by the iCap Trustees) to preserve iCap Trust Assets.

a.      Any recovery by an Investor on an Individual Investor-Specific Claim shall reduce that Investor's entitlement to receive Distributions from the iCap Trust as follows:

(1)      Any recovery, net of reasonable fees and expenses actually incurred by or on behalf of the Investor, shall be first applied to reduce the applicable Investor Class A Claim, if any, and then after the Investor Class A Claim is reduced to $0, shall be applied to reduce the applicable Investor Class B Claim.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-08084-WLH11    Doc 1360    Filed 07/02/24    Entered 07/02/24 18:26:45    Pg 29 of 69

b.        Each Investor must promptly notify the Debtors or the iCap Trustees, as applicable, in writing, if such Investor receives any consideration on account of an Individual Investor-Specific Claim. This notification must be submitted within thirty (30) days of receiving said consideration and must detail the total amount recovered, along with any associated fees and expenses incurred. Failure to adhere to this reporting obligation may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion, and the clawback of any Distributions previously received under the Plan.

### ARTICLE IV.
### ACCEPTANCE OR REJECTION OF THE PLAN

**A.        Impaired Claims Entitled to Vote**

The Plan Proponents shall only solicit the votes of Holders of Allowed Claims in Class 3 (Investor Claims) and Class 4 (General Unsecured Claims).

**B.        Acceptance by an Impaired Class**

Pursuant to Bankruptcy Code section 1126(c), except as provided in Bankruptcy Code section 1126(e), acceptance of the Plan by Holders of Claims in any Class eligible to vote on it occurs when the Plan receives approval from Holders representing at least two-thirds (⅔) in dollar amount and over one-half (½) in number of the Allowed Claims in that Class who have duly voted to accept or reject the Plan within the stipulated timeframe.

**C.        Presumed Acceptance by Unimpaired Classes**

Class 1 (Priority Claims) and Class 2 (Secured Claims) are unimpaired under the Plan. Pursuant to Bankruptcy Code section 1126(f), Holders of unimpaired Claims are presumed to have accepted the Plan and the Plan Proponents therefore will not solicit their votes.

**D.        Certain Impaired Classes Deemed to Reject the Plan**

The Plan Proponents have decided not to solicit the votes of Holders of any Claims in Class 5 (Subordinated Claims) and Holders of those Claims will therefore be

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

deemed to have rejected the Plan and will not be entitled to vote on the Plan. Holders of Class 6 Equity Interests are not entitled to receive or retain any property or interests in property under the Plan and are therefore deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). They are not entitled to vote on the Plan and their votes will not be solicited by the Plan Proponents.

**E.     Modification of Votes Already Cast**

After the Voting Deadline, Creditors eligible to vote on the Plan cannot modify their cast votes or any related elections without obtaining written consent from the Plan Proponents. Such consent is subject to the reasonable discretion of the Plan Proponents.

**F.     Vacant Classes Eliminated**

Any Class that does not contain a Holder of an Allowed Claim, or a Holder of a Claim that is temporarily allowed under Bankruptcy Rule 3018, measured as of the date on which the Confirmation Hearing begins, shall be deemed deleted from the Plan for the purpose of determining whether the Plan was accepted by that Class pursuant to Bankruptcy Code section 1129(a)(8).

**ARTICLE V.**
**IMPLEMENTATION OF THE PLAN**

**A.     Overview**

As detailed below, the Plan will be implemented through, among other things, the establishment of the iCap Trust and the appointment of the iCap Trustees and the iCap Trust Supervisory Board. The iCap Trust will make Distributions in accordance with the Plan.

**B.     Streamlining the Debtors' Structure and Governance**

**1.     Corporate Action.** On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

2.      **Debtors' Existing Directors and Officers.** On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided*, *however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

3.      **Dissolution of the Debtors.**  On and as of the earlier of the Case Closing Date and the date on which the iCap Trustees File with the Bankruptcy Court a notice of dissolution as to a Debtor, such Debtor will be dissolved automatically without the need for any further action, including the filing of any corporate or limited liability company filings; *provided, however*, that the iCap Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtor. All applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

4.      **Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the iCap Trustees, as applicable, to take or cause to be taken all actions (including, if applicable, corporate actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

without further approval, act, or action under any applicable law, order, rule, or regulation.

## C.      Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under this Plan, any Notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtors, except assumed executory contracts and assumed unexpired leases, and/or such Notes or other instruments evidencing indebtedness or obligations of the Debtors that are unimpaired, reinstated, assumed, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## D.      iCap Trust

**1.      Appointments.** On and after the Effective Date, the initial iCap Trustees shall become and serve as iCap Trustees. The iCap Trustees' shared compensation will be set at five percent (5%) of the iCap Trust's gross recoveries, the payment terms and timing of which will be set forth in the iCap Trust Agreement and the Plan Supplement.

On and after the Effective Date, the initial iCap Trust Supervisory Board shall begin to serve without further action consistent with the terms of the Plan and iCap Trust Agreement. The purpose of the iCap Trust Supervisory Board is to oversee the performance of the iCap Trustees' duties and to otherwise carry out and serve the functions described in the Plan and in the iCap Trust Agreement. Compensation for the iCap Trust Supervisory Board will be set forth in the iCap Trust Agreement and the Plan Supplement.

At the time of Confirmation of the Plan and formation of the iCap Trust, John Bender shall serve as litigation counsel to the iCap Trust and Bush Kornfeld LLP shall serve as restructuring counsel to the iCap Trust.

**2.      Creation and Governance of the iCap Trust.** On the Effective Date, the iCap Trustees shall execute the iCap Trust Agreement and shall take any other steps necessary to establish the iCap Trust in accordance with the Plan. For federal income tax purposes, the transfer of the assets to the iCap Trust will be treated as a sale or other

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disposition of assets to the iCap Trust Beneficiaries in exchange for their Claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the iCap Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability. For federal income tax purposes, the iCap Trust Beneficiaries shall be treated as the grantors of the iCap Trust and deemed to be the owners of the assets of the iCap Trust. The transfer of the iCap Trust Assets to the iCap Trust shall be deemed a transfer to the iCap Trust Beneficiaries by the Debtors, followed by a deemed transfer by such iCap Trust Beneficiaries to the iCap Trust. The Debtors, the iCap Trust Beneficiaries, and the iCap Trust will consistently report the valuation of the assets transferred to the iCap Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the iCap Trust shall be reported to the beneficiaries of the iCap Trust in conjunction with the filing of the iCap Trust's income tax returns. Each iCap Trust Beneficiary shall report income, deductions, gain, or loss on such iCap Trust Beneficiary's income tax returns. The iCap Trust shall be governed by the iCap Trust Agreement and administered by the iCap Trustees and the iCap Trust Supervisory Board. The powers, rights, and responsibilities of the iCap Trustees shall be specified in the iCap Trust Agreement.

**3.    Vesting of iCap Trust Assets.**  On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The iCap Trustees shall be the exclusive trustee of the iCap Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all iCap Trust Assets. The iCap Trust shall hold and distribute the iCap Trust Assets in accordance with the provisions of the Plan and the iCap Trust Agreement.

Notwithstanding the foregoing or any other provision in the Plan, in the event that the iCap Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Unit for the benefit of the Investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or iCap Trust Assets, and the iCap Trustees are authorized to and shall distribute all such monies only to Investors who are Holders of Class A iCap Trust Interests or Class B iCap Trust Interests on account thereof, subject to the Plan and the iCap Trust Agreement; *provided* that the iCap Trustees and their agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the iCap Trust's collection, administration, and distribution of such monies to the applicable Investors.

**4.      Sales of Estate Assets.**  In accordance with Bankruptcy Code section 1146(a), no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (1) the sale or transfer of iCap Trust Assets to the iCap Trust; (2) the issuance, Distribution, transfer, or exchange of Notes or equity securities under the Plan; or (3) the establishment of any mortgage, deed of trust, Lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

As part of implementation of the Plan, following Confirmation, the iCap Trustees will sell iCap Trust Assets. No further order of the court will be necessary to sell iCap Trust Assets. All sales of real property contemplated by the Plan shall be free and clear of all Liens, claims, encumbrances, and/or interests of any kind pursuant to Bankruptcy Code Sections 1123(a)(5)(D) and 1141(c), with the proceeds of such sales being paid pursuant to the terms of the Plan. Pursuant to Washington Administrative Code 458-61A-207, the iCap Trust will be exempt from the imposition of real estate excise taxes that would otherwise be payable under Revised Code of Washington 82.45.060 and/or other applicable law as to any sale of the iCap Trust Assets at any time following Confirmation. Pursuant to Bankruptcy Code section 1146, the iCap Trust's making or delivery of an instrument of transfer as to any iCap Trust Assets following Confirmation may not be taxed under any law imposing a stamp tax or similar tax.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-01284-WLH11    Doc 930    Filed 07/09/24    Entered 07/09/24 15:32:45    Pg 35 of 69

**5.    Purpose of the iCap Trust.** The iCap Trust shall be established for the purpose of pursuing or liquidating the iCap Trust Assets and making Distributions to the iCap Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d) and the terms of the Plan.

**6.    Authority.** Subject to the supervision of the iCap Trust Supervisory Board as set forth in the iCap Trust Agreement, the iCap Trustees shall have the authority without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

a.    review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

b.    assert and enforce all legal or equitable remedies and defenses belonging to the Debtors or their Estates, including setoff, recoupment, and any rights under Bankruptcy Code section 502(d);

c.    calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

d.    retain, compensate, and employ professionals and other Persons to represent the iCap Trustees with respect to and in connection with their rights and responsibilities;

e.    establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

f.    maintain, conserve, collect, settle, and protect the iCap Trust Assets, including, but not limited to, pursuing, engaging in, and consummating any Investor Avoidance Settlements and/or Broker Settlements;

g.    pursue, prosecute, settle, or abandon any iCap Trust Actions, including, but not limited to, Investor Avoidance Settlements and/or Broker Settlements;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

h.     act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere;

i.     proceed with and employ all discovery devices permitted under applicable law, including Bankruptcy Rule 2004, in order to investigate any Claims, iCap Trust Actions, or iCap Trust Assets;

j.     sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the iCap Trust Assets or any part thereof or interest therein upon such terms as the iCap Trustees determine to be necessary, appropriate, or desirable;

k.     negotiate, incur, and pay the iCap Trust Expenses;

l.     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any Governmental Unit, or by applicable law;

m.     compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

n.     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

o.     effect all actions and execute all agreements, instruments, and other documents, and take all actions, necessary to consummate the Plan;

p.     comply with the Plan, exercise the iCap Trustees' rights, and perform the iCap Trustees' obligations; and

q.     exercise such other powers as deemed by the iCap Trustees to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to their administrative rights and duties under the Plan, the iCap Trustees shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or limited liability company

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-80084-WLH11   Doc 1260   Filed 07/09/24   Entered 07/09/24 15:28:45   Pg 37 of 69

officer or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106. The iCap Trust Supervisory Board will have all rights and powers of a corporate board appointed under Washington law.

**7.    Limitation of Liability.** The iCap Trustees and the iCap Trust Supervisory Board shall enjoy all the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The iCap Trustees may, in connection with the performance of their functions, in their sole and absolute discretion, consult with their attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the iCap Trustees shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the iCap Trustees unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the iCap Trustees shall look only to the iCap Trust Assets to satisfy any liability incurred by the iCap Trustees to such Person in carrying out the terms of the Plan or the iCap Trust Agreement. No recourse will ever be had, directly or indirectly, against the iCap Trustees or their members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the iCap Trustees under the Plan or by reason of the creation of any indebtedness by the iCap Trustees under the Plan.

**8.    Indemnification.** The iCap Trust Agreement will include customary indemnification provisions.

**9.    Insurance.** The iCap Trustees shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the iCap Trust's sole expense, for themselves, the iCap Trustees, and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the iCap Trustees, which insurance coverage may, at the sole discretion of the iCap Trustees, be extended for a reasonable period after the termination of the iCap Trust.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 38

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**10. Tax Reporting.** The iCap Trust shall timely file tax returns for the iCap Trust treating the iCap Trust as a grantor trust pursuant to Treasury Regulation section 1.671- 4(a).

The iCap Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the iCap Trust, the Debtors, or any iCap Trust Assets.

The iCap Trust shall distribute such tax-related notices, beneficiary statements, and informational returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the iCap Trustees determine are otherwise necessary or desirable.

The iCap Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

**11. Distributions to iCap Trust Beneficiaries.** After payment of or reserve for all senior claims (including without limitation, Administrative Expense Claims, Priority Claims, Priority Tax Claims, and Secured Claims) in accordance with the Plan and the iCap Trust Agreement, the iCap Trust shall make Distributions to iCap Trust Beneficiaries pursuant to the iCap Trust Interests Waterfall.

The iCap Trust, in the iCap Trustees' sole discretion, may make periodic Distributions to the iCap Trust Beneficiaries at any time following the Effective Date; *provided* that such Distributions are otherwise permitted under, and not inconsistent with, the iCap Trust Interests Waterfall, the other terms of the Plan, the iCap Trust Agreement, and applicable law.

**12. Cash Investments.** The iCap Trustees may invest Cash of the iCap Trust, including any earnings or proceeds from such investment, and such investments will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

**13. Securities Act Exemption.** To the extent the iCap Trust Interests are deemed to be "securities," the issuance of those interests under the Plan is exempt

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 39

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

from registration under the Securities Act and any applicable state and local securities laws pursuant to Bankruptcy Code section 1145.

**14.** **Contribution of Contributed Claims.** On the Effective Date, all Contributed Claims are irrevocably contributed to the iCap Trust and shall thereafter be iCap Trust Actions for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person as any indication that the iCap Trust will not pursue any and all available Contributed Claims against such Person. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the iCap Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The iCap Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the iCap Trust in accordance with the Plan and the iCap Trust Agreement.

**15.** **Authority to Pursue and Resolve iCap Trust Actions.** The iCap Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

**16.** **Termination.** The iCap Trustees and the iCap Trust shall be discharged or terminated, as the case may be, at such time as: (a) the iCap Trustees determine that the pursuit of additional iCap Trust Actions is not likely to yield sufficient additional

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 40

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

proceeds to justify further pursuit of such iCap Trust Actions and (b) all Distributions required to be made by the iCap Trust to Holders of Allowed Claims and to the iCap Trust Beneficiaries under the Plan and the iCap Trust Agreement have been made, but in no event shall the iCap Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the iCap Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the iCap Trust Assets. Upon termination of the iCap Trust, any remaining iCap Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

**17.    Interpretation.** To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

## E.    Substantive Consolidation

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in this Article; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

The Disclosure Statement and the Plan together form a request for the Bankruptcy Court's approval of the substantive consolidation outlined in the Plan. Unless a Creditor, purportedly impacted by this consolidation, submits a written objection before the Plan's confirmation objection deadline, the consolidation described in the Plan may receive approval during the Confirmation Hearing. Should objections be filed within the specified timeframe, the Bankruptcy Court will address such objections at the Confirmation Hearing.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 42

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

If the Bankruptcy Court determines that substantive consolidation of any given Debtor is not appropriate, then the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Debtors reserve their rights (i) to seek confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Debtors' reasonable discretion after consultation with the Unsecured Creditors' Committee, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) after consultation with the Unsecured Creditors' Committee, to seek to substantively consolidate all Debtors into iCap Enterprises, Inc. if all impaired Classes entitled to vote on the Plan vote to accept the Plan.

## F.    Preservation of Rights of Action

**1.    Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order (including in the Investor Claims Special Provisions), in accordance with Bankruptcy Code section 1123(b), from and after the Effective Date, the iCap Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as iCap Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the iCap Trust Agreement. The iCap Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the iCap Trust Actions without notice to or approval from the Bankruptcy Court, subject to the iCap Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the iCap Trust may compromise and settle iCap Trust Actions, subject to the iCap Trust Agreement. It is anticipated that the iCap Trust will pursue iCap Trust Actions primarily under alternate fee arrangements and not a typical hourly fee structure, employing the services of professionals selected by (i) the Debtors, in

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 43

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

consultation with the Unsecured Creditors' Committee, prior to the Effective Date or (ii) the iCap Trustees, as provided in the iCap Trust Agreement, on and after the Effective Date. For the avoidance of doubt, nothing in the Disclosure Statement or this Plan shall require the iCap Trust to commence or pursue litigation concerning any iCap Trust Action.

**2.** **Preservation of All iCap Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Avoidance Actions or Causes of Action as an iCap Trust Action is not intended to and shall not limit the rights of the iCap Trust to pursue any such Avoidance Actions or Causes of Action. Unless a iCap Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such iCap Trust Action for later resolution by the iCap Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the iCap Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any iCap Trust Actions upon, after, or as a consequence of the confirmation of the Plan.

**3.** **Categories of Preserved Claims.** The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including **all** Causes of Action and Avoidance Actions. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, the following are illustrative categories of claims that the iCap Trust will have the right to pursue:

> (a) Insider and non-Insider preference actions arising under bankruptcy and/or state law;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 44

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(b) Fraudulent transfer actions arising under bankruptcy and/or state law;

(c) Turnover actions under bankruptcy law;

(d) Any and all other rights and/or claims arising under the bankruptcy laws;

(e) Claims against third parties that aided and abetted the Debtors' conduct;

(f) Intentional and unintentional tort claims against third parties, including professional firms and former iCap principals and employees;

(g) Claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme;

(h) Breach of contract claims;

(i) Employment claims against former iCap employees, including breach of duties and breach of non-compete agreements and/or other agreements;

(j) Claims against third parties for return of commissions paid;

(k) Claims against former principals, directors, and officers for breach of fiduciary duties, breach of duty of loyalty, and similar claims; and

(l) All other claims not included in these categories that are Causes of Action and Avoidance Actions.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 45

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## G.    Exit Financing

On the Effective Date, without the need for further action, the iCap Trust shall enter into the Exit Financing, including the First Lien Exit Loan Facility and the Tritalent Exit Loan Facility.

## H.    Abandonment of Certain Estate Assets

Unless previously sold or disposed of, on the Effective Date, and without the need for further action, the following Estate Assets shall be deemed abandoned by the Debtors and their Estates pursuant to Bankruptcy Code section 554 and shall not be considered iCap Trust Assets:

- the real property commonly known as 715-775 Broadway, Tacoma, WA; and
- the Debtors' interests in Airlink Holding, LLC and Airlink Markets, LLC (which entities shall be dissolved by the Debtors under the Confirmation Order) including, without limitation, Airlink Holding, LLC's membership interests in Airlink Markets, LLC.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions to Senior Claims and Establishment of Senior Claims Reserve

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Senior Claims Reserve out of Available Cash, and the Distribution Agent shall make Distributions out of the Senior Claims Reserve to Holders of, as applicable, Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims in accordance with the Plan. After the payment of all such Claims in accordance with the Plan and the payment of all related reasonable costs and expenses of the iCap Trustees and the Distribution Agent (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions), any remaining Cash in the Senior Claims Reserve will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement. The iCap Trustees or their designee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 46

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall not be required to give any bond or surety or other security for the performance of any duties as the Distribution Agent.

**B.     Distributions to Secured Claims and Establishment of the Secured Claims Reserves**

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Secured Claims Reserves. Upon the sale or refinancing of any Collateral subject to a Lien of a Holder of an Allowed Secured Claim, such Claim shall be paid from the applicable Secured Claims Reserve or treated as otherwise provided in Article III.B.2. After the payment of all such Claims in accordance with the Plan, any remaining Cash in the Secured Claims Reserves will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement.

**C.     Calculating Distributions**

The iCap Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Investor Claims, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the iCap Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the iCap Trust, and may establish and hold back from Distributions reasonable reserves for other contingencies. When calculating Distributions (and amounts to hold in Distribution Reserves) with respect to Investor Claims, the Outstanding Principal Amounts to be utilized by the iCap Trust shall be determined in accordance with the procedures established by the iCap Trustees.

**D.     Interest and Other Charges**

Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOIN PLAN OF LIQUIDATION – Page 47

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### E.    Means and Methods of Payment

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

Cash payments under the Plan shall be made, at the option and in the sole discretion of the iCap Trustees, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the iCap Trustees, by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance. Requests for reissuance of any check within 180 calendar days of the date of the issuance shall be made directly to the iCap Trustees.

### F.    Fractional Distributions

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

### G.    No Distributions with Respect to Certain Claims

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of a Claim that is not an Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim, including rights conferred by Bankruptcy Code section 506(b), which shall continue to apply until Distribution to the Holders of Secured Claims (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the iCap Trustees),

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 48

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

except that if the Holder of such Claim and the iCap Trustees otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number shall be used with respect to such Claim. For purposes of calculating and making Distributions pursuant to the Plan, the iCap Trustees shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed Claims and Disputed Claims, inclusive of Contingent Claims or Unliquidated Claims in a particular Class. The iCap Trustees also shall be entitled to seek one or more estimation orders from the Bankruptcy Court for such purposes, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.

The iCap Trust may establish a Distribution Reserve on account of Disputed Claims, Contingent Claims, or Unliquidated Claims. The iCap Trust may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Distribution Reserve as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the Distribution Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the Distribution Reserve as, when, and to the extent, such Disputed Claims cease to be Disputed Claims, Contingent Claims, or Unliquidated Claims, whether by virtue of becoming Allowed or otherwise resolved. The iCap Trust Beneficiaries shall be bound by such election, if made by the iCap Trustees, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

## H.    Delivery of Distributions

Distributions in respect of iCap Trust Interests shall be made to Holders of iCap Trust Interests as of the Distribution Record Date. The iCap Trustees shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Distributions to Holders of iCap Trust Interests or Allowed Claims that have not been converted to iCap Trust Interests shall be made (a) at the addresses set forth in the proofs of Claim Filed by such Holders; (b) at the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 49

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

addresses reflected in the Schedules if no proof of Claim has been Filed; or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the iCap Trustees. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the iCap Trustees are notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the iCap Trustees with a current address of a Holder of iCap Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the iCap Trustees shall be held in trust on behalf of the Holder of the iCap Trust Interest or Claim to which they are payable by the iCap Trustees until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

## I.    Withholding, Payment, and Reporting Requirements for Distributions

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The iCap Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the iCap Trust, requiring each Holder of an iCap Trust Interest or Claim to provide a duly completed and properly executed current Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form as a prerequisite to receiving a Distribution. If a Holder of an iCap Trust Interest or Claim does not provide an appropriate Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form or documents reasonably requested by the iCap Trust within 90 days of written request, the iCap Trust will be required to back up withholding amounts due to such Holder and/or take such other action as it deems reasonably appropriate.

Notwithstanding any other provision of the Plan, (a) each Holder of a iCap Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 50

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

would be imposed on the iCap Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the iCap Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**J.    Defense and Setoff Rights**

On and after the Effective Date, the iCap Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing in the Plan shall affect the rights and defenses of the Debtors, the Estates, or the iCap Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the iCap Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the iCap Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**K.    Allocation of Distributions**

Distributions received under the Plan by Holders of iCap Trust Interests and Claims shall be allocated first to the principal amount of such Claim, and then to accrued interest, if any, with respect to such Claim.

**L.    Joint Distributions**

The iCap Trustees may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the iCap Trustees have determined to have an interest in such Claim.

**M.    Forfeiture of Distributions**

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article VI.E, fails to claim an undeliverable Distribution within the time limit set forth in Article VI.H, or fails to complete and return to the iCap Trustees the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Article VI.I (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 51

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## N.     Claims Paid by Third Parties

Except as otherwise set forth herein, and specifically Article III.C.2.a. governing payments received by an Investor on account of Individual Investor-Specific Claims, to the extent a Holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the iCap Trustees on account of such Claim, such Holder shall, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Debtor or the iCap Trustees, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such excess Distribution shall result in the Holder owing the iCap Trust annualized interest at the Federal Judgment Rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the thirty-day grace period specified above until the amount is repaid. For the avoidance of doubt, only prior distributions are required to be returned or paid to the iCap Trust, and no forfeiture of an Investor's Claim shall result unless the Investor fails to comply with Article III.C.2.a.

**ARTICLE VII.**
**CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**

## A.     Disputed Claims Resolution

From and after the Effective Date, the iCap Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement, and any agreement entered into by the iCap Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided, however*, that, under the Plan, all Claims asserted by any of the Excluded Parties are Disputed Claims in their entirety and will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order. Notwithstanding anything else to the contrary

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 52

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

herein, and as provided in Bankruptcy Code section 502(d), the iCap Trustees are not required to make any Distributions to Holders of Allowed Claims, and no such Claims shall be deemed Allowed, unless and until such Holder has paid the Net Prepetition Investor Recovery, or such portion thereof as agreed to as a compromise and settlement, to the iCap Trust or until any iCap Trust Action seeking recovery of the Net Prepetition Investor Recovery is disallowed in its entirety by a Final Order.

## B.    Claim Objections

All objections to Claims shall be Filed by the iCap Trust on or before the Claim Objection Deadline, which date may be extended (a) by sixty (60) days in the discretion of the iCap Trustees without further order of the Bankruptcy Court after notice to parties who have Filed requests for notice and (b) beyond the first sixty-day extension by order of the Bankruptcy Court upon motion Filed prior to the expiration of such period and notice to parties who have Filed requests for notice. If a timely objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim.

## C.    No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of Distributions to Holders of Claims, no payment or Distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a Distribution under this Plan is due, such Distribution to other Holders in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

## D.    Disposition of Reserves After Disallowance

After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 53

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved iCap Trust Interests shall be cancelled.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors have no executory contracts or unexpired leases within the meaning of Bankruptcy Code section 365.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.    Occurrence of Effective Date**

The Effective Date shall not occur and the Plan shall not be considered consummated until each of the following conditions has either been satisfied or waived as set forth below in Article IX.B:

1.    Entry of the Confirmation Order by the Bankruptcy Court in a form reasonably acceptable to both the Debtors and the Unsecured Creditors' Committee, and no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or, if made, shall remain pending;

2.    The Confirmation Order shall have become a Final Order in full force and effect and shall not be subject to any stay of effectiveness;

3.    The iCap Trustees shall be duly appointed, qualified, and acting in that capacity;

4.    The iCap Trust shall have access to funding under the Exit Financing;

5.    There shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 54

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6.　　All necessary actions, agreements, instruments, or other documents to implement the terms and provisions of the Plan have been completed or executed and delivered, as required.

## B.　Waiver of Conditions

The conditions set forth in Article IX.A of the Plan may be waived, in whole or in part, in writing by agreement of the Debtors, at any time, without notice or further order of the Bankruptcy Court.

## C.　Non-Occurrence of Effective Date Conditions

If the conditions necessary for the Effective Date are not met or duly waived as outlined in Articles IX.A and B of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) the Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Unsecured Creditors' Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged. Nothing in the Plan will constitute a waiver or release of any Claims by or against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

## D.　Effective Date Notice

Following the Effective Date, the iCap Trust or its representatives will promptly send notices to all Creditors and the United States Trustee. These notices will include information regarding: (i) the Confirmation Order and the Plan's Confirmation; (ii) the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, if any, along with the deadline for filing any Claims resulting from such rejection; (iv) the deadline set forth in the Plan for filing Administrative Expense Claims; (v) the deadline by which Professional Persons must file and serve any requests for payment of professional fees; and (vi) any other pertinent matters deemed appropriate by the iCap Trustees.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 55

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

### A.    Mailing List

The official listing of Creditor identities and mailing addresses is maintained by the Claims Agent (the "Official Mailing List"). It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity.

### B.    Employment of Professional Persons

The Debtors shall be authorized to employ and compensate Professional Persons following Confirmation upon such terms as the Debtors deem reasonable and appropriate without further notice or order of the Court.

### C.    Payments Shall Be Timely

The Debtors shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the iCap Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the iCap Trust shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

### D.    Treatment of Negotiable Instruments

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled, or satisfied, as the case may be, on the Effective Date.

### E.    Stay of Confirmation Order Shall Not Apply

The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms absent further order of the Bankruptcy Court.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 56

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## F. Preservation of Privileges and Defenses

The actions taken by the Debtors, the iCap Trust, or any of their respective Related Parties in connection with the Plan shall not be a waiver of any privilege or defense of the Debtors or the iCap Trust. Notwithstanding any Debtors providing any privileged information related to any iCap Trust Actions to the iCap Trustees, the iCap Trust, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the iCap Trust Actions and shall remain privileged. The iCap Trust shall retain the right to waive its own privileges. Only the iCap Trustees shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the iCap Trust.

## G. Releases and Related Matters

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed, to the fullest extent permitted under applicable law, to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined by Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this Article X.G shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 57

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

## H.    Exculpation

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other act taken or omission originating or occurring after the Petition Date but before the Effective Date in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; *provided, however,* that nothing in this Article X.H shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order, including with respect to the Supplemental DIP Credit Agreement; and *provided, further,* that the exculpation provisions of this Article X.H shall not apply to acts or omissions constituting actual fraud, willful misconduct, gross negligence, or malpractice by such Exculpated Party as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Article X.H of the Plan.

## I.    Injunction

Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to Article X.G of this

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 58

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan or (ii) are subject to exculpation pursuant to Article X.H of this Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Without limiting the foregoing, the automatic stay provided under Bankruptcy Code section 362(a) shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in this Article X.I shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Equity Interest of any of the obligations of the Debtors or the iCap Trustees under the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.I.

## J.    Injunction Against Interference with the Plan

Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the iCap Trustees, the iCap Trust, or any of the iCap Trust Assets that interfere with the implementation or consummation of the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.J.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 59

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-01243-WLH11    Doc 9360    Filed 07/02/24    Entered 07/02/24 15:23:45    Pg 65 of 76

### K.    SEC Rights

Notwithstanding any language to the contrary in the Disclosure Statement, this Plan, and/or the Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, Causes of Action, proceeding, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

### L.    Insurance Policies

Nothing in the Plan or the Confirmation Order shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the rights and obligations of the Debtors (and their Estates), third party beneficiaries or named insureds, and the Debtors' insurers (and third-party claims administrators) under any of the Debtors' insurance policies (including any D&O Insurance) or modify the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the insurance policies. For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Debtors' insurance policies shall control. For the avoidance of doubt, nothing herein (a) constitutes a rejection of any insurance policy (including the D&O Insurance) or (b) relieves any party from any injunction or stay created or preserved under the Plan.

### M.    Books and Records

On the Effective Date, the Debtors' books and records shall be transferred to the iCap Trustees. The iCap Trustees shall be free, in their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however,* that neither the Debtors nor the iCap Trustees shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 60

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the iCap Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

In the event that the iCap Trust becomes the subject of a directive or requirement to retain any books and records, the iCap Trust may provide notice to the parties who requested or obtained such directive or requirement (the "**Document Destruction Notice Parties**") of an intent to destroy such documents.  In the event a Document Destruction Notice Party objects to the destruction, it shall provide the iCap Trust with a written agreement and assurance, each of which is reasonably acceptable to the iCap Trust, providing for the reimbursement and payment of all costs and expenses associated with the continued maintenance of such documents and records by the iCap Trust.  Such costs and expenses shall include, but may not be limited to, third party fees and expenses, storage device costs, copying fees, the fees and expenses of counsel or other professionals to address any subpoenas or document production demands, and, if such extended maintenance precludes entry of the final decree, any fees (including U.S. Trustee fees) associated with such delay.

**N.    Severability**

In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 61

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

,

## O.    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan before Confirmation and to file a subsequent plan. If the Debtors revoke or withdraw the Plan before Confirmation, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors  or to prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtors.

## P.    Notices

All notices, requests, and demands to or upon the iCap Trustees or the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered and addressed as follows:

If to the Debtors, to:

iCap Enterprises, Inc. *et al.*
c/o Pivot Management Group, LLC
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266
Attn:  Lance Miller (Lance.miller@pivotgrp.com)

With copies to:

O'Melveny & Myers LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Attn:  Julian Gurule (jgurule@omm.com)

and

O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 62

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

New York, NY 10019
Attn: Diana Perez (dperez@omm.com)

If to the Unsecured Creditors' Committee, to:

Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Attn: Armand J. Kornfeld (jkornfeld@bskd.com)
        Aimee S. Willig (awillig@bskd.com)
        Jason Wax (jwax@bskd.com)

and

Corr Cronin LLP
1015 Second Ave., Floor 10
Seattle, WA 98104
Attn: John T. Bender (jbender@corrcronin.com)

If to the iCap Trustees, to:

Pivot Management Group, LLC
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266
Attn: Lance Miller (Lance.miller@pivotgrp.com)

and

B. Riley Advisory Services
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612
Attn: Seth Freeman (sfreeman@brileyfin.com)

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 63

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## Q.  Exhibits/Schedules

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein. After the exhibits and documents are filed, copies of such exhibits and documents shall be available free of charge on the Debtors' case website at: https://cases.creditorinfo.com/icap/documents/docket. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

## R.  Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Person.

## S.  Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interest before the Effective Date.

## T.  Dissolution of the Unsecured Creditors' Committee

Upon the occurrence of the Effective Date, the Unsecured Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professional Persons, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 64

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**U.    Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the CRO, the Debtors, the Unsecured Creditors' Committee, and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes the Plan.

**ARTICLE XI.**
**SATISFACTION OF INDEBTEDNESS; PLAN IS BINDING**

Except as specifically provided in this Plan or in the Confirmation Order the Distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Equity Interests. The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's Claim was Scheduled, (b) a proof of Claim was filed, (c) the Claim is an Allowed Claim, or (d) the Holder thereof voted to accept the Plan.

**ARTICLE XII.**
**MODIFICATIONS OF THE PLAN**

Pursuant to the provisions of Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponents reserve the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT**

**A.    Scope**

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 65

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and the power to do the following:

1.      Except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims;

2.      Hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4);

3.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

4.      Effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

5.      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the iCap Trust Actions, and with respect to the Plan; *provided* that, for the avoidance of doubt, the iCap Trust shall be entitled to file and prosecute any litigation in any other court of competent jurisdiction;

6.      Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 66

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements (including, without limitation, the iCap Trust Agreement), documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

8. Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

9. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11. Hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

12. Enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

13. Except as otherwise limited herein, recover all Estate Assets, wherever located;

14. Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 67

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

15.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

16.    Enter and enforce any order and related agreements for the sale or transfer of property and obligations thereunder pursuant to, *inter alia*, Bankruptcy Code sections 363, 1123, or 1146(a);

17.    Enforce all orders previously entered by the Bankruptcy Court;

18.    Resolve any cases, controversies, suits, or disputes related to the iCap Trust, the iCap Trust Supervisory Board, or the iCap Trustees;

19.    Hear and determine all matters in connection with the iCap Trust Assets, including, without limitation, any disputes with respect to the sale of any iCap Trust Assets; and

20.    Enter a final decree closing the Chapter 11 Cases of the Debtors.

**B.    Right to Seek Bankruptcy Court Approval**

Notwithstanding any provision in the Plan permitting actions without the approval of the Bankruptcy Court, the iCap Trustees retain the authority to present to the Bankruptcy Court any questions for explicit approval regarding specific actions proposed by the iCap Trust, including the management, distribution, or potential sale of iCap Trust Assets. The Bankruptcy Court retains jurisdiction and authority for such matters and shall approve or reject any proposed action upon motion filed by the iCap Trust.

**C.    Non-Exercise of Bankruptcy Court Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XIII of the Plan, the provisions of this Article shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 68

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The Bankruptcy Court shall not retain exclusive jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

RESPECTFULLY SUBMITTED this 9th day of October, 2024.

ICAP ENTERPRISES, INC., ET AL.

By /s/ *Lance Miller*
Name: Lance Miller
Title: Chief Restructuring Officer
          Pivot Management Group, LLC

OFFICIAL UNSECURED CREDITORS' COMMITTEE

By /s/ *Lilian Tan*
Name: Lilian Tan
Title: Co-Chair of the Committee

By /s/ *Thomas Temple*
Name: Thomas Temple
Title: Co-Chair of the Committee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 69

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# Exhibit D

**Dated: October 18th, 2024**

Whitman L. Holt
Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| ICAP ENTERPRISES, INC., *et al.*, | Lead Case No. 23-01243-WLH11 |
| Debtors.[1] | Jointly Administered |
| | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

iCap Enterprises, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases"), having

    a. commenced, on September 29, 2023 (the "Petition Date"),[2] the Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 *et seq.* (the "Bankruptcy Code");

    b. filed, on July 16, 2024, the (i) *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1088] and (ii) *Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1089];

    c. filed, on July 19, 2024, the *Motion For an Order Approving (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1142];

    d. filed, on August 20, 2024, the (i) *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1221] and (ii) *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated*

---

[2] Certain of the Debtors filed their own chapter 11 cases on September 30, November 8, and November 14, 2023. For purposes of this Confirmation Order, "Petition Date" as used herein will refer to the earliest of the Debtors' respective filing dates and "Chapter 11 Cases" includes all of the Debtors' cases, irrespective of when they were filed.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

2

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

*Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1222];

e.  filed, on August 26, 2024, the (i) *Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1236] and (ii) *Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1237];

f.  obtained, on August 29, 2024, the *Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1247] (the "Solicitation Order"), which, among other things (i) approved the Disclosure Statement (as defined below) as having adequate information, as required under section 1125(a) of the Bankruptcy Code, (ii) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the Plan (as defined below), and (iii) approved the Debtors' related notices, forms, and ballots to be submitted to parties in interest in connection with voting on the Plan and the Debtors' voting procedures (the "Voting Procedures");

g.  filed, on August 30, 2024, the *Modified Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1248] (the "Disclosure Statement");

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

3

h.  filed, on August 30, 2024, the *Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1249];

i.  caused, on August 29, 2024 and September 4, 2024, the Solicitation Order to be distributed consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Solicitation Order, as evidenced, by among other things, the *Certificate of Service* [ECF No. 1261] (the "Solicitation Affidavit") filed by BMC Group, Inc. ("BMC"), the Debtors' court-approved noticing, claims, and balloting agent, on September 6, 2024;

j.  caused, on September 4, 2024, the solicitation materials and notice of the deadline for voting on the Plan and objecting to confirmation of the Plan to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, as evidenced, by among other things, the Solicitation Affidavit filed by BMC on September 6, 2024;

k.  caused notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing") to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, as evidenced, by among other things, the Solicitation Affidavit filed by BMC, on September 6, 2024, and the *Certificate of Service* [ECF No. 1394] filed by BMC, on October 15, 2024;

l.  filed, on September 6, 2024, the *Amended Supplemental Declaration of Jeffrey H. Kinrich in Support of the Ponzi Findings and Confirmation of the Plan* [ECF No. 1262] (the "Kinrich Declaration");

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

4

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

m. filed, on September 18, 2024, the *Notice of Filing of Plan Supplement Pursuant to Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1270] (the "Plan Supplement");

n. filed, on October 9, 2024, the *Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1360] (attached hereto as **Exhibit A**, and including all exhibits thereto and as the same may be amended, modified, or supplemented from time to time pursuant to the terms thereof, the "Plan");[3]

o. filed, on October 9, 2024, the *Declaration of Brad Daniel of BMC Group Regarding Voting and Tabulation of Ballots for Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1356] (the "Voting Declaration");

p. filed, on October 9, 2024, the *Memorandum of Law (A) In Support of Confirmation of the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors; and (B) In Response to Pending Objections Thereto* [ECF No. 1362] (the "Confirmation Brief");

---

[3] Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order" or this "Order") shall have the meanings ascribed to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

5

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

q. filed, on October 9, 2024, the *Declaration of Lance Miller in Support of the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1363] (the "Miller Declaration");

r. filed, on October 9, 2024, the *Notice of Filing Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1364];

s. filed, on October 10, 2024, the *Supplemental Declaration of Lance Miller in Support of Ponzi Findings and Plan Confirmation* [ECF No. 1370] (the "Miller Ponzi Declaration");

t. filed, on October 10, 2024, the *Declaration of Stanley Ho in Support of the Ponzi Findings and Confirmation of the Plan* [ECF No. 1369] (the "Ho Declaration");

u. filed, on October 10, 2024, the *Declaration of Nickisha Haine in Support of Ponzi Findings and Plan Confirmation* [ECF No. 1368] (the "Haine Declaration"); and

v. filed, on October 10, 2024, the *Supplemental Brief Regarding Ponzi Findings in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 1371] (the "Ponzi Brief").

The Bankruptcy Court having:

a. set October 16, 2024, at 1:00 p.m. (prevailing Pacific Time) as the date and time for the commencement of the Confirmation Hearing, pursuant to

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

b.  reviewed the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Brief, the Ponzi Brief, the Voting Declaration, the Miller Declaration, the Kinrich Declaration, the Miller Ponzi Declaration, the Ho Declaration, the Haine Declaration, and all pleadings, exhibits, statements, responses, and comments filed in the Chapter 11 Cases regarding confirmation of the Plan ("Confirmation") and making of the Ponzi Findings (as defined below), including any objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.  held the Confirmation Hearing, including hearing the live testimony of Jeffrey H. Kinrich, Stanley Ho, and Nickisha Haine in support of Confirmation and the making of the Ponzi Findings;

d.  heard the statements and arguments made by counsel with respect to approval of the Plan and Ponzi Findings and Confirmation and the objections, if any, thereto;

e.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding the Plan, the Ponzi Findings, and Confirmation and the objections, if any, thereto;

f.  overruled any and all objections (to the extent not withdrawn) to the Plan, Confirmation, the Plan Supplement, the Ponzi Findings, and this Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

7

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

g. taken judicial notice of all pleadings and other documents filed, all orders entered, all evidence proffered or adduced, and all arguments presented, in the Chapter 11 Cases.

**NOW THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to the Plan, Confirmation, and the Ponzi Findings having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions and settlements contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Confirmation Brief, the Voting Declaration, the Miller Declaration, the Kinrich Declaration, the Miller Ponzi Declaration, the Ho Declaration, the Haine Declaration, and the Ponzi Brief establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

A. <u>**Findings of Fact and Conclusions of Law.**</u>

1. The findings of fact and conclusions of law set forth in this Confirmation Order and on the record at the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation and the Ponzi Findings are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent any of the

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

8

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     The Bankruptcy Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue in the Bankruptcy Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the Constitution.

**C.     Eligibility for Relief.**

3.     The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

4.     The Debtors and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (as amended on November 9, 2023 [ECF No. 147], the "Committee" and, together with the Debtors, the "Plan Proponents") are proper plan proponents under section 1121 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of the Chapter 11 Cases.**

5.     On the Petition Date, the Debtors filed voluntary petitions with this Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. On October 2, 2023, the Bankruptcy Court entered an order [ECF No. 9] authorizing the joint administration and procedural consolidation of the Chapter 11 Cases under the lead case *In re iCap Enterprises, Inc.*, Case No. 23-01243-WLH11, in accordance with Bankruptcy Rule 1015(b). On November 16, 2023, the Bankruptcy Court granted the motion for the subsequently filed Debtors, Colpitts Sunset, LLC, CS2 Real Estate Development LLC, and iCap International Investments, LLC to be jointly administered

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

9

under the lead case: *In re iCap Enterprises, Inc.*, Case No. 23-01243-WLH11. *See* ECF No. 164. Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

**E.    Appointment of the Committee.**

6.    On October 20, 2023, the Office of the United States Trustee for the Eastern District of Washington (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [ECF No. 102] and amended such appointment on October 30, 2023 [ECF No. 112].

**F.    Judicial Notice.**

7.    The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases, including the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

**G.    Plan Supplement.**

8.    On September 18, 2024, the Debtors filed the Plan Supplement. The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the Plan Supplement was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), the Solicitation Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

10

by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement and this Confirmation Order. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules, *provided*, that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

H.     **Transmittal and Mailing of Solicitation Materials; Notice.**

9.     As evidenced by the Solicitation Affidavit and the Voting Declaration, the Disclosure Statement, the Plan, the Solicitation Order, the ballots for voting on the Plan (the "Ballots"), the notice of the Confirmation Hearing, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the procedures set forth in the Solicitation Order.

10.     Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases. The transmittal and service of the Confirmation Materials complied with the procedures set forth in the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance with the provisions of the Bankruptcy Court's orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) were given due, proper, timely, and adequate notice in accordance with the procedures set forth in the Solicitation Order. Because

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

11

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**I.    Voting.**

11.    Prior to the Confirmation Hearing, the Debtors filed the Voting Declaration. As set forth in the Voting Declaration, the procedures used to solicit votes on the Plan and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.    As set forth in the Plan, Holders of Claims in Classes 3 and 4 (collectively, the "Voting Classes") were eligible to vote on the Plan pursuant to the Voting Procedures. In addition, Holders of Claims in Classes 1 and 2 are unimpaired and conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 5 and Holders of Equity Interests in Class 6 (collectively, the "Deemed Rejecting Classes") are impaired under the Plan and have been deemed to reject the Plan. As evidenced by the Voting Declaration, the statements made on the record at the Confirmation Hearing, and this Confirmation Order, Class 3 and Class 4 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.

**J.    Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

13.    Based on the record before the Bankruptcy Court in the Chapter 11 Cases, the Plan Proponents and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

12

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Rules, the Solicitation Order, the Voting Procedures, and any other applicable rules, laws, and regulations in connection with all of their respective activities relating to the solicitation of votes on the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code, and therefore, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**K.     Burden of Proof.**

14.     The Plan Proponents as proponents of the Plan, have met their burden of proving the applicable elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. Further, the Plan Proponents have proven the elements of section 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

**L.     Bankruptcy Rule 3016.**

15.     The Plan is dated and identifies the Plan Proponents as the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan Proponents appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The Plan and Disclosure Statement describe in specific and conspicuous language all acts and actions to be enjoined and identify the Persons that would be subject to injunctions, thereby satisfying Bankruptcy Rule 3016(c).

**M.     Objections.**

16.     To the extent that any objections (including any reservations of rights) to Confirmation of the Plan or the Ponzi Findings have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, or are not otherwise resolved under this Confirmation Order or as stated by the Debtors and/or the Committee on the record of the Confirmation Hearing, all such objections are overruled on the merits. Any

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

13

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

resolutions of objections to entry of this Confirmation Order explained on the record at the Confirmation Hearing are hereby incorporated by reference.

### N.    Conduct of a Ponzi Scheme.

17.    The evidence detailed above demonstrates, and the Bankruptcy Court hereby finds (the "Ponzi Findings"), that (i) beginning no later than October 2018 (the "Ponzi Start Date") through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the principals operated the iCap enterprise as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; (ii) the Ponzi scheme involved the use of funds provided by new investors to the iCap enterprise to make payments to already-existing investors and other creditors; and (iii) the iCap enterprise did not operate as a legitimate profit-making business. *See In re EPD Inv. Co.,* 114 F.4th 1148, 1162–63 (9th Cir. 2024).

### O.    Modifications or Alterations to the Plan.

18.    To the extent the Plan has been modified, supplemented, or altered between solicitation and the date of entry of this Confirmation Order (collectively, the "Modifications"), such Modifications made to the Plan constitute clarifications or technical changes, and do not materially and adversely affect or change the treatment of any Claims against, or Equity Interests in, the Debtors and comply in all respects with section 1127 of the Bankruptcy Code. All such Modifications are incorporated by reference herein and approved. Accordingly, pursuant to Bankruptcy Rule 3019, such Modifications, if any, do not require (a) additional or further disclosure with respect to the Modifications under section 1125 of the Bankruptcy Code and/or (b) either resolicitation of votes on the Plan or affording Holders of Claims in the Voting Classes

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

14

the opportunity to change a previously cast Ballot under section 1126 of the Bankruptcy Code.

**P.** **Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

19. As detailed below, the Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**1.** **Compliance With Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

20. The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**(i)** **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

21. The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Except with respect to Administrative Expense Claims, Priority Tax Claims, and Supplemental DIP Claims, which need not be classified, Article III of the Plan classifies all Claims against, and Equity Interests in, the Debtors into six (6) separate Classes based on the characteristics of those Claims and Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests. Each Class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

15

**(ii)     Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**

22.     Article III of the Plan specifies that Claims in Class 1 (Priority Claims) and Class 2 (Secured Claims) are unimpaired under the Plan. Additionally, Administrative Expense Claims, Priority Tax Claims, and Supplemental DIP Claims are not classified under, and are unimpaired by, the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(iii)     Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

23.     Article III of the Plan specifies that Claims in Class 3 (Investor Claims) and Class 4 (General Unsecured Claims) are impaired and entitled to vote on the Plan, while Claims and Equity Interests in Class 5 (Subordinated Claims) and Class 6 (Equity Interests) are impaired and deemed to reject the Plan. In addition, Article III describes the treatment of the Claims and Equity Interests in such Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**(iv)     No Discrimination (11 U.S.C. § 1123(a)(4)).**

24.     Article III of the Plan provides for the same treatment of each Claim and Equity Interest in a particular Class, unless the Holder of a particular Claim or Equity Interest agrees to less favorable treatment of such Claim or Equity Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(v)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**

25.     Article V and various other provisions of the Plan provide in detail adequate and proper means for the Plan's implementation, including, but not limited to, (as more fully described in Article V of the Plan): (a) the authorization to undertake all corporate actions necessary to effectuate the Plan under Article V.B of the Plan; (b) the dissolution of the Debtors under Article V.B.3 of the Plan; (c) the cancellation of indebtedness under Article V.C of the Plan; (d) the appointment of the iCap Trustees

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

16

under Article V.D.1 of the Plan; (e) the creation of the iCap Trust under Article V.D.2 of the Plan; (f) the vesting of all iCap Trust Assets in the iCap Trust under Article V.D.3 of the Plan; (g) the sources of cash for Distributions under the Plan under Article V.D.11; (h) the substantive consolidation of the Debtors as provided in Article V.E of the Plan; (i) the preservation of all Causes of Action and Avoidance Actions under Article V.F of the Plan; (j) the effectuating of exit financing documents and an exemption from registration under the Securities Act under Articles V.D.13, and V.G of the Plan, and (k) the abandonment of certain Estate Assets under Article V.H of the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (vi)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

26.    The Debtors are not issuing any non-voting equity securities of any corporation, and each of the Debtors will eventually be dissolved under the Plan. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan.

### (vii)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

27.    The Plan provides for the dissolution and winding down of the Debtors' business and appointment of the iCap Trustees as the managers, officers, and representatives of the iCap Trust. Article V.D of the Plan provides for the creation of the iCap Trust and for the appointment of the initial iCap Trustees and the initial iCap Trust Supervisory Board to serve in accordance with the terms of the Plan and the iCap Trust Agreement. The iCap Trustees' shared compensation terms are set forth in Article V.D.1 of the Plan. These designations under the Plan are consistent with the interests of Creditors and Holders of Equity Interests and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

17

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**(viii)  <u>Discretionary Contents of the Plan (11 U.S.C. § 1123(b))</u>.**

28.    The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.

**(a)    <u>Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1))</u>.**

29.    As contemplated by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan: (i) impairs Investor Claims (Class 3), General Unsecured Claims (Class 4), Subordinated Claims (Class 5), and Equity Interests (Class 6), and (ii) leaves unimpaired Priority Claims (Class 1) and Secured Claims (Class 2).

**(b)    <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.**

30.    Any and all executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code. The Debtors, in rejecting the contracts and leases under the Plan, utilized their sound business judgment and complied with the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code.

**(c)    <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Equity Interests (11 U.S.C. § 1123(b)(3))</u>.**

31.    <u>Compromise and Settlement</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies resolved pursuant to the Plan and in these Chapter 11 Cases.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

18

Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, creditors, and parties in interest.

32. _Subordinated Claims_. The allowance, classification, and treatment of all Allowed Claims and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

33. _Release_. The releases (the "_Release_") of the Debtors; the Committee and its current and former members (in their capacities as such); the CRO; the DIP Parties; and the preceding's respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person; _provided, however_, that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who (i) are employed by the Debtors on the Effective Date or (ii) whose employment was approved by the Bankruptcy Court (collectively, the "_Released Parties_"), are essential and critical provisions of the Plan. The Release, which includes by reference each of the related provisions and definitions contained in the Plan, is (a) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (b) fully consensual; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of such claims; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

19

34. The Release was a necessary inducement to the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan. Specifically, the Released Parties, individually and collectively, made significant contributions to the Chapter 11 Cases, including funding the Chapter 11 Cases, and otherwise actively supporting the negotiation and prosecution of the Plan. The Release therefore appropriately offers protection to parties who actively and constructively participated in and contributed to the Debtors' Chapter 11 Cases and without whom Confirmation could not have been achieved.

35. The scope of the Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Release to the Plan, the Release is approved.

36. <u>Exculpation</u>. The exculpation provision set forth in Article X.H of the Plan (the "<u>Exculpation</u>") is approved, *provided* that the term Exculpated Parties as used in this Confirmation Order and Article X.H of the Plan with respect to the CRO's Related Parties shall be limited to only the Related Parties that participated in these Chapter 11 Cases. The Exculpation is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good faith, arm's length negotiations with key constituents, is a key element of the Plan, and is appropriately limited in scope, as it will have no effect of the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, willful misconduct, gross negligence, or malpractice. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of, and Distributions under, the Plan, and therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

20

law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. Accordingly, the Exculpation is approved.

37. <u>Injunctions</u>. The injunctive provisions set forth in Articles X.I and X.J of the Plan (collectively, the "<u>Injunctions</u>") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Release and the Exculpation in Article X of the Plan. Such Injunctions are appropriately tailored to achieve those purposes. Accordingly, the Injunctions are approved.

38. <u>Preservation of Estate Causes of Action</u>. The provisions regarding the preservation of all of the Debtors' and Estates' Causes of Action in the Plan, Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, including Article V.F of the Plan, are appropriate and are in the best interests of the Debtors, their respective Estates, and their Creditors. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, Article V.F.3 provides illustrative categories of claims that are preserved under the Plan and will be transferred and conveyed to the iCap Trust as provided for in the Plan and as authorized by this Confirmation Order.

**(d)      Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**

39. The Plan contains other appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, as contemplated by section 1123(b)(6) of the Bankruptcy Code.

**2.      The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

40. As detailed below, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

21

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

(i)   The Debtors and the Committee, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127, 1128, and 1129 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3016, 3017, 3018, and 3019, the Local Rules, the Solicitation Order, and any applicable nonbankruptcy laws, rules, and regulations in transmitting the Disclosure Statement, the Plan, the Plan Supplement, and any related documents and notices.

(ii)  The votes to accept or reject the Plan were solicited by the Plan Proponents and their agents after the Bankruptcy Court approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and entered the Solicitation Order.

(iii) The Plan Proponents and their agents (a) have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and (b) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article X.H of the Plan.

(iv)  The Plan Proponents and their agents and professionals have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering,

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

22

issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such Distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made thereunder, so long as such Distributions are made consistent with and pursuant to the Plan.

### 3.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

41.    The Plan (including all documents and agreements necessary to effectuate the Plan) and the transactions and settlements contemplated in the Plan have been proposed in good faith and not by any means forbidden by law, with the legitimate and honest purpose of maximizing recoveries to parties in interest. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the record of the Confirmation Hearing, the Miller Declaration, and all other proceedings held in the Chapter 11 Cases. The Plan is the product of arm's length negotiations between the Debtors, the Committee, and other parties in interest. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Equity Interests. Consistent with the overriding purpose of chapter 11, the Debtors commenced the Chapter 11 Cases, and proposed the Plan, with the legitimate purpose of maximizing the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The Plan's classification, indemnification, exculpation, release, and injunction provisions were negotiated in good faith and at arm's length, are consistent

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

23

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code, and are each necessary for implementation of the Plan.

42.     The Plan Proponents and each of the constituents who negotiated the Plan, including, but not limited to, each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person (a) acted in good faith in negotiating, formulating, and proposing the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and this Confirmation Order and (ii) take any actions authorized and directed or contemplated by this Confirmation Order. Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**4.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

43.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees, costs, and expenses to be paid by the Debtors, or the iCap Trustees, as applicable, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**5.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

44.     Article V.B.2 of the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code because the Debtors have disclosed that, on the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

24

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets. The Debtors have also disclosed that the CRO, Lance Miller, and Seth Freeman will serve as the initial iCap Trustees and the nature of their compensation for their role as the iCap Trustees. The appointment of the iCap Trustees was, is, and will be consistent with the interests of Holders of Claims and Equity Interests and public policy. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**6.  No Rate Changes (11 U.S.C. § 1129(a)(6)).**

45.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**7.  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

46.  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Miller Declaration, the liquidation analysis attached to the Disclosure Statement as Exhibit B, the recovery analysis attached to the Disclosure Statement as Exhibit C, and the facts and circumstances of the Chapter 11 Cases: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) provides a reasonable estimate of the liquidation values of the Debtors upon

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

25

hypothetical conversion to cases under chapter 7 of the Bankruptcy Code; and (e) establishes that Holders of Allowed Claims or Equity Interests will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### 8. Acceptance of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8)).

47. Classes 1 and 2 are each Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Classes 3 and 4 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. The Deemed Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the Deemed Rejecting Classes, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

### 9. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).

48. The treatment of Administrative Expense Claims and Priority Tax Claims under Article III.A the Plan, and of Priority Claims under Article III.B.1 of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Notwithstanding anything to the contrary set forth in the Plan, the Debtors agree that any reference to consent to treatment that differs from the treatment permitted by section 1129(a)(9) of the Bankruptcy Code shall require actual consent and failure to object to Confirmation of the Plan shall not be deemed to be consent to receive treatment by a Holder of a Claim other than as provided for under section 1129(a)(9) of the Bankruptcy Code.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

26

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**10. Acceptance of the Plan by at Least One Impaired Class (11. U.S.C.§ 1129(a)(10)).**

49. All Voting Classes are impaired and, as indicated in the Voting Declaration and this Confirmation Order, Classes 3 and 4 have voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11. Feasibility (11 U.S.C. § 1129(a)(11)).**

50. The Plan proposes a liquidation of all Estate Assets and the Distribution of Cash and/or iCap Trust Interests to Holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

**12. Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

51. The Plan requires that all fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code have been paid or will be paid, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**13. Non-Applicability of Certain Bankruptcy Code Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

52. The Debtors (a) do not provide or pay any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, (b) are not obligated to pay any domestic support obligations, (c) are not individuals, and (d) are not a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are, therefore, inapplicable to the Chapter 11 Cases.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

27

**14.    Confirmation of the Plan Over Non-Acceptance of Impaired Classes. (11 U.S.C. § 1129(b)).**

53.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed because the evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered, (b) utilizes reasonable and appropriate methodologies and assumptions, (c) has not been controverted by other evidence, and (d) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Classes 5 and 6, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) no Class of Claims or Equity Interests that is junior to the Claims and Equity Interests in Classes 5 and 6 will receive distributions or retain any property under the Plan on account of such junior Claim or Equity Interest and (ii) the Claims and Equity Interests in Classes 5 and 6 are "dissimilar" from the Claims and Equity Interests in all other Classes and the Plan does not provide any distributions to similarly situated Holders of Claims or Equity Interests.

**15.    Only One Plan (11 U.S.C. § 1129(c)).**

54.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan (including previous versions thereof) is the only chapter 11 plan filed in the Chapter 11 Cases.

**16.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

55.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

28

**17.    Small Business Case (11 U.S.C. § 1129(e)).**

56.    The Chapter 11 Cases are not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is not applicable.

**Q.    Satisfaction of Confirmation Requirements.**

57.    Based upon the foregoing, the Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, the Plan satisfies all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and the Plan should be confirmed.

**R.    Substantive Consolidation.**

58.    All of the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, as set forth in the Plan, and such substantive consolidation is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Equity Interests. Although Creditors generally may not have treated all of the Debtors as one legal entity, there is substantial commingling of assets and liabilities among the Debtors. *See In re Bonham*, 229 F.3d 750, 764-65 (9th Cir. 2000). It is impossible to trace the flow of funds with respect to the Debtors' prepetition transactions since the majority of the proceeds received were commingled and distributed without regard to corporate formalities, which entanglement warrants substantive consolidation of all the Debtors. Moreover, the Chapter 11 Cases are unique—the perpetration of a fraudulent scheme by a common corporate enterprise, one that in the process did not keep accurate records of the multitude of intercompany transactions that have occurred, making an unscrambling of the enterprise's accounts impossible—but that has justified substantive consolidation in other cases. *See, e.g.*, *In re Bonham*, 229 F.3d at 764-65 (consolidating entities in Ponzi

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

29

scheme case); *In re DBSI, Inc.*, Case No. 08-12687, ECF No. 5924 (Bankr. D. Del. Jan. 19, 2010) (same); *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789, ECF No. 252 (Bankr. S.D.N.Y. June 10, 2009) (same). Substantive consolidation results in equitable treatment to all creditors and was not used to disadvantage a particular creditor group. Accordingly, the requirements of substantive consolidation are satisfied and the substantive consolidation of the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, in accordance with the Plan is hereby approved. *See In re Bonham*, 229 F.3d at 764-65; *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005).

**S.    Disclosure of Facts.**

59.    The Debtors have disclosed all material facts, to the extent applicable, regarding the Plan and the adoption, execution, and implementation of the other matters provided for under the Plan, including, without limitation, (a) the establishment of the iCap Trust and the execution and entry into the iCap Trust Agreement; (b) the identity of the iCap Trustees and their proposed compensation; (c) the adoption and making of the Ponzi Findings; (d) the method and manner of Distributions under the Plan; (e) the winding down of the Debtors' business and dissolution of the Debtors; (f) the exemption under section 1146(a) of the Bankruptcy Code; (g) the Releases, Exculpation, Injunctions, and preservation of Debtors' or Estates' Causes of Action and Avoidance Actions; and (h) the adoption, execution, and delivery of all contracts, leases, instruments, releases, and other agreements related to any of the foregoing.

**T.    iCap Trust Agreement.**

60.    The iCap Trust Agreement, and the iCap Trust to which it relates, are, individually and collectively, essential elements of the Plan, and entry into the iCap Trust Agreement is in the best interests of the Debtors, their Estates, and the Holders of Claims and Equity Interests and is necessary and appropriate for consummation of the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

30

Plan. The Debtors have exercised sound business judgment in determining to enter into the iCap Trust Agreement and have provided adequate notice thereof. The terms of the iCap Trust Agreement set forth in the Plan Supplement have been negotiated in good faith and at arm's length among the Debtors and the Committee and are deemed to have been made in good faith and for legitimate business purposes. The terms and conditions of the iCap Trust Agreement set forth in the Plan Supplement are fair and reasonable and are approved.

**U.    Exit Financing.**

61.    The terms and conditions of the Exit Financing (which term, for the avoidance of doubt, shall include the (1) Exit Loan and Security Agreement with Keith Holdings LLC and iCap DIP Finance Group LLC, which contemplates a commitment fee of $150,000.00 to be paid by the iCap Trust upon approval of the Exit Financing; (2) Exit Loan and Security Agreement with Redmond Funding Group, LLC; and (3) Exit Loan and Security Agreement with Tritalent Funding Group, LLC (collectively, the "Exit Financing Documents")) and all of the transaction documents governing the Exit Financing and the fees to be paid thereunder (a) are fair and reasonable, (b) reflect the Debtors' exercise of prudent judgment, (c) are supported by reasonably equivalent value and fair consideration, (c) are proposed in good faith, (d) are critical to the success and feasibility of the Plan, (e) are in the best interests of the Debtors, their Estates, and their Creditors, and (f) were negotiated in good faith, without fraud or collusion and at arm's length among the parties, without the intent to hinder, delay, or defraud any Creditor of the Debtors.

**V.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

62.    Without limiting or modifying the rights of the Debtors, each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

31

been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**W.    Implementation.**

63.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the iCap Trust Agreement and any documents and agreements with respect to the Exit Financing) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, and in accordance with the terms and conditions thereof, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been and are continuing to be negotiated in good faith, at arm's length, are fair and reasonable, and are approved. The Debtors are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

**X.    Retention of Jurisdiction.**

64.    Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Plan, this Confirmation Order, and the Chapter 11 Cases, to the fullest extent permitted by law, as set forth in Article XIII of the Plan.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

32

**Y.    Waiver of Stay.**

65.    Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

**ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACTS AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, THAT:**

**A.    Approval of the Plan.**

66.    The Plan, attached hereto as **Exhibit A**, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order (whether or not such terms are expressly referenced or described herein). The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), and the execution, delivery, and performance thereof, are authorized and approved as finalized, executed, and delivered. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document or exhibit are approved and confirmed in their entirety. The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

**B.    Objections.**

67.    To the extent that any objections (including any reservation of rights) to Confirmation have not been withdrawn, waived, or settled prior to entry of this

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

33

Confirmation Order, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections are denied and overruled on the merits and in their entirety.

## C.    **Approval of Plan Modifications**.

68.    The Modifications are approved in all respects pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019(a). The Plan (as modified by this Confirmation Order) is deemed accepted by all Holders of Claims that voted to accept or were deemed to have accepted any prior iteration of the Plan, and no other or further disclosure or solicitation of votes is required. For the avoidance of doubt, all references to the Plan herein shall mean the Plan as modified by the Modifications.

## D.    **Amendment of the Plan**.

69.    Subject to the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan at any time prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification complies with the requirements of this paragraph 69 and Article XII of the Plan, and does not materially and adversely change the treatment of the Claim of such Holder; *provided*, *however*, that any Holders of Claims that were deemed to have accepted the Plan because such Claims were unimpaired shall continue to be deemed to have accepted the Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

## E.    **Plan Classification**.

70.    The Plan's classification scheme is approved. The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

34

to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the iCap Trust except for voting purposes.

**F.      Information Requests to Investors.**

71.    Upon request, Investors must, within twenty-one (21) calendar days of receipt of such request, respond to requests for information by the iCap Trustees with respect to Investor Claims. Failure to respond to a request for information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion, subject to the following:

a.    Any request to an Investor for information pursuant to this paragraph shall include a clear statement that failure to provide the information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion;

b.    The iCap Trustees may provide additional time to respond, if reasonably necessary and requested within the twenty-one (21) day period;

c.    An Investor shall have the right to seek Bankruptcy Court determination on the reasonableness of the information requested; *provided, however*, that in the event the court determines that the request is reasonable, the Investor's Claim shall be subject to reduction in an amount sufficient (as determined by the iCap

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

35

Trustees) to recover attorneys fees and costs incurred by the iCap Trust in addressing the request for determination;

    d.    If a timely determination is requested, the Investor shall not be subject to forfeiture of the Investor's Claim until a resolution by the Bankruptcy Court and a reasonable amount of time to comply with the determination of the Bankruptcy Court; and

    e.    Any Personally Identifiable Information, as that term is defined in section 101(41A) of the Bankruptcy Code, provided by an Investor to the iCap Trust shall be safeguarded and held confidential in accordance with reasonable commercial standards.

## G.    <u>Claims Paid by Third Parties</u>.

72.    Except as otherwise set forth herein or in the Plan, and specifically Article III.C.2.a of the Plan, governing payments received by an Investor on account of Individual Investor-Specific Claims, to the extent a Holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the iCap Trustees on account of such Claim, such Holder shall, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Debtor or the iCap Trustees, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such excess Distribution shall result in the Holder owing the iCap Trust annualized interest at the Federal Judgment Rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the thirty-day grace period specified above until the amount is repaid. For the avoidance of doubt, only prior Distributions are required to be returned or paid to the iCap Trust, and no

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

36

forfeiture of an Investor's Claim shall result unless the Investor fails to comply with Article III.C.2.a of the Plan.

**H.      Comprehensive Settlement of Claims and Controversies.**

73.    Pursuant to sections 1123(a)(5), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of this Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

74.    The entry of this Confirmation Order constitutes Ponzi Findings that (i) beginning no later than the Ponzi Start Date through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the iCap enterprise operated as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors. The Ponzi Findings are not binding on any other court or governmental or regulatory authority. The Ponzi Findings contained in this

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Confirmation Order constitute and satisfy the Ponzi finding condition set forth in the Exit Financing.

75.    Any Ponzi Finding by the Bankruptcy Court, including any finding of a Ponzi scheme or a Ponzi Start Date, shall not be preclusive nor binding on Umpqua Bank in any other court or governmental or regulatory authority, and neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will seek to enforce the same against Umpqua Bank in this Bankruptcy Court. In addition, to the extent the Debtors are substantively consolidated as of the Effective Date, such substantive consolidation shall not affect or diminish any defenses or rights of Umpqua Bank with respect to any claims associated with the Debtors or any individual Debtor, including any deposit accounts held by a Debtor at Umpqua Bank. The Plan Proponents acknowledge and agree that: Umpqua Bank is not a Creditor or party to this proceeding, that Umpqua Bank has not had a full or fair opportunity to litigate any Ponzi Findings to a final order or judgment, and that no claims have been specifically asserted against Umpqua Bank, or otherwise adjudicated in any manner in relation to the Plan or through Confirmation of the Plan.

76.    In accordance with the terms of the *Stipulation Resolving Christopher Christensen's Objection to Confirmation of the Plan* [ECF No. 1266] (the "Christensen Stipulation"), any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan relating to any finding of a Ponzi scheme, a Ponzi start date, or any fraud or misconduct by or on behalf of the Debtors or Christensen shall have no preclusive effect on Christensen and shall not be binding on Christensen in any future litigation or proceeding against Christensen in any tribunal. Neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will pursue any action in the Bankruptcy Court against Christensen, nor seek to enforce any such findings against Christensen or contend that Christensen is bound by any such

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

38

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

findings; *provided* that, in the event Christensen files a motion or complaint in the Bankruptcy Court asserting a monetary claim or seeking affirmative recovery of funds from the Debtors' Estates or the iCap Trust based on any activity that occurred before the date of the Christensen Stipulation, the Debtors, the Committee, the iCap Trust, or the iCap Trustees (as applicable) will be permitted to respond to such action and seek to enforce the findings.

77.    In accordance with the *Stipulation Resolving Wilmington's Objection to Confirmation of the Plan* [ECF No. 1338], any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan relating to any finding of a Ponzi scheme (inclusive of the Ponzi Finding), a Ponzi start date, any fraud or misconduct by or on behalf of the Debtors, or any element of any claim or cause of action asserted against Wilmington, shall have no preclusive effect on Wilmington and shall not be binding on Wilmington in any future litigation or proceeding against Wilmington in any tribunal (including the pending Wilmington Adversary Proceeding). Neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will seek to enforce any such findings against Wilmington or contend that Wilmington is bound by any such findings. Any and all rights and defenses of Wilmington to defend the claims and causes of action against it are preserved.

78.    This comprehensive compromise and settlement, including the Ponzi Findings, is a critical component of the Plan and is designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

## I.    <u>**Substantive Consolidation of Debtors.**</u>

79.    On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

39

sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

80.    Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, of the substantive consolidation of the Debtors in the manner set forth herein; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

40

81.    Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

82.    Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

**J.    Sources of Cash for Plan Distributions.**

83.    The Debtors shall fund Distributions under the Plan with: (a) Available Cash on hand; (b) the Exit Financing; and (c) all other proceeds, if any, generated from the liquidation of the iCap Trust Actions.

**K.    Vesting of iCap Trust Assets.**

84.    On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or this Confirmation Order, the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The iCap Trustees shall be the exclusive trustee of the iCap Trust Assets for

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

41

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all iCap Trust Assets. The iCap Trust shall hold and distribute the iCap Trust Assets in accordance with the provisions of the Plan and the iCap Trust Agreement.

85.    Notwithstanding the foregoing or any other provision in the Plan, in the event that the iCap Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental Unit for the benefit of the Investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or iCap Trust Assets, and the iCap Trustees are authorized to and shall distribute all such monies only to Investors who are Holders of Class A iCap Trust Interests or Class B iCap Trust Interests on account thereof, subject to the Plan and the iCap Trust Agreement; *provided* that the iCap Trustees and their agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the iCap Trust's collection, administration, and distribution of such monies to the applicable Investors.

86.    Except as otherwise provided in the Plan or this Confirmation Order, the iCap Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

42

commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

87. No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Avoidance Action, Causes of Action, or Contributed Claims against them as any indication that the iCap Trust will not pursue any and all available Avoidance Actions, Causes of Action, or Contributed Claims against such Person. The Debtors and the iCap Trust expressly reserve all rights to prosecute any and all Avoidance Actions, Causes of Action, or Contributed Claims against any Person other than the Released Parties, in accordance with the Plan.

88. Notwithstanding anything to the contrary in the Plan, the transfer of the iCap Trust Assets in Article V of the Plan shall not be free and clear of the Supplemental DIP Claims, the Obligations (as defined in the Supplemental DIP Credit Agreement), or the liens, claims, and interests granted to the DIP Parties by the Debtors pursuant to the Supplemental DIP Credit Agreement. The iCap Trust assumes and remains bound by the Supplemental DIP Credit Agreement and all Obligations (as defined in the Supplemental DIP Credit Agreement) thereunder and the Bankruptcy Court's order approving the Supplemental DIP Credit Agreement. The iCap Trust Assets shall be encumbered by the liens, claims, obligations, and security interests granted to the DIP Parties under the Supplemental DIP Credit Agreement and the Bankruptcy Court's order approving the Supplemental DIP Credit Agreement, and the iCap Trust shall not distribute collateral (or proceeds thereof) of the DIP Parties until the Obligations (as defined in the Supplemental DIP Credit Agreement) under the Supplemental DIP Credit Agreement are satisfied in full.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**L.    Abandonment of Certain Estate Assets.**

89.    On the Effective Date, and without the need for further action, the following Estate Assets shall be abandoned by the Debtors and their Estates pursuant to section 554 of the Bankruptcy Code and shall not be considered iCap Trust Assets: (i) the real property commonly known as 715–775 Broadway, Tacoma, WA; and (ii) the Debtors' interests in Airlink Holdings, LLC's ("Holdings") and Airlink Markets, LLC ("Markets" and, together with Holdings, "Airlink") (which entities shall be dissolved by the Debtors in accordance with this Confirmation Order) including, without limitation, Holdings' membership interests in Markets (the "Airlink Membership Interests").

90.    Upon the Effective Date, any of the Debtors' remaining interests in Airlink including, without limitation, the Airlink Membership Interests, shall be abandoned. In addition, the Debtors and/or the iCap Trustees, as applicable, are authorized to shut down Airlink, notify all regulators, and file any applications or documents to effectuate such abandonment and shutdown.

**M.    Termination of Directors and Officers.**

91.    On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

44

**N.    Appointment of iCap Trustees.**

92.    The appointment of Lance Miller and Seth Freeman as the iCap Trustees to perform the functions of the iCap Trustees as set forth in Article V.D of the Plan and the iCap Trust Agreement is hereby approved. The iCap Trustees shall have the rights, powers, and obligations set forth in, and shall be entitled to reimbursement of their costs and expenses incurred in connection with exercising their functions under, the Plan in accordance with Article V.D of the Plan and the iCap Trust Agreement.

**O.    Corporate Action.**

93.    On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

94.    Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (a) any existing director, manager, or officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (b) the iCap Trustees shall be deemed the manager, officer, and representative of the iCap Trust to exercise the rights, power, and authority of the iCap Trust under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (c) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. This Confirmation Order modifies the Debtors' constituent documents such that the provisions of the Plan can be effectuated. The Plan shall be administered by the iCap Trustees, and all actions

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

taken thereunder in the name of the iCap Trust shall be taken through the iCap Trustees. All corporate governance activities of the iCap Trust shall be exercised by the iCap Trustees in their discretion, subject to the terms of the Plan.

**P.    Closing of the Chapter 11 Cases.**

95.    As soon as practicable after the iCap Trustees exhaust substantially all of the iCap Trust Assets by making the final Distributions under the Plan, the iCap Trustees shall, at the expense of the iCap Trust, (a) abandon, destroy, or otherwise dispose of any books and records of the Debtors that the iCap Trustees deem not necessary for the continued administration of the Plan or required to be retained under applicable law (as determined by the iCap Trustees in good faith), without the need for any order of the Bankruptcy Court, *provided, however*, that such right shall be limited in accordance with paragraph 97 of this Confirmation Order, (b) file a motion for entry of a final decree closing the Chapter 11 Cases that have not been already closed in accordance with the Bankruptcy Code and the Bankruptcy Rules and stating that the assets of the iCap Trust have been exhausted and final Distributions have been made under the Plan, (c) file the necessary paperwork in the respective jurisdictions to effectuate the dissolution of the Debtors in accordance with the laws of such jurisdiction, and (d) resign as the officer, director, and manager, as applicable, of the Debtors. Upon the Bankruptcy Court's entry of a Final Order granting the motion described in clause (b) of the preceding sentence, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, and the remaining Chapter 11 Cases shall be closed on the date that the Bankruptcy Court has entered such Final Order.

96.    Notwithstanding the immediately preceding paragraph, if the iCap Trustees deem it appropriate, the iCap Trustees may seek authority from the Bankruptcy

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

46

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Court to close any of the Chapter 11 Cases and dissolve or merge any of the Debtors prior to all final Distributions having been made under the Plan.

## Q.    Books and Records.

97.    On the Effective Date, the Debtors' books and records shall be transferred to the iCap Trustees. The iCap Trustees shall be free, in their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however*, that neither the Debtors nor the iCap Trustees shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or this Confirmation Order shall affect the obligations of the Debtors, the iCap Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

## R.    Dissolution of the Debtors.

98.    Upon the Distribution of all iCap Trust Assets, the Debtors shall be dissolved for all purposes by the iCap Trustees without the necessity for any other or further actions to be taken by or on behalf of any Debtors or payments to be made in connection therewith; *provided*, *however*, that, without the need of any further approval, the iCap Trustees in their discretion may execute and file documents and take all other actions as they deem appropriate relating to the dissolution of the Debtors under

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

47

applicable law, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

**S.    Cancellation of Indebtedness.**

99.    Except as otherwise provided in the Plan, on the Effective Date, except for the purpose of evidencing a right to Distribution under the Plan, any Notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtors, except assumed executory contracts and assumed unexpired leases, and/or such Notes or other instruments evidencing indebtedness or obligations of the Debtors that are unimpaired, reinstated, assumed, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

**T.    Exit Financing.**

100.   The Debtors or the iCap Trust, as applicable, are hereby authorized to enter into, execute, deliver, file, record, and issue the Exit Financing Documents and to incur the obligations under the Exit Financing, including the granting of liens thereunder, the payment of all fees, expenses, indemnities, and other amounts provided for in each Exit Financing and the other instruments, agreements, and documents entered into in connection therewith, all of which are hereby approved. The Debtors or the iCap Trust, as applicable, are authorized and empowered to incur and to perform their obligations in accordance with, and subject to, the Exit Financing Documents and to perform all acts, and make, execute, and deliver all instruments and documents that may be required for the performance by the Debtors or the iCap Trust, as applicable, under the Exit Financing Documents and the creation and perfection of the liens described in and provided for by the Exit Financing Documents.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

48

101.    Upon the Effective Date, the Exit Financing Documents shall constitute legal, valid, binding, and authorized debt obligations of each of the Debtors or the iCap Trust, as applicable, and the terms and provisions set forth in the Exit Financing Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Financing Documents shall be deemed to have been extended in good faith, for legitimate business purposes, are reasonable, and are for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder.

102.    On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable liens on, and security interests in, the applicable collateral granted thereunder in accordance with the terms of the Exit Financing Documents, (c) shall be deemed automatically perfected and non-avoidable on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Financing Documents, (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever, and (e) shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

**U.    Effectuating Documents; Further Transactions.**

103.    On and after the Effective Date, the iCap Trustees are authorized to, and may issue, execute, deliver, file, or record, such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

49

104. Issuance of the iCap Trust Interests in accordance with the Plan is approved. The iCap Trust is authorized and empowered, without further approval of this Bankruptcy Court or any other Person, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the iCap Trust Interests in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificate relating thereto.

105. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or the iCap Trustees, as applicable, to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all document or transactions contemplated by the Plan or this Confirmation Order.

## V.    Section 1146 Exemption.

106. In accordance with section 1146 of the Bankruptcy Code and Washington Administrative Code 458-61A-207, no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (a) the sale or transfer of iCap Trust Assets to the iCap Trust; (b) the issuance, Distribution, transfer, or exchange of Notes or equity securities under the Plan; (c) the establishment of any mortgage, deed of trust, Lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan; or (d) the sale of any real estate by the iCap Trust. Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

50

## W. <u>Preservation of Rights of Action</u>.

107. Except as otherwise provided in the Plan or this Confirmation Order (including in the Investor Claims Special Provisions), in accordance with section 1123(b) of the Bankruptcy Code, from and after the Effective Date, the iCap Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as iCap Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the iCap Trust Agreement. The iCap Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the iCap Trust Actions without notice to or approval from the Bankruptcy Court, subject to the iCap Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the iCap Trust may compromise and settle iCap Trust Actions, subject to the iCap Trust Agreement. For the avoidance of doubt, nothing in the Disclosure Statement or the Plan shall require the iCap Trust to commence or pursue litigation concerning any iCap Trust Action.

108. The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Avoidance Actions or Causes of Action as an iCap Trust Action is not intended to and shall not limit the rights of the iCap Trust to pursue any such Avoidance Actions or Causes of Action. Unless a iCap Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Confirmation Order), the Debtors

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

51

expressly reserve such iCap Trust Action for later resolution by the iCap Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the iCap Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any iCap Trust Actions upon, after, or as a consequence of the confirmation of the Plan.

**X.      Releases, Exculpation, and Injunctions.**

109.   The following release, exculpation, and injunction provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety.

110.   **Releases and Related Matters. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed, to the fullest extent permitted under applicable law, to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors'**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

52

businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined by Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in Article X.G of the Plan shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

111.    **Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in Article X.G of the Plan; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.**

112.    For the avoidance of doubt, the Release does not apply to Christopher Christensen and/or Jim Christensen. The Released Parties shall not include any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors (the "Excluded Parties"). Excluded Parties shall not include any consultant retained or engaged by the Debtors during the Chapter 11 Cases except for Christopher Christensen and Jim Christensen.

113. **Exculpation. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

53

permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other act taken or omission originating or occurring after the Petition Date but before the Effective Date in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; *provided, however*, that nothing in Article X.H of the Plan shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order, including with respect to the Supplemental DIP Credit Agreement; and *provided, further*, that the exculpation provisions of Article X.H of the Plan shall not apply to acts or omissions constituting actual fraud, willful misconduct, gross negligence, or malpractice by such Exculpated Party as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. This Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by Article X.H of the Plan. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the scope of the CRO's Related Parties are limited to only the Related Parties that participated in these Chapter 11 Cases.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

114. **Injunction. Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to Article X.G of the Plan or (ii) are subject to exculpation pursuant to Article X.H of the Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Without limiting the foregoing, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in Article X.I of the Plan shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Equity Interest of any of the obligations of the Debtors or the iCap Trustees under the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in Article X.I of the Plan.

115.    **Injunction Against Interference with the Plan.** Upon entry of this Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the iCap Trustees, the iCap Trust, or any of the iCap Trust Assets that interfere with the implementation or consummation of the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in Article X.J of the Plan.

**Y.    Provisions Governing Distributions.**

116.    The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. The iCap Trustees shall make all Distributions under the Plan to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan and the iCap Trust Agreement, as applicable.

**Z.    Administration of the iCap Trust.**

117.    The iCap Trust Agreement, substantially in the form filed with the Plan Supplement, as such Plan Supplement may be amended in accordance with the Plan and this Confirmation Order is approved.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

56

**AA.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

**1.    Notice of Entry of the Confirmation Order and Occurrence of the Effective Date.**

118.    In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after the occurrence of the Effective Date, the Debtors shall promptly cause notice of confirmation of the Plan and the occurrence of the Effective Date (the "Notice of Effective Date"), to be served by e-mail or United States first class mail to all parties served with the notice of the Confirmation Hearing; *provided*, that the Debtors are excused from distributing the Notice of Effective Date to those addresses from which one or more prior notices served in these Chapter 11 Cases were returned as undeliverable unless the Debtors are provided with updated addresses for such entities before the Effective Date. Mailing of the Notice of Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

119.    The Notice of Effective Date will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**2.    Final Administrative Claims Bar Date.**

120.    The provisions governing the treatment of Allowed Administrative Expense Claims set forth in Article III.A.1 of the Plan are approved in their entirety. Administrative expense requests asserting Administrative Expense Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professional Persons in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than thirty (30) days after the Notice of Effective Date is filed with the Bankruptcy Court or such later date as may be

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

57

established by order of the Bankruptcy Court (the "Administrative Expense Claims Bar Date"). Holders of Administrative Expense Claims who are required to file a request asserting Administrative Expense Claims and who do not file such request by the Administrative Expense Claims Bar Date, may not receive or be entitled to receive any payment or Distribution of property from the Debtors or their successors or assigns with respect to such Administrative Expense Claim in the Chapter 11 Cases. Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no Governmental Unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

### 3. **Professional Fees.**

121. The provisions governing compensation or reimbursement of Professional Persons set forth in Article III.A.1.b of the Plan are approved in their entirety. All final requests for compensation or reimbursement of Professional Persons retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the iCap Trustees, (i) Pivot Management Group, LLC, 1230 Rosecrans Ave., Suite 530, Manhattan Beach, CA 90266 (Attn: Lance Miller (Lance.miller@pivotgrp.com)) and (ii) B. Riley Advisory Services, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612 (Attn: Seth Freeman (SFreeman@brileyfin.com)); (b) counsel to the Debtors, O'Melveny & Myers LLP (i) 400 South Hope Street, Suite 1900, Los Angeles, CA 90071 (Attn: Julian Gurule (jgurule@omm.com)) and (ii) 1301 Avenue of the Americas, Suite 1700, New York, NY 10019 (Attn: Diana Perez (dperez@omm.com)); (c) counsel to the Unsecured Creditors' Committee, (i) Bush Kornfeld LLP, 601 Union Street, Suite 5000, Seattle, WA 98101 (Attn: Armand J. Kornfeld (jkornfeld@bskd.com) and Aimee S. Willig (awillig@bskd.com)) and (ii) K&L Gates, 925 Fourth Avenue, Suite 2900, Seattle, WA

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

58

98104 (Attn: John T. Bender (John.Bender@klgates.com)); (d) the Office of the United States Trustee, United States Department of Justice, 920 West Riverside Avenue, Room 593, Spokane, WA 99201 (Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov)); and (e) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors or the iCap Trustees, as applicable. Objections to any Claims of Professional Persons must be filed with the Bankruptcy Court and served on the iCap Trustees and the applicable Professional Person no later than fourteen (14) days after service of such applicable final fee application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash.

### 4. <u>Bar Date for Rejection Damages Claims</u>.

122. Proofs of Claim asserted in connection with any executory contracts or unexpired leases rejected under the Plan must be filed so that they are actually received by BMC no later than thirty (30) days after service of the notice of Effective Date. Any proofs of Claim not filed and served within such time period shall not receive or be entitled to receive any payment or Distribution from the Debtors or the iCap Trust with respect to such Claim in the Chapter 11 Cases.

### 5. <u>Notice of Subsequent Pleadings</u>.

123. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the iCap Trustees (as set forth in the iCap Trust Agreement);

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

59

23-02084-WLH11    Doc 494    Filed 07/12/24    Entered 07/12/24 15:52:25    Pg 59 of 135

(b) the U.S. Trustee; and (c) any Person that files a renewed request for notice under Bankruptcy Rule 2002 after the Effective Date.

**BB.     Payment of Statutory Fees.**

124.   The Debtors shall timely make all payments required under the Plan. Without limiting the generality of the foregoing, the iCap Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the iCap Trust shall serve on the U.S. Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**CC.     Effectiveness of All Actions.**

125.   All actions authorized to be taken pursuant to the Plan, including, without limitation, entry into the iCap Trust Agreement and the Exit Financing, shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the iCap Trustees and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

126.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, the iCap Trust Agreement, and any

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

60

23-01243-WLH11   Doc 944   Filed 07/12/24   Entered 07/12/24 15:52:05   Pg 60 of 135

other documents, instruments, securities, or agreements, and any amendments or modifications thereto, including with respect to the Exit Financing.

**DD.   Conflicts.**

127.   Except as set forth in the Plan, to the extent that any provision of the Plan, the Plan Supplement, or any other document (but excluding, for the avoidance of doubt, this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control; *provided, however*, that notwithstanding anything herein or the Plan to the contrary, in the event of a conflict between this Confirmation Order, on the one hand, and any of the Plan or the Plan Supplement on the other hand, this Confirmation Order shall govern and control in all respects.

**EE.   SEC Rights.**

128.   Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or this Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

**FF.   Reservation of Rights.**

129.   Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter this Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests before the Effective Date.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

61

**GG.  Severability.**

130.   In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

**HH.  Non-Occurrence of Effective Date Conditions.**

131.   If the conditions necessary for the Effective Date are not met or duly waived as outlined in Articles IX.A and B of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) this Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged. Nothing in the Plan will constitute a waiver or release of any Claims by or

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

62

against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

## II.  Retention of Jurisdiction.

132.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and power related to those matters set forth in Article XIII of the Plan.

## JJ.  Dissolution of Committee.

133.  Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professional Persons, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

## KK.  Final Order.

134.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon entry hereof.

## LL.  Enforceability of Plan.

135.  Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable. Upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

63

Debtors, all Creditors and Holders of Equity Interests, and all other Persons in accordance with their respective terms.

## MM. **Substantial Consummation.**

136.   "Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## NN.   **Immediate Binding Effect.**

137.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons and Entities that are party, or subject, to the settlements, compromises, releases, and injunctions described in the Plan, each Person and Entity acquiring property under the Plan, and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, with respect to the foregoing.

///End of Order///

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

64

PRESENTED BY:

By:    /s/ Oren B. Haker
 OREN B. HAKER (WSBA No. 48725)
BRITTA E. WARREN, WSBA No. 43329
BLACK HELTERLINE LLP

*Co-Counsel to Debtors and Debtors in Possession*

By:    /s/ Julian I. Gurule
JULIAN I. GURULE (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS, LLP

*Co-Counsel to Debtors and Debtors in Possession*

By:    /s/ Armand J. Kornfeld
ARMAND J. KORNFELD, WSBA No. 17214
AIMEE S. WILLIG, WSBA No. 22859
JASON WAX, WSBA No. 41944
BUSH KORNFELD LLP

*Counsel for the Official Committee of Unsecured Creditors*

And

JOHN T. BENDER, WSBA No. 49658
K&L GATES LLP

*Special Litigation Counsel for the Official Committee of Unsecured Creditors*

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

65

**Exhibit A**

HONORABLE WHITMAN L. HOLT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re

iCap ENTERPRISES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

SECOND MODIFIED SECOND
AMENDED JOINT CHAPTER 11
PLAN OF LIQUIDATION OF iCap
ENTERPRISES, INC. AND ITS
AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS
AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## INTRODUCTION[2]

iCap Enterprises, Inc. and its affiliated debtors propose this Plan, which resolves the outstanding Claims and Equity Interests that have been asserted against the Debtors. The court has approved the Disclosure Statement filed by the Debtors and it contains a detailed discussion of the Debtors' historical operations and assets; a summary of this Plan; and a discussion of risk factors and uncertainties associated with the Plan that may impact both consummation of the Plan as well as any Distributions projected to be made under the Plan.

YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY TO DETERMINE HOW THEY MAY IMPACT YOUR CLAIM BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Definitions**

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules, as applicable. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    Administrative Expense Claim:  A Claim entitled to priority under Bankruptcy Code section 507(a)(2), including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in Bankruptcy Code section 503(b); (b) all Allowed Claims of Professional Persons pursuant to Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

2.    Allowed Claim:  Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the

---

[2] Capitalized terms in the Introduction have the meanings set forth in Article I below.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Chapter 11 Cases, or in the absence of such proof, as set forth in the Schedules filed in the Chapter 11 Cases, unless:

(i) with respect to a Scheduled Claim that is not otherwise the subject of a proof of Claim, such Claim has been (a) listed in the Schedules as disputed, contingent, or unliquidated or (b) objected to or is objected to after Confirmation, in which case such Claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court;

(ii) with respect to a Filed Claim, such Claim has been objected to or is objected to after Confirmation, in which case such claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court; or

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

3.    Available Cash: All Cash held by the Debtors on the Effective Date or by the iCap Trust on or after the Effective Date, after accounting for the Senior Claims Reserve and the Secured Claims Reserves. Available Cash shall be determined after payment, allocation, or reserve in accordance with the Plan for unpaid or unutilized amounts for iCap Trust Funding.

4.    Avoidance Actions:  Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

5.    Ballot:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot that is executed by the Holder of an Allowed Claim but that does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6.    Bankruptcy Code or Code:  The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

7.    Bankruptcy Court or Court:  The United States Bankruptcy Court for the Eastern District of Washington at Yakima, before which the Chapter 11 Cases are pending, or if that Court ceases to exercise jurisdiction over the Chapter 11 Cases, the Court that does exercise jurisdiction.

8.    Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court, as amended from time to time.

9.    Broker Settlement: Any settlement between the iCap Trust and any "broker," registered investment advisor, salesperson, consultant, affiliated entity, or professional who is not an Excluded Party and was involved in any way in the marketing or sale of any products offered by any of the Debtors.

10.    Business Day:  Any day except Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

11.    Case Closing Date: The date on which all Chapter 11 Cases have been closed.

12.    Cash:  Legal tender of the United States of America or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

13.    Causes of Action:  Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise, including any and all claims that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

constitute property of the Estates pursuant to Bankruptcy Code section 541. For the avoidance of doubt, "Causes of Action" include: (a) the right to object to Claims or Equity Interests; (b) any claim pursuant to Bankruptcy Code section 362; (c) any counterclaim or defense, including fraud, mistake, duress, usury, or recoupment; and (d) any Avoidance Actions.

14. Chapter 11 Cases: The chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption In re iCap Enterprises, Inc., et al., Case No. 23-01243-WLH.

15. Claim: A claim as defined in Bankruptcy Code section 101(5).

16. Claim Objection Deadline: The first Business Day that is on or before (a) the 180th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim, or (b) such later date as may be fixed in accordance with the terms of the Plan.

17. Claims Agent: BMC Group, Inc., the Debtors' court-appointed claims, noticing, and balloting agent.

18. Claims Bar Date: July 10, 2024, the deadline for filing proofs of Claim in the Chapter 11 Cases by non-Governmental Units, and March 27, 2024 for Governmental Units.

19. Class: A class of Claims or Equity Interests as defined in Article II of this Plan.

20. Class A iCap Trust Interests: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims under the Plan.

21. Class B iCap Trust Interests: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims under the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

22. <u>Collateral</u>: Any Estate asset that is subject to a Lien to secure the payment or performance of an Allowed Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.

23. <u>Collateral Source Recoveries</u>: Any recoveries from other sources (other than those pursuant to the Plan) that an Investor receives or has ever received on account of losses represented by its Investor Claim, including, without limitation, proceeds of insurance, litigation, or settlements.

24. <u>Confirmation</u>:  The entry of the Confirmation Order by the Bankruptcy Court.

25. <u>Confirmation Hearing</u>: The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a).

26. <u>Confirmation Order</u>: The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

27. <u>Contingent Claim</u>: Any Claim that is Scheduled or Filed as contingent.

28. <u>Contributed Claims</u>: All Causes of Action that a Creditor has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, excluding any Individual Investor-Specific Claims.

29. <u>Contributing Claimants</u>: The Creditors that elect on their Ballots to contribute Contributed Claims to the iCap Trust.

30. <u>Contributing Claimants Enhancement Multiplier</u>: The Claim of a Contributing Claimant shall be multiplied by 1.10.

31. <u>Creditor</u>:  A "creditor" within the meaning of Bankruptcy Code section 101(10).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

32. CRO: Lance Miller solely in his capacity as the Chief Restructuring Officer of the Debtors.

33. D&O Insurance: All primary and excess insurance polices that provide coverage for the Debtors' former and current directors and officers, including any "tail" or "runoff" coverage for such policies.

34. Debtor or Debtors: Individually and collectively, iCap Enterprises, Inc., and each of the entities listed in footnote 1 on page 1 of this Plan.

35. DIP Parties: The banks and other financial institutions party to the Supplemental DIP Credit Agreement from time to time, in their capacities as lenders thereunder.

36. Disclosure Statement: That certain disclosure statement relating to the Plan, including all referenced exhibits and schedules, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Plan Proponents.

37. Disputed Claim: With respect to a Scheduled Claim, a Claim that (a) was listed in a Debtor's Schedules as "disputed," and that has not subsequently been Allowed or (b) is the subject of a timely Filed objection that has not been resolved. With respect to a Filed Claim, a Claim that is the subject of a timely Filed objection that has not been resolved.

38. Distribution: Any payment or transfer of consideration made pursuant to the Plan or the iCap Trust Agreement.

39. Distribution Agent: (i) The persons or entities serving as the iCap Trustees, but solely in their separate capacity as distribution agent under the Plan with respect to Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Claims in Classes 1 and 2 on account of such Allowed Claims, or (ii) any party designated by the iCap Trustees to serve in such capacity.

40. Distribution Date: The date on which the iCap Trustees determine, in their sole discretion, to make a Distribution.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

41.    Distribution Record Date: The Effective Date.

42.    Distribution Reserve: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43.    Document Destruction Notice Parties: As defined in Article X.M of the Plan.

44.    Effective Date:  The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45.    Equity Interest:  An equity interest in the Debtor.

46.    Estate Assets: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47.    Estates: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48.    Excluded Debtors: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49.    Excluded Parties: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of the Debtors. For the avoidance of doubt, Excluded Parties shall not include any consultant retained or engaged by the Debtors during the Chapter 11 Cases except for Christopher Christensen and Jim Christensen.

50.     Exculpated Parties: The Debtors; the Unsecured Creditors Committee and its current and former members (in their capacities as such); the CRO; and the preceding's respective Related Parties, *provided*, *however*, that the Exculpated Parties shall not include any Excluded Party.

51.     Exit Financing: Financing comprised of amounts loaned pursuant to (a) the First Lien Exit Loan Facility and (b) the Tritalent Exit Loan Facility to fund the iCap Trust Expenses, plus such amounts as necessary to make payments required to made in connection with the Plan . The material terms of the Exit Financing will be included in the Plan Supplement.

52.     Federal Judgment Rate: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for postjudgment interest in federal court proceedings.

53.     File, Filed, or Filing: Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of Claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

54.     Final Order:   An order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay, or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal further or seek certiorari, further review, reargument, stay, or

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to Bankruptcy Code sections 502(j) or 1144, rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 and 9024 may be filed with respect to such order or judgment.

55.    First Lien Exit Loan Facility:  That certain senior term loan in the aggregate principal amount of five million and 00/100 Dollars ($5,000,000.00) provided by iCap DIP Finance Group LLC. The material terms of the First Lien Exit Loan Facility will be included in the Plan Supplement.

56.    General Unsecured Claim:  A Claim that is (a) based upon (i) a proof of Claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtors' Schedules as other than disputed, contingent, or unliquidated, and (b) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Supplemental DIP Claim, Priority Claim, Subordinated Claim, or Investor Claim.

57.    General Unsecured Class A Claim: A General Unsecured Claim equal to the Outstanding Principal Amount for each particular Holder of a General Unsecured Claim.

58.    General Unsecured Class B Claim: A General Unsecured Claim comprised of any Claim for prepetition interest, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with Investor Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued prepetition interest at the applicable contract rate. The calculation and allowance of General Unsecured Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

59.    Governmental Unit: A "governmental unit" as defined in Bankruptcy Code section 101(27).

60.    Holder: A holder of a Claim or Equity Interest as the case may be.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

61.     iCap Trust: A trust established on the Effective Date for the benefit of the iCap Trust Beneficiaries in accordance with the terms of the Plan and the iCap Trust Agreement.

62.     iCap Trust Actions: Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the iCap Trust as Contributed Claims, in each case as against any Person that is not a Released Party.

63.     iCap Trust Agreement: The agreement substantially in the form Filed in the Plan Supplement and reasonably acceptable to the Debtors and the Unsecured Creditors' Committee establishing and delineating the terms and conditions of the iCap Trust, including the rights and duties of the iCap Trustees and the iCap Trust Supervisory Board.

64.     iCap Trust Assets: Collectively, (a) the iCap Trust Actions; (b) the iCap Trust Funding; (c) 100% of the ownership interests in the Debtors (and all assets, proceeds, and distributions from such entities); (d) Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the iCap Trust after the Effective Date; and (e) other assets that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the iCap Trust (on or after the Effective Date) by any Person.

65.     iCap Trust Beneficiary: Each Holder of an iCap Trust Interest.

66.     iCap Trust Expenses: Any and all reasonable fees, costs, and expenses incurred by the iCap Trustees in managing and operating the iCap Trust not inconsistent with the Plan or the iCap Trust Agreement, including the maintenance or disposition of the iCap Trust Assets (including iCap Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the iCap Trustees, personnel-related expenses, and any taxes imposed on the iCap Trust, in respect of the iCap Trust Assets), and any other expenses incurred or otherwise payable in accordance with the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

67.    iCap Trust Funding: Any Cash or reserves existing as of the Effective Date, and all Cash required (a) to make payments in accordance with the Plan to Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Secured Claims; or (b) to fund any other unfunded post-Confirmation reserve requirements of the iCap Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders.

68.    iCap Trust Interests: Collectively, the Class A iCap Trust Interests and the Class B iCap Trust Interests. All iCap Trust Interests will be evidenced by entry into the Distribution Agent's books and records, without a separate certificate of interest.

69.    iCap Trust Interests Waterfall: On each Distribution Date, the iCap Trust shall distribute its Available Cash as follows:

a.    The iCap Trust shall distribute Available Cash to each Holder of a Class A iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class A iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims have been paid in full without post-petition or post-Confirmation interest;

b.    Thereafter, the iCap Trust shall distribute Available Cash to each Holder of a Class B iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class B iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims have been paid in full without post-petition or post-Confirmation interest.

70.    iCap Trust Supervisory Board: A three-person supervisory board for the iCap Trust, whose initial members shall be Lilian Tan, Thomas Temple, and Jay Kornfeld of the firm Bush Kornfeld LLP. In the event of a vacancy or resignation of a board member, such board seat will remain vacant.

71.    iCap Trustees: Lance Miller and Seth Freeman; and any successor appointed pursuant to the terms of the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

72. <u>Insider</u>: Any "insider," as defined in Bankruptcy Code section 101(31), and with respect to a limited liability company, any director, officer, person in control, or relative of any of the foregoing.

73. <u>Intercompany Claim</u>: A Claim of one Debtor against another Debtor.

74. <u>Intercompany Lien</u>: Any lien securing or purporting to secure an Intercompany Claim.

75. <u>Investor</u>: A Person or entity that purchased an investment product (including any debentures, promissory notes, or other debt securities issued by the Debtors) or made an investment offered by any Debtor pursuant to an offering memorandum or private placement memorandum that was issued by a Debtor.

76. <u>Investor Avoidance Settlement</u>: Any settlement between the iCap Trust and one or more Investors related to a potential or actual Avoidance Action against the Investors.

77. <u>Investor Claims</u>: Any and all Claims of an Investor against any Debtor, which shall be composed of (i) an Investor Class A Claim and (ii) an Investor Class B Claim.

78. <u>Investor Claims Special Provisions</u>: As defined in Article III.C.1 of the Plan.

79. <u>Investor Class A Claim</u>: An Investor Claim for restitution of an Investor to be treated *pari passu* with General Unsecured Class A Claims. Such Claim shall equal the total Outstanding Principal Amount for each particular Investor. For avoidance of doubt, an Allowed Investor Class A Claim shall be reduced dollar for dollar on account of any Collateral Source Recoveries the Investor receives on account of the losses represented by its Investor Claim, and if such Allowed Investor Class A Claim is reduced to zero, the Investor's Allowed Investor Class B Claim will be reduced dollar for dollar on account of any additional Collateral Source Recoveries that may be received by the Investor.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

80.    <u>Investor Class B Claim</u>: An Investor Claim comprised of any Claim by the Investor for prepetition interest in connection with such Investor's principal investment in a Debtor, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with General Unsecured Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued interest from the time of the Investor's principal investment to the Petition Date at a rate of seven percent (7%), compounded annually. The calculation and allowance of Investor Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

81.    <u>Lien</u>: Has the meaning ascribed in Bankruptcy Code section 101(37), including any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, deed of trust, assignment of rents, assignment or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

82.    <u>Net Prepetition Investor Recovery</u>: With respect to a specific Investor, (a) the total Cash value remitted to the Investor from the Ponzi Start Date until the Petition Date (whether the payment was considered a return on the investment, interest, a referral fee, or a repayment of principal), minus (b) the total Cash value invested prepetition as principal by the Investor, (provided that the value of (a) is greater than the value of (b)), capped by the amount of total Cash value remitted to the Investor.

83.    <u>Notes</u>: Any and all investments, interests, or other rights with respect to any of the Debtors that were referred to, marketed, or sold as "notes," "loans," or "mortgages."

84.    <u>Notice and Hearing</u>:  Proceedings as contemplated under Bankruptcy Code section 102(1).

85.    <u>Outstanding Principal Amount</u>: An amount equal to the aggregate principal balance outstanding as of the Petition Date, excluding any purportedly accrued prepetition interest.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

86.    Person: Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

87.    Petition Date:  September 29, 2023, the date upon which the lead Debtor commenced its Chapter 11 Cases.

88.    Plan:  This Joint Plan of Liquidation, all exhibits to the Plan, and the Plan Supplement, as such may be amended from time to time in the reasonable discretion of the Plan Proponents.

89.    Plan Proponents: The Debtors and the Unsecured Creditors' Committee.

90.    Plan Supplement: The supplementary documents regarding the implementation and effectuation of the Plan, to be filed on or before the date that is eleven (11) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented from time to time prior to the Confirmation Hearing in the reasonable discretion of the Plan Proponents.

91.    Ponzi Finding: A finding by the Bankruptcy Court that the Debtors' prepetition operations constituted a Ponzi scheme, as set forth more fully in Article III.C of the Plan.

92.    Ponzi Start Date: No later than October 2018.

93.    Priority Claim: A Claim entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

94.    Priority Tax Claims:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of Bankruptcy Code section 507(a)(8), and statutory interest accruing thereon prior to the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

95.     Professional Person:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to Bankruptcy Code sections 326, 327, 328, 330, and/or 1103.

96.     Pro Rata: Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or iCap Trust Interest to (b) the amount or number of that Allowed Claim or iCap Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all applicable iCap Trust Interests to (y) as applicable, the amount of all Allowed Claims in that Class or the number of applicable iCap Trust Interests.

97.     Related Parties: Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who (a) are employed by the Debtors on the Effective Date or (b) whose employment was approved by the Bankruptcy Court.

98.     Released Parties: The Debtors; the Unsecured Creditors' Committee and its current and former members (in their capacities as such); the CRO; the DIP Parties; and the preceding's respective Related Parties, *provided*, *however*, that the Released Parties shall not include any Excluded Party.

99.     Releasing Parties: The Debtors; the Estates; and any Person exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Unsecured Creditors' Committee (but not its current or former individual members), the iCap Trustees, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

100.    Scheduled: As set forth in the Schedules.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

101.   Schedules:  The schedules of assets, liabilities, and executory contracts and the statement of financial affairs filed on behalf of each Debtor pursuant to Bankruptcy Code section 521, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

102.   SEC:  The United States Securities and Exchange Commission.

103.   Secured Claim:  A Claim that is a secured Claim against a Debtor determined in accordance with Bankruptcy Code section 506(a).

104.   Securities Act: The Securities Act of 1933, as amended.

105.   Secured Claims Reserves: Individual reserves of Cash in respect of each Holder of a Secured Claim (including such Secured Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), comprised of the proceeds of the Collateral securing such Secured Claim, to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which the Distribution Agent will make Distributions to the Holders of Secured Claims (if and to the extent Allowed) from the applicable reserve for such Holder in accordance with the Plan.

106.   Senior Claims Reserve: One or more reserves of Cash in respect of, as applicable, Administrative Expense Claims, Priority Tax Claims, and Priority Claims (including such Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), in amounts to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which (i) the Distribution Agent will make Distributions to the Holders of the foregoing Claims (if and to the extent Allowed) in accordance with the Plan, and (ii) the iCap Trustees and their agents, including the Distribution Agent (if not the iCap Trustees), will be reimbursed from such monies for reasonable costs and expenses incurred by said parties (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions out of the Senior Claims Reserve and the Secured Claims Reserves).

107.   Subordinated Claim: Any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim, but not any Investor Class B Claims.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

108.    Supplemental DIP Claim: Any Claim arising under or relating to the Supplemental DIP Credit Agreement.

109.    Supplemental DIP Credit Agreement: That certain *Debtor-In-Possession Loan and Security Agreement* dated as of July 18, 2024, by and among, the Debtors, Socotra REIT I, LLC; WE Alliance Secured Income Fund, LLC; Jason Yelowitz, in his capacity as trustee of the Jason Yelowitz 2006 Trust Dated March 31, 2006; and Keith Holdings, LLC; as the same may have been further amended, modified, ratified, extended, renewed, restated, or replaced, and any other agreements and documents related thereto.

110.    Tritalent:  Tritalent Funding Group and Halton Co.

111.    Tritalent Exit Loan Facility:  That certain junior term loan in the aggregate principal amount of five hundred thousand and 00/100 Dollars ($500,000.00) provided by Tritalent. The material terms of the Tritalent Exit Loan Facility will be included in the Plan Supplement.

112.    Unliquidated Claim: Any Claim that is Scheduled as unliquidated or Filed in an unliquidated amount.

113.    Unsecured Creditors' Committee: The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102.

114.    Voting Deadline: The deadline by which all Ballots to accept or reject the Plan must be received in order to be counted.

## B.    Rules of Interpretation

The rules of construction set forth in Bankruptcy Code section 102 shall apply to the Plan. For purposes of the Plan and unless otherwise specified herein: (i) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (ii) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (iii) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (iv) the words "include" and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

"including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (v) all references to articles or Articles are references to the Articles hereof; (vi) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (vii) any reference to a Person as a Holder of a Claim or Equity Interest includes that Person's successors and assigns; (viii) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, modified, or supplemented; (ix) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (x) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; and (xii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against the Debtors are classified as set forth below. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1: Priority Claims
Class 2: Secured Claims
Class 3: Investor Claims
Class 4: General Unsecured Claims
Class 5: Subordinated Claims
Class 6: Equity Interests

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE III.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Equity Interests shall be as follows:

**A.    Unclassified Claims**

1.    Administrative Expense Claims. Administrative Expense Claims incurred in the ordinary course of the Debtors' business following the Petition Date (including fees owed to the CRO and/or either of Paladin Management Group, LLC and Pivot Management Group, LLC) shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations (as such terms were modified by any orders approving such agreements), or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. All other Administrative Expense Claims, including Claims of Professional Persons, shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. Claims arising under 28 U.S.C. § 1930 shall be paid as required by that statute.

a. Administrative Expense Claims Bar Date. Administrative expense requests asserting Administrative Expense Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professional Persons in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than 30 days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

b. Final Fee Applications. All final requests for compensation or reimbursement of Professional Persons retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the iCap Trustees, (i) Pivot Management Group, LLC, 1230 Rosecrans Ave.,

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Suite 530, Manhattan Beach, CA 90266 (Attn: Lance Miller (Lance.miller@pivotgrp.com)) and (ii) B. Riley Advisory Services, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612 (Attn: Seth Freeman (SFreeman@brileyfin.com)); (b) counsel to the Debtors, O'Melveny & Myers LLP (i) 400 South Hope Street, Suite 1900, Los Angeles, CA 90071 (Attn: Julian Gurule (jgurule@omm.com)) and (ii) 1301 Avenue of the Americas, Suite 1700, New York, NY 10019 (Attn: Diana Perez (dperez@omm.com)); (c) counsel to the Unsecured Creditors' Committee, (i) Bush Kornfeld LLP, 601 Union Street, Suite 5000, Seattle, WA 98101 (Attn: Armand J. Kornfeld (jkornfeld@bskd.com) and Aimee S. Willig (awillig@bskd.com)) and (ii) Corr Cronin LLP, 1015 Second Ave., Floor 10, Seattle, WA 98104 (Attn: John T. Bender (jbender@corrcronin.com)); (d) the Office of the United States Trustee, United States Department of Justice, 920 West Riverside Avenue, Room 593, Spokane, WA 99201 (Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov)); and (e) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors or the iCap Trustees, as applicable. Objections to any Claims of Professional Fees must be filed with the Bankruptcy Court and served on the iCap Trustees and the applicable Professional Person no later than fourteen (14) days after service of such applicable final fee application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash.

2.    <u>Priority Tax Claims</u>. Allowed Priority Tax Claims shall be paid, at the iCap Trust's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty);

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

23-01243-WLH11   Doc 494   Filed 07/12/24   Entered 07/12/24 15:52:25   Pg 887 of 1365

or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the iCap Trust shall have agreed upon in writing.

3.    Supplemental DIP Claims. On the Effective Date, (a) all obligations of the Debtors under the Supplemental DIP Credit Agreement shall be assumed by the iCap Trust; (b) all Liens and security interests granted to secure the Debtors' obligations under the Supplemental DIP Credit Agreement shall remain in place and shall be otherwise subject to the terms and conditions of the Supplemental DIP Credit Agreement and any related subordination terms; and (c) the legal, equitable, and contractual rights of the parties under the Supplemental DIP Credit Agreement shall be unaltered by the Plan.

**B.    Classified Claims and Interests**

**1.    Class 1: Priority Claims**

Class 1 consists of Priority Claims. Class 1 is unimpaired and deemed to accept the Plan.

On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Priority Claim becomes an Allowed Priority Claim, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash from the iCap Trust equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing.

**2.    Class 2: Secured Claims**

Class 2 consists of the following sub-classes of Secured Claims:

a. **Class 2A: UW 17th Ave, LLC Secured Claims**
   (i)   Class 2A.1 Studio 19 Architects Secured Claim
   (ii)  Class 2A.2 UW 17th Davido Consulting Group
   (iii) Class 2A.3 Dhillon Secured Claim

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b. **Class 2B: VH 1121 14th LLC Secured Claims**
   (i) Class 2B.1 14th Wilmington Savings Fund Secured Claim

c. **Class 2C: VH Willows Townhomes, LLC Secured Claims**
   (i) Class 2C.1 Willows Wilmington Savings Secured Claim

d. **Class 2D: VH Senior Care, LLC Secured Claims**
   (i) Class 2D.1 Redmond Funding Group Secured Claim

e. **Class 2E: 725 Broadway, LLC Secured Claims**
   (i)  Class 2E.1 Christopher Jones Architects Secured Claim
   (ii) Class 2E.2 Broadway Davido Consulting Secured Claim
   (iii) Class 2E.3 Malsam Tsang Engineering Secured Claim
   (iv) Class 2E.4 Broadway Davido Consulting Secured Claim
   (v) Class 2E.5 Broadway Oak Hills Construction LLC

f. **Class 2F: Senza Kenmore, LLC Secured Claims**
   (i) Class 2F.1 Van Hoof Construction Secured Claim
   (ii) Class 2F.2 T.S. Dance Construction Secured Claim

g. **Class 2G: iCap Campbell Way, LLC Secured Claims**
   (i) Class 2G.1 Campbell Davido Consulting Secured Claim
   (ii) Class 2G.2 Deed of Trust of Pacific NW Opportunity & Income Fund, LLC

h. **Class 2H: VH Pioneer Village, LLC Secured Claims**
   (i) Class 2H.1 Tritalent Funding Group Secured Claim

i. **Class 2I: CS2 Real Estate Development Secured Claims**
   (i) Class 2I.1 BRMK Management Secured Claim
   (ii) Class 2I.2 United Rentals Secured Claim
   (iii) Class 2I.3 Sunbelt Rentals Secured Claim
   (iv) Class 2I.4 CS2 Oak Hills Construction Secured Claim
   (v) Class 2I.5 Rexel USA, Inc. dba Platt Electric Supply Claim

j. **Class 2J: Secured Real Property Tax Claims**

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Class 2 is unimpaired and deemed to accept the Plan.

Except as explicitly provided for in the Plan, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, *provided* that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Secured Claim becomes an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the option of the Debtors or the iCap Trust, either (a) the net proceeds from the sale of the Collateral securing such Allowed Secured Claim; *provided, however*, that if the sale of the Collateral securing an Allowed Secured Claim closes after the occurrence of the Effective Date, the payment of the net proceeds shall be delivered to the Holder of the Allowed Secured Claim within thirty (30) calendar days of the closing of such sale, (b) the surrender of the Collateral securing such Allowed Secured Claim, or (c) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing. Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim.

### 3.    Class 3: Investor Claims

Class 3 consists of Investor Claims, as more particularly described below. Class 3 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Investor Claims will receive (i) on the later of the Effective Date and thirty (30) calendar days following the date on which such Investor Claim becomes an Allowed Investor Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed Investor Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed Investor Class B Claims held by the applicable Investor (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

such iCap Trust Interest), and (ii) the other consideration provided for in the Investor Claims Special Provisions set forth in Article III.C.1 of the Plan. All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

For clarity, the practical effect of the above is the following:

Class A iCap Trust Interests, which consist of Investors' principal balance owed on the Petition Date, will be paid through Distributions by the iCap Trust until fully satisfied. Once all of the Class A iCap Trust Interests are paid in full, then Distributions will be made to Class B iCap Trust Interests, which consist of Investors' accrued interest due as of the Petition Date.

As an example, if Investor X invested $100,000 one year before the Petition Date with the Debtors, under the Plan, Investor X will receive (i) a $100,000 Investor Class A Claim (*i.e.*, the original principal investment of $100,000); and (ii) a $7,000 Investor Class B Claim (representing 7% per annum interest on the $100,000 investment).

The treatment of any and all Investor Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person that is not a Released Party (including those rights that may be included in the Contributed Claims and contributed to the iCap Trust by making the Ballot election described below).

Each Holder of an Investor Claim may agree by electing on its Ballot to contribute its Contributed Claims to the iCap Trust. By electing such option on its Ballot the Investor agrees that, subject to the occurrence of the Effective Date and the formation of the iCap Trust, it will be deemed, without further action, (i) to have contributed its Contributed Claims to the iCap Trust and (ii) to have agreed to execute any documents reasonably requested to memorialize its contribution. The relative share of iCap Trust recoveries for any electing Investor will be enhanced by having the amounts that otherwise would be its Allowed Investor Class A Claim and its Allowed Investor Class B Claim each increased by the Contributing Claimants' Enhancement Multiplier – *i.e.,* **10%**.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### 4.    Class 4: General Unsecured Claims

Class 4 consists of General Unsecured Claims, as more particularly described below. Class 4 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed General Unsecured Claims will receive on the later of the Effective Date and thirty (30) calendar days following the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed General Unsecured Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed General Unsecured Class B Claims held by the applicable Holder (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of such iCap Trust Interest). All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

### 5.    Class 5:  Subordinated Claims

Class 5 consists of all Subordinated Claims. Class 5 is impaired under the Plan and deemed to reject the Plan.

The Holders of Allowed Subordinated Claims will retain a residual right to receive Available Cash that remains in the iCap Trust after the final administration of all iCap Trust Assets, and the complete satisfaction of all senior payment rights within the iCap Trust Interests Waterfall, including satisfaction of all Investor Class B Claims and General Unsecured Class B Claims. The Plan Proponents have decided not to solicit the votes of the Holders of any Subordinated Claims, and such Holders are therefore deemed to have rejected the Plan.

### 6.    Class 6: Equity Interests

Class 6 consists of all Equity Interests and purported Equity Interests in the Debtors. Class 6 is impaired under the Plan and deemed to reject the Plan.

On and after the Effective Date, (a) Holders of Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property under the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan on account of such Equity Interests and (b) the Equity Interests shall be deemed to be held by the iCap Trust under applicable non-bankruptcy law and the iCap Trustees shall be authorized to exercise all of the rights and powers of a sole member as provided by the Plan.

Any purported Equity Interests or Liens on Equity Interests held by an Investor in any Debtor will be considered void, cancelled, and of no further force and effect. These Claims will be regarded as Class 3 Investor Claims in accordance with the Plan, irrespective of any labels used by the Debtors and/or Investors prior to the Petition Date.

## C.     Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

The Plan Proponents will also seek findings in the Confirmation Order (the "**Ponzi Findings**") that (i) beginning no later than the Ponzi Start Date through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the iCap enterprise operated as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors. The Plan Proponents shall not seek Ponzi Findings that would be binding on any other court or governmental or regulatory authority.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

**1.** **Special Provisions Relating to Investor Claims.** The following provisions apply to Investor Claims (the "**Investor Claims Special Provisions**"):

a. The Holders of Allowed Investor Claims will receive the treatment provided for such Holders under the Plan. For the avoidance of doubt, any and all purported Equity Interests of an Investor in any Debtor shall be deemed and treated as Investor Claims of the Investor pursuant to the Plan, regardless of the prepetition designations used by the Debtors and/or Investors.

b. The iCap Trust will be created to pursue the iCap Trust Actions for the benefit of all the iCap Trust Beneficiaries; to establish and hold the Distribution Reserves; and to receive and distribute to the holders of iCap Trust Interests the net proceeds of the monetization or other disposition of the iCap Trust Assets in accordance with the Plan and the iCap Trust Agreement.

c. The iCap Trustees shall have discretion, subject to the iCap Trust Agreement, to determine whether and how to make demand upon, or sue, Investors liable for a Net Prepetition Investor Recovery, including, but not limited to, the discretion not to bring suit or make a demand because of the Investor's financial hardship. That discretion shall be exercised in accordance with guidelines developed by the iCap Trustees in consultation with the iCap Trust Supervisory Board subject to the iCap Trust Agreement. No party should assume that they will be entitled to the exercise of such discretion.

d. In the event that an Investor Claim has been transferred or assigned, all Collateral Source Recoveries that were received by a prior Holder of the Claim shall be included for purposes of determining the Allowed amount of an Investor Claim as if such transferee or assignee had received such distribution or recovery.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

e. Upon request, Investors must, within twenty-one (21) calendar days of receipt of such request, respond to requests for information by the iCap Trustees with respect to Investor Claims. Failure to respond to a request for information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion.

f. At the end of each quarter, beginning with the first full quarter after the iCap Trust is established, the iCap Trustees will provide a report to the Investors summarizing the recovery actions the iCap Trust has engaged in during the quarter and detailing whether the iCap Trust is abandoning any specific Avoidance Actions or Causes of Action that it has determined it will not pursue, thus allowing Investors to pursue such actions, at their option.

**2. Special Provisions Relating to Individual Investor-Specific Claims.** Investors retain the right to independently pursue any claims against third parties where they have independent legal standing, and where such claims are **not** owned by the iCap Trust under this Plan, specifically claims owned by the iCap Trust and defined in the Plan as Causes of Action and Avoidance Actions ("**Individual Investor-Specific Claims**"). Examples of such claims include, but are not limited to: loss of lien or lien priority; claims against the investor's own professional advisors; claims against retirement service providers; and other claims arising from an investor's specific situation. For the avoidance of doubt, Individual Investor-Specific Claims do not encompass claims shared by all Investors or claims to recover commissions or referral fees paid by the Debtors to third parties in relation to an Investor's investment with the Debtors. The Plan will not interfere with an Investor's right to pursue these Individual Investor-Specific Claims, except as required (as determined by the iCap Trustees) to preserve iCap Trust Assets.

a. Any recovery by an Investor on an Individual Investor-Specific Claim shall reduce that Investor's entitlement to receive Distributions from the iCap Trust as follows:

(1) Any recovery, net of reasonable fees and expenses actually incurred by or on behalf of the Investor, shall be first applied to reduce the applicable Investor Class A Claim, if any, and then after the Investor Class A Claim is reduced to $0, shall be applied to reduce the applicable Investor Class B Claim.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b.      Each Investor must promptly notify the Debtors or the iCap Trustees, as applicable, in writing, if such Investor receives any consideration on account of an Individual Investor-Specific Claim. This notification must be submitted within thirty (30) days of receiving said consideration and must detail the total amount recovered, along with any associated fees and expenses incurred. Failure to adhere to this reporting obligation may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion, and the clawback of any Distributions previously received under the Plan.

**ARTICLE IV.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.      Impaired Claims Entitled to Vote**

The Plan Proponents shall only solicit the votes of Holders of Allowed Claims in Class 3 (Investor Claims) and Class 4 (General Unsecured Claims).

**B.      Acceptance by an Impaired Class**

Pursuant to Bankruptcy Code section 1126(c), except as provided in Bankruptcy Code section 1126(e), acceptance of the Plan by Holders of Claims in any Class eligible to vote on it occurs when the Plan receives approval from Holders representing at least two-thirds (⅔) in dollar amount and over one-half (½) in number of the Allowed Claims in that Class who have duly voted to accept or reject the Plan within the stipulated timeframe.

**C.      Presumed Acceptance by Unimpaired Classes**

Class 1 (Priority Claims) and Class 2 (Secured Claims) are unimpaired under the Plan. Pursuant to Bankruptcy Code section 1126(f), Holders of unimpaired Claims are presumed to have accepted the Plan and the Plan Proponents therefore will not solicit their votes.

**D.      Certain Impaired Classes Deemed to Reject the Plan**

The Plan Proponents have decided not to solicit the votes of Holders of any Claims in Class 5 (Subordinated Claims) and Holders of those Claims will therefore be

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

deemed to have rejected the Plan and will not be entitled to vote on the Plan. Holders of Class 6 Equity Interests are not entitled to receive or retain any property or interests in property under the Plan and are therefore deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). They are not entitled to vote on the Plan and their votes will not be solicited by the Plan Proponents.

### E.    Modification of Votes Already Cast

After the Voting Deadline, Creditors eligible to vote on the Plan cannot modify their cast votes or any related elections without obtaining written consent from the Plan Proponents. Such consent is subject to the reasonable discretion of the Plan Proponents.

### F.    Vacant Classes Eliminated

Any Class that does not contain a Holder of an Allowed Claim, or a Holder of a Claim that is temporarily allowed under Bankruptcy Rule 3018, measured as of the date on which the Confirmation Hearing begins, shall be deemed deleted from the Plan for the purpose of determining whether the Plan was accepted by that Class pursuant to Bankruptcy Code section 1129(a)(8).

**ARTICLE V.**
**IMPLEMENTATION OF THE PLAN**

### A.    Overview

As detailed below, the Plan will be implemented through, among other things, the establishment of the iCap Trust and the appointment of the iCap Trustees and the iCap Trust Supervisory Board. The iCap Trust will make Distributions in accordance with the Plan.

### B.    Streamlining the Debtors' Structure and Governance

1.    **Corporate Action.** On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

**2.     Debtors' Existing Directors and Officers.** On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

**3.     Dissolution of the Debtors.** On and as of the earlier of the Case Closing Date and the date on which the iCap Trustees File with the Bankruptcy Court a notice of dissolution as to a Debtor, such Debtor will be dissolved automatically without the need for any further action, including the filing of any corporate or limited liability company filings; *provided, however*, that the iCap Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtor. All applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

**4.     Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the iCap Trustees, as applicable, to take or cause to be taken all actions (including, if applicable, corporate actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

without further approval, act, or action under any applicable law, order, rule, or regulation.

## C.    Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under this Plan, any Notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtors, except assumed executory contracts and assumed unexpired leases, and/or such Notes or other instruments evidencing indebtedness or obligations of the Debtors that are unimpaired, reinstated, assumed, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## D.    iCap Trust

**1.    Appointments.** On and after the Effective Date, the initial iCap Trustees shall become and serve as iCap Trustees. The iCap Trustees' shared compensation will be set at five percent (5%) of the iCap Trust's gross recoveries, the payment terms and timing of which will be set forth in the iCap Trust Agreement and the Plan Supplement.

On and after the Effective Date, the initial iCap Trust Supervisory Board shall begin to serve without further action consistent with the terms of the Plan and iCap Trust Agreement. The purpose of the iCap Trust Supervisory Board is to oversee the performance of the iCap Trustees' duties and to otherwise carry out and serve the functions described in the Plan and in the iCap Trust Agreement. Compensation for the iCap Trust Supervisory Board will be set forth in the iCap Trust Agreement and the Plan Supplement.

At the time of Confirmation of the Plan and formation of the iCap Trust, John Bender shall serve as litigation counsel to the iCap Trust and Bush Kornfeld LLP shall serve as restructuring counsel to the iCap Trust.

**2.    Creation and Governance of the iCap Trust.** On the Effective Date, the iCap Trustees shall execute the iCap Trust Agreement and shall take any other steps necessary to establish the iCap Trust in accordance with the Plan. For federal income tax purposes, the transfer of the assets to the iCap Trust will be treated as a sale or other

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disposition of assets to the iCap Trust Beneficiaries in exchange for their Claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the iCap Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability. For federal income tax purposes, the iCap Trust Beneficiaries shall be treated as the grantors of the iCap Trust and deemed to be the owners of the assets of the iCap Trust. The transfer of the iCap Trust Assets to the iCap Trust shall be deemed a transfer to the iCap Trust Beneficiaries by the Debtors, followed by a deemed transfer by such iCap Trust Beneficiaries to the iCap Trust. The Debtors, the iCap Trust Beneficiaries, and the iCap Trust will consistently report the valuation of the assets transferred to the iCap Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the iCap Trust shall be reported to the beneficiaries of the iCap Trust in conjunction with the filing of the iCap Trust's income tax returns. Each iCap Trust Beneficiary shall report income, deductions, gain, or loss on such iCap Trust Beneficiary's income tax returns. The iCap Trust shall be governed by the iCap Trust Agreement and administered by the iCap Trustees and the iCap Trust Supervisory Board. The powers, rights, and responsibilities of the iCap Trustees shall be specified in the iCap Trust Agreement.

**3.    Vesting of iCap Trust Assets.**  On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The iCap Trustees shall be the exclusive trustee of the iCap Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all iCap Trust Assets. The iCap Trust shall hold and distribute the iCap Trust Assets in accordance with the provisions of the Plan and the iCap Trust Agreement.

Notwithstanding the foregoing or any other provision in the Plan, in the event that the iCap Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Unit for the benefit of the Investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or iCap Trust Assets, and the iCap Trustees are authorized to and shall distribute all such monies only to Investors who are Holders of Class A iCap Trust Interests or Class B iCap Trust Interests on account thereof, subject to the Plan and the iCap Trust Agreement; *provided* that the iCap Trustees and their agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the iCap Trust's collection, administration, and distribution of such monies to the applicable Investors.

**4.     Sales of Estate Assets.**  In accordance with Bankruptcy Code section 1146(a), no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (1) the sale or transfer of iCap Trust Assets to the iCap Trust; (2) the issuance, Distribution, transfer, or exchange of Notes or equity securities under the Plan; or (3) the establishment of any mortgage, deed of trust, Lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

As part of implementation of the Plan, following Confirmation, the iCap Trustees will sell iCap Trust Assets. No further order of the court will be necessary to sell iCap Trust Assets. All sales of real property contemplated by the Plan shall be free and clear of all Liens, claims, encumbrances, and/or interests of any kind pursuant to Bankruptcy Code Sections 1123(a)(5)(D) and 1141(c), with the proceeds of such sales being paid pursuant to the terms of the Plan. Pursuant to Washington Administrative Code 458-61A-207, the iCap Trust will be exempt from the imposition of real estate excise taxes that would otherwise be payable under Revised Code of Washington 82.45.060 and/or other applicable law as to any sale of the iCap Trust Assets at any time following Confirmation. Pursuant to Bankruptcy Code section1146, the iCap Trust's making or delivery of an instrument of transfer as to any iCap Trust Assets following Confirmation may not be taxed under any law imposing a stamp tax or similar tax.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**5.      Purpose of the iCap Trust.** The iCap Trust shall be established for the purpose of pursuing or liquidating the iCap Trust Assets and making Distributions to the iCap Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d) and the terms of the Plan.

**6.      Authority.** Subject to the supervision of the iCap Trust Supervisory Board as set forth in the iCap Trust Agreement, the iCap Trustees shall have the authority without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

a.      review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

b.      assert and enforce all legal or equitable remedies and defenses belonging to the Debtors or their Estates, including setoff, recoupment, and any rights under Bankruptcy Code section 502(d);

c.      calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

d.      retain, compensate, and employ professionals and other Persons to represent the iCap Trustees with respect to and in connection with their rights and responsibilities;

e.      establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

f.      maintain, conserve, collect, settle, and protect the iCap Trust Assets, including, but not limited to, pursuing, engaging in, and consummating any Investor Avoidance Settlements and/or Broker Settlements;

g.      pursue, prosecute, settle, or abandon any iCap Trust Actions, including, but not limited to, Investor Avoidance Settlements and/or Broker Settlements;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

h.    act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere;

i.    proceed with and employ all discovery devices permitted under applicable law, including Bankruptcy Rule 2004, in order to investigate any Claims, iCap Trust Actions, or iCap Trust Assets;

j.    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the iCap Trust Assets or any part thereof or interest therein upon such terms as the iCap Trustees determine to be necessary, appropriate, or desirable;

k.    negotiate, incur, and pay the iCap Trust Expenses;

l.    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any Governmental Unit, or by applicable law;

m.    compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

n.    take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

o.    effect all actions and execute all agreements, instruments, and other documents, and take all actions, necessary to consummate the Plan;

p.    comply with the Plan, exercise the iCap Trustees' rights, and perform the iCap Trustees' obligations; and

q.    exercise such other powers as deemed by the iCap Trustees to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to their administrative rights and duties under the Plan, the iCap Trustees shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or limited liability company

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

officer or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106. The iCap Trust Supervisory Board will have all rights and powers of a corporate board appointed under Washington law.

**7.      Limitation of Liability.** The iCap Trustees and the iCap Trust Supervisory Board shall enjoy all the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The iCap Trustees may, in connection with the performance of their functions, in their sole and absolute discretion, consult with their attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the iCap Trustees shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the iCap Trustees unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the iCap Trustees shall look only to the iCap Trust Assets to satisfy any liability incurred by the iCap Trustees to such Person in carrying out the terms of the Plan or the iCap Trust Agreement. No recourse will ever be had, directly or indirectly, against the iCap Trustees or their members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the iCap Trustees under the Plan or by reason of the creation of any indebtedness by the iCap Trustees under the Plan.

**8.      Indemnification.** The iCap Trust Agreement will include customary indemnification provisions.

**9.      Insurance.** The iCap Trustees shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the iCap Trust's sole expense, for themselves, the iCap Trustees, and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the iCap Trustees, which insurance coverage may, at the sole discretion of the iCap Trustees, be extended for a reasonable period after the termination of the iCap Trust.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 38

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**10.    Tax Reporting.** The iCap Trust shall timely file tax returns for the iCap Trust treating the iCap Trust as a grantor trust pursuant to Treasury Regulation section 1.671- 4(a).

The iCap Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the iCap Trust, the Debtors, or any iCap Trust Assets.

The iCap Trust shall distribute such tax-related notices, beneficiary statements, and informational returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the iCap Trustees determine are otherwise necessary or desirable.

The iCap Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

**11.    Distributions to iCap Trust Beneficiaries.** After payment of or reserve for all senior claims (including without limitation, Administrative Expense Claims, Priority Claims, Priority Tax Claims, and Secured Claims) in accordance with the Plan and the iCap Trust Agreement, the iCap Trust shall make Distributions to iCap Trust Beneficiaries pursuant to the iCap Trust Interests Waterfall.

The iCap Trust, in the iCap Trustees' sole discretion, may make periodic Distributions to the iCap Trust Beneficiaries at any time following the Effective Date; *provided* that such Distributions are otherwise permitted under, and not inconsistent with, the iCap Trust Interests Waterfall, the other terms of the Plan, the iCap Trust Agreement, and applicable law.

**12.    Cash Investments.** The iCap Trustees may invest Cash of the iCap Trust, including any earnings or proceeds from such investment, and such investments will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

**13.    Securities Act Exemption.** To the extent the iCap Trust Interests are deemed to be "securities," the issuance of those interests under the Plan is exempt

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 39

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

from registration under the Securities Act and any applicable state and local securities laws pursuant to Bankruptcy Code section 1145.

14. **Contribution of Contributed Claims.** On the Effective Date, all Contributed Claims are irrevocably contributed to the iCap Trust and shall thereafter be iCap Trust Actions for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person as any indication that the iCap Trust will not pursue any and all available Contributed Claims against such Person. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the iCap Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The iCap Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the iCap Trust in accordance with the Plan and the iCap Trust Agreement.

15. **Authority to Pursue and Resolve iCap Trust Actions.** The iCap Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

16. **Termination.** The iCap Trustees and the iCap Trust shall be discharged or terminated, as the case may be, at such time as: (a) the iCap Trustees determine that the pursuit of additional iCap Trust Actions is not likely to yield sufficient additional

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 40

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

proceeds to justify further pursuit of such iCap Trust Actions and (b) all Distributions required to be made by the iCap Trust to Holders of Allowed Claims and to the iCap Trust Beneficiaries under the Plan and the iCap Trust Agreement have been made, but in no event shall the iCap Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the iCap Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the iCap Trust Assets. Upon termination of the iCap Trust, any remaining iCap Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

**17.     Interpretation.** To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

## E.   Substantive Consolidation

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in this Article; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

The Disclosure Statement and the Plan together form a request for the Bankruptcy Court's approval of the substantive consolidation outlined in the Plan. Unless a Creditor, purportedly impacted by this consolidation, submits a written objection before the Plan's confirmation objection deadline, the consolidation described in the Plan may receive approval during the Confirmation Hearing. Should objections be filed within the specified timeframe, the Bankruptcy Court will address such objections at the Confirmation Hearing.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 42

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

If the Bankruptcy Court determines that substantive consolidation of any given Debtor is not appropriate, then the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Debtors reserve their rights (i) to seek confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Debtors' reasonable discretion after consultation with the Unsecured Creditors' Committee, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) after consultation with the Unsecured Creditors' Committee, to seek to substantively consolidate all Debtors into iCap Enterprises, Inc. if all impaired Classes entitled to vote on the Plan vote to accept the Plan.

**F.    Preservation of Rights of Action**

**1.    Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order (including in the Investor Claims Special Provisions), in accordance with Bankruptcy Code section 1123(b), from and after the Effective Date, the iCap Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as iCap Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the iCap Trust Agreement. The iCap Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the iCap Trust Actions without notice to or approval from the Bankruptcy Court, subject to the iCap Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the iCap Trust may compromise and settle iCap Trust Actions, subject to the iCap Trust Agreement. It is anticipated that the iCap Trust will pursue iCap Trust Actions primarily under alternate fee arrangements and not a typical hourly fee structure, employing the services of professionals selected by (i) the Debtors, in

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 43

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

consultation with the Unsecured Creditors' Committee, prior to the Effective Date or (ii) the iCap Trustees, as provided in the iCap Trust Agreement, on and after the Effective Date. For the avoidance of doubt, nothing in the Disclosure Statement or this Plan shall require the iCap Trust to commence or pursue litigation concerning any iCap Trust Action.

**2.      Preservation of All iCap Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Avoidance Actions or Causes of Action as an iCap Trust Action is not intended to and shall not limit the rights of the iCap Trust to pursue any such Avoidance Actions or Causes of Action. Unless a iCap Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such iCap Trust Action for later resolution by the iCap Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the iCap Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any iCap Trust Actions upon, after, or as a consequence of the confirmation of the Plan.

**3.      Categories of Preserved Claims.** The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including **all** Causes of Action and Avoidance Actions. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, the following are illustrative categories of claims that the iCap Trust will have the right to pursue:

(a) Insider and non-Insider preference actions arising under bankruptcy and/or state law;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 44

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(b) Fraudulent transfer actions arising under bankruptcy and/or state law;

(c) Turnover actions under bankruptcy law;

(d) Any and all other rights and/or claims arising under the bankruptcy laws;

(e) Claims against third parties that aided and abetted the Debtors' conduct;

(f) Intentional and unintentional tort claims against third parties, including professional firms and former iCap principals and employees;

(g) Claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme;

(h) Breach of contract claims;

(i) Employment claims against former iCap employees, including breach of duties and breach of non-compete agreements and/or other agreements;

(j) Claims against third parties for return of commissions paid;

(k) Claims against former principals, directors, and officers for breach of fiduciary duties, breach of duty of loyalty, and similar claims; and

(l) All other claims not included in these categories that are Causes of Action and Avoidance Actions.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 45

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## G.    Exit Financing

On the Effective Date, without the need for further action, the iCap Trust shall enter into the Exit Financing, including the First Lien Exit Loan Facility and the Tritalent Exit Loan Facility.

## H.    Abandonment of Certain Estate Assets

Unless previously sold or disposed of, on the Effective Date, and without the need for further action, the following Estate Assets shall be deemed abandoned by the Debtors and their Estates pursuant to Bankruptcy Code section 554 and shall not be considered iCap Trust Assets:

- the real property commonly known as 715-775 Broadway, Tacoma, WA; and
- the Debtors' interests in Airlink Holding, LLC and Airlink Markets, LLC (which entities shall be dissolved by the Debtors under the Confirmation Order) including, without limitation, Airlink Holding, LLC's membership interests in Airlink Markets, LLC.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions to Senior Claims and Establishment of Senior Claims Reserve

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Senior Claims Reserve out of Available Cash, and the Distribution Agent shall make Distributions out of the Senior Claims Reserve to Holders of, as applicable, Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims in accordance with the Plan. After the payment of all such Claims in accordance with the Plan and the payment of all related reasonable costs and expenses of the iCap Trustees and the Distribution Agent (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions), any remaining Cash in the Senior Claims Reserve will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement. The iCap Trustees or their designee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 46

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall not be required to give any bond or surety or other security for the performance of any duties as the Distribution Agent.

**B.    Distributions to Secured Claims and Establishment of the Secured Claims Reserves**

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Secured Claims Reserves. Upon the sale or refinancing of any Collateral subject to a Lien of a Holder of an Allowed Secured Claim, such Claim shall be paid from the applicable Secured Claims Reserve or treated as otherwise provided in Article III.B.2. After the payment of all such Claims in accordance with the Plan, any remaining Cash in the Secured Claims Reserves will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement.

**C.    Calculating Distributions**

The iCap Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Investor Claims, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the iCap Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the iCap Trust, and may establish and hold back from Distributions reasonable reserves for other contingencies. When calculating Distributions (and amounts to hold in Distribution Reserves) with respect to Investor Claims, the Outstanding Principal Amounts to be utilized by the iCap Trust shall be determined in accordance with the procedures established by the iCap Trustees.

**D.    Interest and Other Charges**

Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 47

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## E.    Means and Methods of Payment

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

Cash payments under the Plan shall be made, at the option and in the sole discretion of the iCap Trustees, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the iCap Trustees, by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance. Requests for reissuance of any check within 180 calendar days of the date of the issuance shall be made directly to the iCap Trustees.

## F.    Fractional Distributions

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

## G.    No Distributions with Respect to Certain Claims

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of a Claim that is not an Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim, including rights conferred by Bankruptcy Code section 506(b), which shall continue to apply until Distribution to the Holders of Secured Claims (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the iCap Trustees),

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 48

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

except that if the Holder of such Claim and the iCap Trustees otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number shall be used with respect to such Claim. For purposes of calculating and making Distributions pursuant to the Plan, the iCap Trustees shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed Claims and Disputed Claims, inclusive of Contingent Claims or Unliquidated Claims in a particular Class. The iCap Trustees also shall be entitled to seek one or more estimation orders from the Bankruptcy Court for such purposes, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.

The iCap Trust may establish a Distribution Reserve on account of Disputed Claims, Contingent Claims, or Unliquidated Claims. The iCap Trust may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Distribution Reserve as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the Distribution Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the Distribution Reserve as, when, and to the extent, such Disputed Claims cease to be Disputed Claims, Contingent Claims, or Unliquidated Claims, whether by virtue of becoming Allowed or otherwise resolved. The iCap Trust Beneficiaries shall be bound by such election, if made by the iCap Trustees, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

## H.    Delivery of Distributions

Distributions in respect of iCap Trust Interests shall be made to Holders of iCap Trust Interests as of the Distribution Record Date. The iCap Trustees shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Distributions to Holders of iCap Trust Interests or Allowed Claims that have not been converted to iCap Trust Interests shall be made (a) at the addresses set forth in the proofs of Claim Filed by such Holders; (b) at the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 49

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

addresses reflected in the Schedules if no proof of Claim has been Filed; or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the iCap Trustees. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the iCap Trustees are notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the iCap Trustees with a current address of a Holder of iCap Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the iCap Trustees shall be held in trust on behalf of the Holder of the iCap Trust Interest or Claim to which they are payable by the iCap Trustees until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

## I. Withholding, Payment, and Reporting Requirements for Distributions

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The iCap Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the iCap Trust, requiring each Holder of an iCap Trust Interest or Claim to provide a duly completed and properly executed current Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form as a prerequisite to receiving a Distribution. If a Holder of an iCap Trust Interest or Claim does not provide an appropriate Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form or documents reasonably requested by the iCap Trust within 90 days of written request, the iCap Trust will be required to back up withholding amounts due to such Holder and/or take such other action as it deems reasonably appropriate.

Notwithstanding any other provision of the Plan, (a) each Holder of a iCap Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 50

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

would be imposed on the iCap Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the iCap Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

## J. Defense and Setoff Rights

On and after the Effective Date, the iCap Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing in the Plan shall affect the rights and defenses of the Debtors, the Estates, or the iCap Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the iCap Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the iCap Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

## K. Allocation of Distributions

Distributions received under the Plan by Holders of iCap Trust Interests and Claims shall be allocated first to the principal amount of such Claim, and then to accrued interest, if any, with respect to such Claim.

## L. Joint Distributions

The iCap Trustees may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the iCap Trustees have determined to have an interest in such Claim.

## M. Forfeiture of Distributions

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article VI.E, fails to claim an undeliverable Distribution within the time limit set forth in Article VI.H, or fails to complete and return to the iCap Trustees the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Article VI.I (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 51

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## N.    Claims Paid by Third Parties

Except as otherwise set forth herein, and specifically Article III.C.2.a. governing payments received by an Investor on account of Individual Investor-Specific Claims, to the extent a Holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the iCap Trustees on account of such Claim, such Holder shall, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Debtor or the iCap Trustees, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such excess Distribution shall result in the Holder owing the iCap Trust annualized interest at the Federal Judgment Rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the thirty-day grace period specified above until the amount is repaid. For the avoidance of doubt, only prior distributions are required to be returned or paid to the iCap Trust, and no forfeiture of an Investor's Claim shall result unless the Investor fails to comply with Article III.C.2.a.

## ARTICLE VII.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

## A.    Disputed Claims Resolution

From and after the Effective Date, the iCap Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement, and any agreement entered into by the iCap Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided, however*, that, under the Plan, all Claims asserted by any of the Excluded Parties are Disputed Claims in their entirety and will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order. Notwithstanding anything else to the contrary

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 52

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

herein, and as provided in Bankruptcy Code section 502(d), the iCap Trustees are not required to make any Distributions to Holders of Allowed Claims, and no such Claims shall be deemed Allowed, unless and until such Holder has paid the Net Prepetition Investor Recovery, or such portion thereof as agreed to as a compromise and settlement, to the iCap Trust or until any iCap Trust Action seeking recovery of the Net Prepetition Investor Recovery is disallowed in its entirety by a Final Order.

## B. Claim Objections

All objections to Claims shall be Filed by the iCap Trust on or before the Claim Objection Deadline, which date may be extended (a) by sixty (60) days in the discretion of the iCap Trustees without further order of the Bankruptcy Court after notice to parties who have Filed requests for notice and (b) beyond the first sixty-day extension by order of the Bankruptcy Court upon motion Filed prior to the expiration of such period and notice to parties who have Filed requests for notice. If a timely objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim.

## C. No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of Distributions to Holders of Claims, no payment or Distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a Distribution under this Plan is due, such Distribution to other Holders in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

## D. Disposition of Reserves After Disallowance

After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 53

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved iCap Trust Interests shall be cancelled.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors have no executory contracts or unexpired leases within the meaning of Bankruptcy Code section 365.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Occurrence of Effective Date

The Effective Date shall not occur and the Plan shall not be considered consummated until each of the following conditions has either been satisfied or waived as set forth below in Article IX.B:

1.    Entry of the Confirmation Order by the Bankruptcy Court in a form reasonably acceptable to both the Debtors and the Unsecured Creditors' Committee, and no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or, if made, shall remain pending;

2.    The Confirmation Order shall have become a Final Order in full force and effect and shall not be subject to any stay of effectiveness;

3.    The iCap Trustees shall be duly appointed, qualified, and acting in that capacity;

4.    The iCap Trust shall have access to funding under the Exit Financing;

5.    There shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 54

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6.      All necessary actions, agreements, instruments, or other documents to implement the terms and provisions of the Plan have been completed or executed and delivered, as required.

## B.      Waiver of Conditions

The conditions set forth in Article IX.A of the Plan may be waived, in whole or in part, in writing by agreement of the Debtors, at any time, without notice or further order of the Bankruptcy Court.

## C.      Non-Occurrence of Effective Date Conditions

If the conditions necessary for the Effective Date are not met or duly waived as outlined in Articles IX.A and B of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) the Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Unsecured Creditors' Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged. Nothing in the Plan will constitute a waiver or release of any Claims by or against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

## D.      Effective Date Notice

Following the Effective Date, the iCap Trust or its representatives will promptly send notices to all Creditors and the United States Trustee. These notices will include information regarding: (i) the Confirmation Order and the Plan's Confirmation; (ii) the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, if any, along with the deadline for filing any Claims resulting from such rejection; (iv) the deadline set forth in the Plan for filing Administrative Expense Claims; (v) the deadline by which Professional Persons must file and serve any requests for payment of professional fees; and (vi) any other pertinent matters deemed appropriate by the iCap Trustees.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 55

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# ARTICLE X.
## MISCELLANEOUS PROVISIONS

### A.     Mailing List

The official listing of Creditor identities and mailing addresses is maintained by the Claims Agent (the "Official Mailing List"). It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity.

### B.     Employment of Professional Persons

The Debtors shall be authorized to employ and compensate Professional Persons following Confirmation upon such terms as the Debtors deem reasonable and appropriate without further notice or order of the Court.

### C.     Payments Shall Be Timely

The Debtors shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the iCap Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the iCap Trust shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

### D.     Treatment of Negotiable Instruments

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled, or satisfied, as the case may be, on the Effective Date.

### E.     Stay of Confirmation Order Shall Not Apply

The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms absent further order of the Bankruptcy Court.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 56

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## F.    Preservation of Privileges and Defenses

The actions taken by the Debtors, the iCap Trust, or any of their respective Related Parties in connection with the Plan shall not be a waiver of any privilege or defense of the Debtors or the iCap Trust. Notwithstanding any Debtors providing any privileged information related to any iCap Trust Actions to the iCap Trustees, the iCap Trust, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the iCap Trust Actions and shall remain privileged. The iCap Trust shall retain the right to waive its own privileges. Only the iCap Trustees shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the iCap Trust.

## G.    Releases and Related Matters

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed, to the fullest extent permitted under applicable law, to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined by Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this Article X.G shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 57

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

## H.    Exculpation

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other act taken or omission originating or occurring after the Petition Date but before the Effective Date in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; *provided*, *however*, that nothing in this Article X.H shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order, including with respect to the Supplemental DIP Credit Agreement; and *provided*, *further*, that the exculpation provisions of this Article X.H shall not apply to acts or omissions constituting actual fraud, willful misconduct, gross negligence, or malpractice by such Exculpated Party as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Article X.H of the Plan.

## I.    Injunction

Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to Article X.G of this

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 58

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan or (ii) are subject to exculpation pursuant to Article X.H of this Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Without limiting the foregoing, the automatic stay provided under Bankruptcy Code section 362(a) shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in this Article X.I shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Equity Interest of any of the obligations of the Debtors or the iCap Trustees under the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.I.

## J.    Injunction Against Interference with the Plan

Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the iCap Trustees, the iCap Trust, or any of the iCap Trust Assets that interfere with the implementation or consummation of the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.J.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 59

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## K.    SEC Rights

Notwithstanding any language to the contrary in the Disclosure Statement, this Plan, and/or the Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, Causes of Action, proceeding, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

## L.    Insurance Policies

Nothing in the Plan or the Confirmation Order shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the rights and obligations of the Debtors (and their Estates), third party beneficiaries or named insureds, and the Debtors' insurers (and third-party claims administrators) under any of the Debtors' insurance policies (including any D&O Insurance) or modify the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the insurance policies. For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Debtors' insurance policies shall control. For the avoidance of doubt, nothing herein (a) constitutes a rejection of any insurance policy (including the D&O Insurance) or (b) relieves any party from any injunction or stay created or preserved under the Plan.

## M.    Books and Records

On the Effective Date, the Debtors' books and records shall be transferred to the iCap Trustees. The iCap Trustees shall be free, in their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however,* that neither the Debtors nor the iCap Trustees shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 60

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the iCap Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

In the event that the iCap Trust becomes the subject of a directive or requirement to retain any books and records, the iCap Trust may provide notice to the parties who requested or obtained such directive or requirement (the "**Document Destruction Notice Parties**") of an intent to destroy such documents. In the event a Document Destruction Notice Party objects to the destruction, it shall provide the iCap Trust with a written agreement and assurance, each of which is reasonably acceptable to the iCap Trust, providing for the reimbursement and payment of all costs and expenses associated with the continued maintenance of such documents and records by the iCap Trust. Such costs and expenses shall include, but may not be limited to, third party fees and expenses, storage device costs, copying fees, the fees and expenses of counsel or other professionals to address any subpoenas or document production demands, and, if such extended maintenance precludes entry of the final decree, any fees (including U.S. Trustee fees) associated with such delay.

## N.    Severability

In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 61

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

,

## O.    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan before Confirmation and to file a subsequent plan. If the Debtors revoke or withdraw the Plan before Confirmation, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors  or to prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtors.

## P.    Notices

All notices, requests, and demands to or upon the iCap Trustees or the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered and addressed as follows:

If to the Debtors, to:

    iCap Enterprises, Inc. *et al.*
    c/o Pivot Management Group, LLC
    1230 Rosecrans Ave., Suite 530
    Manhattan Beach, CA 90266
    Attn:  Lance Miller (Lance.miller@pivotgrp.com)

With copies to:

    O'Melveny & Myers LLP
    400 South Hope Street, Suite 1900
    Los Angeles, CA 90071
    Attn:  Julian Gurule (jgurule@omm.com)

    and

    O'Melveny & Myers LLP
    1301 Avenue of the Americas, Suite 1700

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 62

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

New York, NY 10019
Attn: Diana Perez (dperez@omm.com)

If to the Unsecured Creditors' Committee, to:

Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Attn: Armand J. Kornfeld (jkornfeld@bskd.com)
Aimee S. Willig (awillig@bskd.com)
Jason Wax (jwax@bskd.com)

and

Corr Cronin LLP
1015 Second Ave., Floor 10
Seattle, WA 98104
Attn: John T. Bender (jbender@corrcronin.com)

If to the iCap Trustees, to:

Pivot Management Group, LLC
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266
Attn: Lance Miller (Lance.miller@pivotgrp.com)

and

B. Riley Advisory Services
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612
Attn: Seth Freeman (sfreeman@brileyfin.com)

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 63

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Q. Exhibits/Schedules**

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein. After the exhibits and documents are filed, copies of such exhibits and documents shall be available free of charge on the Debtors' case website at: https://cases.creditorinfo.com/icap/documents/docket. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**R. Successors and Assigns**

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Person.

**S. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interest before the Effective Date.

**T. Dissolution of the Unsecured Creditors' Committee**

Upon the occurrence of the Effective Date, the Unsecured Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professional Persons, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 64

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## U.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the CRO, the Debtors, the Unsecured Creditors' Committee, and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes the Plan.

**ARTICLE XI.**
**SATISFACTION OF INDEBTEDNESS; PLAN IS BINDING**

Except as specifically provided in this Plan or in the Confirmation Order the Distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Equity Interests. The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's Claim was Scheduled, (b) a proof of Claim was filed, (c) the Claim is an Allowed Claim, or (d) the Holder thereof voted to accept the Plan.

**ARTICLE XII.**
**MODIFICATIONS OF THE PLAN**

Pursuant to the provisions of Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponents reserve the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT**

## A.    Scope

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 65

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and the power to do the following:

1.     Except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims;

2.     Hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4);

3.     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

4.     Effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

5.     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the iCap Trust Actions, and with respect to the Plan; *provided* that, for the avoidance of doubt, the iCap Trust shall be entitled to file and prosecute any litigation in any other court of competent jurisdiction;

6.     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 66

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements (including, without limitation, the iCap Trust Agreement), documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

8.      Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11.     Hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

12.     Enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

13.     Except as otherwise limited herein, recover all Estate Assets, wherever located;

14.     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 67

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

15.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

16.    Enter and enforce any order and related agreements for the sale or transfer of property and obligations thereunder pursuant to, *inter alia*, Bankruptcy Code sections 363, 1123, or 1146(a);

17.    Enforce all orders previously entered by the Bankruptcy Court;

18.    Resolve any cases, controversies, suits, or disputes related to the iCap Trust, the iCap Trust Supervisory Board, or the iCap Trustees;

19.    Hear and determine all matters in connection with the iCap Trust Assets, including, without limitation, any disputes with respect to the sale of any iCap Trust Assets; and

20.    Enter a final decree closing the Chapter 11 Cases of the Debtors.

**B.    Right to Seek Bankruptcy Court Approval**

Notwithstanding any provision in the Plan permitting actions without the approval of the Bankruptcy Court, the iCap Trustees retain the authority to present to the Bankruptcy Court any questions for explicit approval regarding specific actions proposed by the iCap Trust, including the management, distribution, or potential sale of iCap Trust Assets. The Bankruptcy Court retains jurisdiction and authority for such matters and shall approve or reject any proposed action upon motion filed by the iCap Trust.

**C.    Non-Exercise of Bankruptcy Court Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XIII of the Plan, the provisions of this Article shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 68

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The Bankruptcy Court shall not retain exclusive jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

RESPECTFULLY SUBMITTED this 9th day of October, 2024.

ICAP ENTERPRISES, INC., ET AL.

By /s/ *Lance Miller*
Name: Lance Miller
Title: Chief Restructuring Officer
          Pivot Management Group, LLC


OFFICIAL UNSECURED CREDITORS' COMMITTEE

By /s/ *Lilian Tan*
Name: Lilian Tan
Title: Co-Chair of the Committee

By /s/ *Thomas Temple*
Name: Thomas Temple
Title: Co-Chair of the Committee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 69

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# Exhibit E

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

_____

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LANCE MILLER and SETH FREEMAN | ) | Case No. 25-80084-WLH |
| as Co-Trustees of the iCap | ) | June 18, 2026 |
| Trust, | ) | 10:00 AM |
| Plaintiffs, | ) | Yakima, WA |
| v. | ) | |
| | ) | |
| PERKINS COIE, LLP, | ) | |
| | ) | |
| Defendant. | ) | |

_____

MOTION TO DISMISS ADVERSARY PROCEEDING
HEARD BEFORE THE HONORABLE WHITMAN HOLT
(FROM AUDIOTAPED PROCEEDINGS)

_____

For the Plaintiffs:            JASON WAX, ESQ.
(Via Zoom)                     BUSH, KORNFELD, LLP
                               601 Union Street, #4630
                               Seattle, WA 98101


Also For Plaintiffs:           ALAN KORNFELD, ESQ.
(Via Zoom)                     JEFFREY DULBERG, ESQ.
                               PACHULSKI, STANG, ZIEHL & JONES
                               10100 Santa Monica Blvd.
                               13th Floor
                               Los Angeles, CA 90067


For the Defendant:             CAROLYN J. FAIRLESS, ESQ.
                               NICHOLAS J. STEVERSON, ESQ.
                               WHEELER, TRIGG, O'DONNELL, LLP
                               370 17th Street, #4500
                               Denver, CO 80202


Also for Defendant:            JOHN D. MUNDING, ESQ.
                               MUNDING, PS
                               309 E. Farwell Road, #310
                               Spokane, WA 99218-1152


Also Present:                  ANGELA JONES, ESQ.
                               Deputy General Counsel
                               PERKINS, COIE


Transcribed by: Catherine M. Vernon, CCR# 2391

Fourth, you know, he talked about the need to interpret the plan with things like the Ponzi scheme. What the Ninth Circuit has said in *Wilshire* and in *Chevron* Corps is what you actually need is a need to interpret the plan that gives Rice to the -- to the claim itself. It's not just some tangential issue that the parties might need to look at the plan at some point. And, in fact, in every case where you know the parties are litigating whether issue preclusion applies to bind one party, they're looking at some other Court's plan. That isn't enough on its own to say that the -- the claim itself arises out of the plan and arises out of the decision and *Chevron* says that that's what you need. There's no subject matter jurisdiction here and the claims should be dismissed for that reason.

I'm happy to answer any additional questions.

THE COURT: I don't have any questions for you. I do have one question for Mr. Kornfeld relating to a point you made. I don't have the documents all before me in a word searchable version. Mr. Kornfeld, do you happen to know, off the top of your head, or can you quickly see whether the claims against Perkins are ever described in the Disclosure Statement or in any of the exhibits or attachments? There's an issue

in the Ninth Circuit, I don't believe this is an issue, but there's this -- we have to list the causes of action to adequately retain and preserve the claims post-confirmation so that I know that some plans and Disclosure Statements have that schedule to the Disclosure Statement saying, you know, causes of action against everyone in the world, but specifically including and then identifying the particular parties. I can't recall and the Disclosure Statement is 200 pages long and my i-Pad doesn't let me word search.

So do you know, Mr. Kornfeld, off the top of your head, whether there's anything about Perkins?

MR. KORNFELD:  I -- I'm going to do two things to answer your question.  I'm going to -- I'm going to respond first as to what is in the plan and the word "Perkins" are not mentioned in the plan.  And then Mr. Wax, who was in this case from the inception, not to throw him under the bus, but I'm going to do that a little bit, and -- and ask you to ask him if he knows the answer to that question.  What is in the plan first is there's a category of preserved claims and that is section -- Section 5(d)(3) and that does include claims against -- in Section sub (f), intentional and unintentional tort claims against

third parties, including professional firms and former iCap principal and employees.  And in Section (g), claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme.  But the plan itself does not specify either Perkins or any other litigation target.

THE COURT:  Right.  Got it.

MR. KORNFELD:  And I would -- I would -- yes, go ahead.  I'm sorry.

THE COURT:  No, I've got that, Mr. Kornfeld.  I just couldn't remember whether the Disclosure Statement or the plan supplement or something else had that list that people sometimes do and, if so, whether it included Perkins.  So I don't know that this is dispositive.  I just thought of it while Mr. Steverson was speaking, so I just wanted to make sure I'm on the same page on the facts.

Mr. Wax, I think you've been listening, so if you would like to address what Mr. Kornfeld said, I don't think I need to re-ask you, so just if anyone knows on the -- on the Plaintiffs' side.

MR. WAX:  Yes, Your Honor.  I do not know off the top of my head.  I am looking right now and I will find the time to try to identify and locate the answer.

some personal stake in this deal.  There's no allegation that the firm themselves were soliciting and making misrepresentations to investors.  Those allegations are ones that need to be there in order to make this a case that could be asserted against a law firm and they simply aren't.

For all of those reasons, Your Honor, you should dismiss the case under Rule 12(b)(6), to the extent that Your Honor concludes that you do have subject matter jurisdiction.  Thank you.

THE COURT:  Thank you, Ms. Fairless.

Mr. Wax, I don't know if you've had a chance to run that rabbit down the trail?

MR. WAX:  Your Honor, I did not locate list of litigation targets beyond the statements that Mr. Kornfeld and Mr. Steverson already shared with the Court that are in the plan.

THE COURT:  Thank you very much, I appreciate that.

All right.  So the Court's going to grant the Motion to Dismiss in part and deny it in part.

First, with respect to subject matter jurisdiction, I believe I have jurisdiction under Section 1334 as a related to matter.  I think given the particular facts of this case, there's a close

nexus between the pursuit of this litigation and the plan.

In particular, I agree with the cases that have concluded that the pursuit of similar post-confirmation litigation by a liquidating trust or similar vehicle either implements, executes, or consummates the plan.  Here Article V of the plan, which -- so Bankruptcy Code Section 13 -- I'm sorry, Bankruptcy Code Section 1123(a)(5) requires that a Chapter 11 Plan provide adequate means for the Plan's implementation.  Here Article 5 of the plan is entitled implementation of the plan and sets forth the mechanisms and steps through which the plan would be implemented.

All of the provisions relating to the creation of the trust, the vesting of causes of action, and other assets in the trust and the standing and authority of the trust to pursue and settle and resolve and have standing with respect to causes of action including both the state claims and the contributed claims that certain investors contributed such as the causes of action here, are all within that implementation of the plan article of the plan.  So, in pursuing this litigation, the liquidating Trustees are taking the steps expressly contemplated by the plan to implement

25-80084-WLH     Doc 49-5     Filed 07/21/26     Entered 07/21/26 15:05:40     Pg 7 of 27

the plan.

Similarly, retaining recoveries and disputing them to investors is how this particular plan will be consummated.  I think Perkins has some plausible arguments and some interesting Ninth Circuit authority, including authority that post dates judge Overstreet's consolidated Meridian opinion, but I'm not persuaded that that authority is sufficiently weighty or directly on point to render judge Overstreet's analysis bad law.  I understand that's an argument and it's been made and preserved and I think it's about -- it's a color of argument for sure, and I appreciate counsel pressing it, but ultimately, I reach the same conclusion Judge Overstreet did, is that pursuit of this particular litigation claim has the appropriate close nexus.

I just further, in addition to the creation of the trust and the act of pursuing these litigation claims expressly being part of how this -- this particular Chapter 11 Plan will be implemented, I do agree with Mr. Kornfeld that at some point it may be necessary for the Court to either interpret the plan or the Confirmation Order, including which specific investors have standing and whether these particular claims were contributed claims.

There is another piece of litigation in which the Court will to spend substantial time working through what I thought was an inartfully drafted portion of the plan to determine whether the claims were actually contributed or not.  That argument has not been raised here, but it may come up.  I understand Mr. Steverson's point that there's a little bit of bootstrapping in a jurisdiction because determining the possibility that there will be a dispute with standing, in and of itself, can't create subject matter jurisdiction, but I -- I think the fact that the pursuit of this litigation is expressly delineated as a means of implementing the plan, the fact that recovery on these claims is how this plan will be consummated, taken together with the fact that I may need to go back and interpret the plan or the Confirmation Order in the context of this litigation altogether is sufficient to put this within the rubric that Judge Overstreet applied and that some of the other cases cited by the Plaintiffs have applied in finding that similar post-confirmation liquidating trust recovery causes of action have the requisite close nexus to the plan.

Again, though, the Ninth Circuit has not spoken directly on this issue.  The issue has been preserved

and it may be down the road this case or some other opportunity will be presented to the circuit to state directly that Judge Overstreet got it wrong.  But, for now, I feel and believe I'm within the mainstream of the case law in concluding that there is related to jurisdiction even in the narrowed post-confirmation context.

Next, the Court is going to grant the motion as it relates to the claim for aiding and abetting breach of fiduciary duty or -- well, before we get to that, as a general matter, with respect to both aiding and abetting claims, the Court joins and agrees with District Judge Robart's analysis about why it's not necessary at the pleadings stage to identify particular investors.  I understand the argument that maybe there's a distinction between *Columbia Bank* and *Perkins Coie* in terms of access to the investor list, but that wasn't really part of what Judge Robart was discussing.

I've also ruled in related adversary proceedings that the individual investor issue is a matter of discovery and proof and not a -- not a pleading stage at this -- at this stage the Complaint sufficiently alleges that there were investors, that the investors were damaged.  And that the liquidating trust has

standing as assignee of those investors.  The details of the identity of the specific investors and the context of there transactions with iCap can be sussed out during discovery to the extent necessary.  So I join in and adopt District Judge Robart's analysis of that issue.

Next, as to the aiding and abetting breach of fiduciary duty action, the Court agrees with Perkins Coie that the Complaint fails to alleged sufficient facts that as a matter of Washington law would establish the predicate fiduciary relationship between the Christensens and the investors during the colloquy with Mr. Kornfeld.  We talked about judge Overstreet's analysis in consolidated *Meridian*.  The Court thinks that analysis is correct, consistent with -- I read the Washington case law, including the *Micro Enhancement International* case that Judge Overstreet cited and that's also cited in the briefs the same way that Judge Overstreet does.  In order to allege a fiduciary relationship that could support a breach of fiduciary duty claim, which in turn could support an aiding and abetting breach of fiduciary duty claim, it's necessary to allege that the purported fiduciary had an individualized or personalized relationship with the counter party, just a general relationship of

trust or confidence.  It's not sufficient under Washington law to create that fiduciary relationship.

Here is Mr. Kornfeld, to his credit, candidly acknowledged there's really nothing of the sort alleged in this Complaint that would establish the necessary fiduciary relationship.  And, accordingly, the Plaintiff Trustees have not alleged the predicate cause of action for breach of fiduciary duty and, therefore, have not adequately alleged the knock-on cause of action for aiding and abetting the breach of fiduciary duty.

With respect to the fraud, aiding and abetting fraud cause of action, the Court is going to deny the motion.  Taken as a whole, the Court believes the Complaint alleges particularized facts that give rise to the plausible conclusion that, first, there was a fraud, the Ponzi scheme.  I agree with Judge, District Judge Robart's analysis with respect to that issue, but also that Perkins Coie had actual knowledge, provided sufficient and provided substantial assistance to the perpetration of the fraud, such that the investors causing damages to the investors and, therefore, giving rise to a fraud cause of action and the knock-on aiding and abetting cause of action.

I'm really reading the entire Complaint as a

whole.  I -- I -- I think this Complaint alleges particularized facts, sets forth a gloss or connective tissue between those facts and the elements and then adequately alleges the elements of the so again, reading the Complaint in its entirety, I think the Complaint plausibly alleges that there was a fraud, that the Perkins Coie Law Firm actually knew about the fraud, that the Perkins Coie Law Firm took steps to substantially assist the fraud, that that in turn caused damages to the investors, for which the Plaintiffs seek recompense.

So, similarly to how District Judge Robart reached a similar conclusion with respect to the aiding and abetting fraud claim against *Columbia Bank*, I recognize the circumstances are different and the allegations are different, but I think here the allegations against Perkins Coie sufficiently get over the plausibility line as to each of the required elements for aiding and abetting fraud, so I'm going to deny the Motion to Dismiss that claim.  So I will grant the motion in part and deny it in part on that basis.

Mr. Kornfeld, you didn't expressly ask for leave to amend.  You expressed some hesitancy about whether that would even be possible to allege facts, but then

kind of pivoted around on that, allege facts sufficient to create the necessary fiduciary relationship.  Do you -- I need a final view on whether you're requesting that I grant leave or whether you'll just stand on the aiding and abetting fraud claim that's surviving the motion?

MR. KORNFELD:  I'm going to -- I'm going to pivot to needing time to as pertaining to whether there are facts that could buttress those allegations in the Complaint.  So I do ask for time to amend with respect to the aiding and abetting breaches of fiduciary duty.  We'll -- we'll -- we'll do our best to figure that out, Your Honor, but we need time to figure it out.

THE COURT:  Okay.  How much time do you think you need?

MR. KORNFELD:  May we have three weeks?

THE COURT:  I'm just looking at the calendar.  Give me just a moment.  You said three weeks?

MR. KORNFELD:  Yes, Your Honor.

THE COURT:  So that would be July 9th, I think?

MR. KORNFELD:  Assuming that's a weekday, I'll take it.

THE COURT:  Okay.  I know, Ms. Fairless, you had indicated you generally oppose leave to replead.  Leave generally should be liberally granted and I'm not dismissing the entire Complaint, so I'm inclined to give them another shot.  I mean, I am rather pretty clear I think on what the standards are and Rule 11, of course, applies.  And when I did this before, the Amended Complaint did not reallege what I dismissed, because I think counsel concluded they couldn't do so.  But, before I make a final decision on this, I'm happy to hear from you, again, just keeping in mind leave generally should be liberally granted and the litigation is going forward one way or the other.  So --

MS. FAIRLESS:  I understand, Your Honor, and I -- I don't oppose giving them three weeks to either indicate whether they're going to file an Amended Complaint and, if so, to file it, or to tell us whether they're not going to file an Amended Complaint.

THE COURT:  Okay.

MS. FAIRLESS:  We -- we may still have issues with the Amended Complaint, once we see it.

THE COURT:  Of course.  Yeah.

MS. FAIRLESS:  So we're certainly not

waiving any of those issues.  And if we think the Amendment would be futile, I assume we'll have a chance to bring it up at that point in time.

THE COURT:  Yes.  Yeah.  And if there's an Amended Complaint, I mean, we -- you know, there's litigation where people get to like the 4th Amended Complaint.  I am not going to do that here.  I think we've got a Complaint that is, as I've ruled, adequately accedes aiding and abetting fraud, so they don't need to do anything on that.  They'll have one shot to look into and if they think they can plead the fiduciary duty claim, to do it, but you'll absolutely, Perkins will absolutely have the right to file another Motion to Dismiss that is re-pled.  And at that point I'd say we're -- we've, you know, had two shots and given the nature of this litigation.  And the sophistication of counsel, two shots is enough, I think.  So --

MS. FAIRLESS:  And, Your Honor, because we filed --

MR. KORNFELD:  Your Honor, I --

MS. FAIRLESS:  I'm sorry.  Go ahead.

THE COURT:  Go ahead, Mr. Kornfeld.

MR. KORNFELD:  Sorry.  Sorry, Ms. Fairless and Your Honor.  People -- people are kicking me under

25-80084-WLH   Doc 49-5   Filed 07/21/26   Entered 07/21/26 15:05:40   Pg 16 of 27

the table virtually and asking for one more week.  I would ask for just -- apparently there's some vacation plans that I forgot about.

MS. FAIRLESS:  No objection, Your Honor.

THE COURT:  Okay.  Why don't we just say that the deadline for the Plaintiffs to either file a First Amended Complaint are indicated that there will be no amendment to the Complaint will be Friday, July 17th.  And then the -- will the usual time under the rules for responding to the claim be sufficient?

MS. FAIRLESS:  Yes, Your Honor.  Just a point of clarification.  We have not yet responded in terms of an Answer to the original Complaint, because we filed our Motion to Dismiss.

THE COURT:  Right.

MS. FAIRLESS:  Can we assume that we need not file anything in response to the original Complaint until July 17th?  And, at July 17th, our time will start to tick to either respond to the Amended Complaint, if there is an Amended Complaint, or if we have been told no, go ahead and file, respond to the original Complaint then, our time to respond to the original Complaint will start to tick from July 17th?

THE COURT:  Will start, will start on that

date.

MS. FAIRLESS:  Correct.

THE COURT:  Right.

Mr. Kornfeld, any objection?  That seems reasonable?

MR. KORNFELD:  No.  No, no objection. That's a fair request.

THE COURT:  Okay.  Could I ask counsel to just -- I originally was just going to do a text order granting the motion in part, denying in part, for the reasons stated on the record, but I think we're now getting into -- I imagine counsel will want to worth submit exactly the precise language about the parties' understanding as it relates to time and I -- if you'd like to do that, I'd be happy to do that, and I'll need an Order submitted and uploaded.  But, Mr. Kornfeld, are you okay working with Perkins' counsel on that, just an Order memorializing what Ms. Fairless has described today?

MR. KORNFELD:  Of course, Your Honor.

THE COURT:  Okay.  Okay.  I think that's fine.

I don't know, I'd indicated at our prior status conference, that it may make some sense to talk about discovery schedule and cut-offs.  I don't know if

counsel has had a chance to talk about that.  I think given that the litigation is going forward, the Plaintiffs generally can start serving discovery. Maybe we should see what happens with the amendment of the Complaint or not to determine whether kind of a Summary Judgment cut-off date, outside discovery cut-off date, experts.  I don't know if we -- has there been any discussion today?

MR. KORNFELD:  Your Honor, what I --

THE COURT:  Or before today rather?  Go ahead, Mr. Kornfeld.

MR. KORNFELD:  What I would suggest is, is that we -- we see what's going to happen on or before July 17th to be fair to the Court and to all of the parties so everybody knows the -- the parameters of what would be relevancy of discovery.  So once we know those parameters, we then have the Rule 26(f) conference and we would have that among counsel and then would submit a proposed Scheduling Order to the Court highlighting what we've agreed upon and -- and delineating what we need your help on arriving at dates that we didn't agree upon.  If that's okay, with your -- with you, Your Honor.  And, of course, with -- with counsel for the Defendant, I would propose that.

THE COURT:  Ms. Fairless?

MS. FAIRLESS:  I think there's one other thing that we should be looking at doing over the next several weeks.  One is we're obviously going to have to talk to our client about the Court's ruling here today.  But it is potential, certainly a potential that we could be asking Your Honor for leave to have the subject matter jurisdiction decided in an interlocutory appeal by the Ninth Circuit because, as Mr. Steverson mentioned, I think there that there could be a lot of time and money spent on this case in the interim and to wait until the end of the case to have the Ninth Circuit decide that could be a very inefficient and costly way to proceed.  So I do want to speak with my client about it, but if we decide that it's something that should be decided earlier by the Ninth Circuit, before time and money is spent on discovery, I think it would be worth while for us to have that kind of known by July 17th, and I think that will affect the case schedule as well and whether it even makes sense to discuss a case schedule at that point in time.

THE COURT:  I'd just ask on this --

MR. KORNFELD:  Your Honor?

THE COURT:  -- I do need to refresh today.

Bankruptcy appeals are kind of their own world and Mr. Munding can help you on this. I believe it's 28 USC 158(a)(3) allows the District Court to take an interlocutory decision from me. I don't -- I don't know that I need to do anything to trigger that. I think you can go right up to the District Court, which I assume would probably be Judge Rice again, argue to him that the standards are met under 158(a)(3) and, therefore, he should take that appeal. I believe I don't -- I don't need to do anything.

The other, another road and this might be the road you had in mind, is 20 -- Judicial Code, Section 158(d) allows me to certify an issue directly to the Ninth Circuit. There's a two-step process. I need to do a certification certifying -- and be convinced that the standard are met. And then the Ninth Circuit has to open the door. So it's kind of I have to go knock and then it's up to them whether they open the door.

I believe, I haven't recently looked at this, I know there's a split among circuit courts about whether that direct appeal certification process under Section 158(d) can be used for a non-final ruling of the bankruptcy court. And I candidly don't know what the law is on the Ninth Circuit. So I think everybody's rights and arguments will be preserved,

but I just want to know if this is like a bit -- it's not like a District Court where you just do the Rule 54(b) certification or otherwise certify the interlocutory appeal.  There's good -- if you want to go to the Circuit, which may make sense, I certainly, from a policy perspective, I think having Circuit guidance that's binding on all bankruptcy courts on this issue would be helpful.  I just don't know a denial of a Motion to Dismiss, if they'd ever open the door to that.  That might be something I could certify it all day long, but the Circuit is just -- would not accept that because it's not a final order.

So I've created more research for Mr. Steverson, probably.

MR. STEVERSON:  Yeah.

MS. FAIRLESS:  Fortunately, he's really good at research.

THE COURT:  Yes.

MS. FAIRLESS:  So that's -- that's fortunate for us.  And I don't know the answer either, Your Honor, so it's something we'll certainly be looking at over the next four weeks so that we can make a decision and decide if we're going to be pursuing some appellate path, what that will look like, and then we can confer with the counsel for the

Trustees and figure out what makes sense in terms of scheduling from that point forward.

THE COURT:  Yeah.  And there was -- Mr. Munding may remember my hospital case.  I did certify something *sua sponte* to the Ninth Circuit and then both sides just decided they were happy to just take it to District Judge Peterson.  So sometimes there I was knocking and it just, the parties didn't take me up on the offer either, so the door remained closed, But I think that's the only time I've done that.

MR. KORNFELD:  Your Honor, all I can say, after listening to Ms. Fairless is that if -- if the issues that she's outlining do, in fact become issues, we'll probably be talking about timing with you sooner rather than later.

THE COURT:  Okay.  All right.

So I would ask counsel to collaborate in preparing an Order granting in part and denying in part the Motion to Dismiss, consistent with the Court's ruling on the record, setting forth that July 17th deadline for the Plaintiffs to either file an Amended Complaint or stand on the existing Complaint, setting forth the parties' agreement as it relates to time to respond to either the existing Complaint or, if there's an Amended Complaint, to the

Amended Complaint and maybe anything else the parties can agree on.

I -- I don't think at this point, unless anyone disagrees, it makes sense to schedule another scheduling conference yet.  I'll enter that Order. If, for example, the Plaintiffs are standing on the existing Complaint and there will be an Answer and the parties agree about a Scheduling Order, I don't even know that we need a scheduling conference.  I mean, I never stand in the way, almost never, sometimes with pro se parties I say these dates are nuts, but you all are very sophisticated.  So if you agree the discovery cut-off is 'X,' the expert discovery cut-off is 'Y,' the Summary Judgment cut-off is 'Z,' I'm never going to stand in the way.

And I don't need to give you trial dates here, because I think Judge Rice contemplated, as long as the jury demands it there, it's got to go back up to him when the matter is trial ready.  So unless everybody changes their mind, it's not going to be tried in front of me anyway.  So, since I don't need to give you those dates, if you reach agreement about a scheduling order, I'm happy to just sign it without a hearing.  If there's -- as Mr. Kornfeld said, if there's points where I can help resolve a

disagreement, I'm happy to do that, but I'd ask Mr. Munding, and Mr. Wax can just reach out to chambers if -- if you need some time and we'll get that set.  Does that sound good?

MS. FAIRLESS:  It does, Your Honor.

THE COURT:  And then, on the appeal stuff, I think everybody has some more work to do in terms of what's the framework and who needs to do what and how does that work and can that Circuit door even ever be opened at this point.  But everybody's rights and arguments are preserved and if you'd like to -- if anyone would like to make a motion or even if you agree that it should go up to the Circuit, you know, we'll deal with that down the road.

So, okay, anything further today, Ms. Fairless?

MS. FAIRLESS:  No, Your Honor.

THE COURT:  Okay.  And, Mr. Kornfeld, anything on the Plaintiffs' part?

MR. KORNFELD:  No, Your Honor.

THE COURT:  All right.

Well, once again, I really deeply appreciate the extraordinary briefing that was filed in this case. It's always a pleasure getting well thought out, well researched briefs.  And I have not seen this before, so I appreciate the time and effort that went into

this.  And, Mr. Steverson, I particularly appreciate your firm allowing you to -- and Perkins allowing you to argue.

MR. STEVERSON:  Yeah.

THE COURT:  Again, it's, you know, nobody learns how to do this unless they get experience and the only way to get experiences to do that and, you know, that's -- that's important.  So I appreciate everybody and you did an excellent job.  So --

MR. STEVERSON:  Thank you, Your Honor.

THE COURT:  So you're making Bates College proud.

MR. STEVERSON:  Thanks.

THE COURT:  All right.  Well, I appreciate everyone's time today.  We'll keep an eye out for that Order.  I hope everybody has a safe trip home or a nice rest of the day for those who didn't travel.  So thank you, everyone.  We're adjourned.

MR. STEVERSON:  Thank you, Your Honor.

MS. FAIRLESS:  Thank you.

MADAM CLERK:  All rise.

(End of audio.)

C E R T I F I C A T E

STATE OF WASHINGTON)
                    ) ss.
County of Pierce    )

I, the undersigned Notary Public in and for the State of Washington, do hereby certify:

That the foregoing verbatim transcript of proceedings was transcribed under my direction; that the transcript is a full, true and complete transcript of the testimony of said witness, including all questions, answers, objections, motions and exceptions, except as indicated as "inaudible";

That I received the audio directly from the Clerk of the Bankruptcy Court, Western District of Washington, at Seattle;

That I am not a relative, employee, attorney or counsel of any party to this action or relative or employee of any such attorney or counsel, and that I am not financially interested in the said action or the outcome thereof;

That I am herewith securely sealing and digitally signing this transcript and electronically filing via ECF in the case.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 30th day of June, 2026.


                              /S/ Catherine M. Vernon_
                              Notary Public in and for the State
                              of Washington, residing at
                              University Place, Washington.

# Exhibit F

2011 WL 3320916
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

ML SERVICING CO., INC., an Arizona corporation; and ML Liquidating Trust, Plaintiffs,
v.
GREENBERG TRAURIG, LLP, a New York limited liability partnership; Robert S. Kant and Ellen P. Kant, husband and wife; John and Jane Does 1–30; Black Corporations 1–30; White Partnerships 1–30; and Gray Trusts 1–30, Defendants.

No. CV11–0832–PHX DGC.
|
Aug. 2, 2011.

**Attorneys and Law Firms**

Michael C. Manning, Sarah Kate Langenhuizen, Stinson Morrison Hecker LLP, Phoenix, AZ, for Plaintiffs.

Colette Tyrell Connor, Ellen E. Oberwetter, Kevin M. Downey, Patrick Joseph Houlihan, Williams & Connolly LLP, Washington, DC, Martin Richard Galbut, Michaile Janae Berg, Galbut & Galbut PC, Phoenix, AZ, for Defendants.

**ORDER**

DAVID G. CAMPBELL, District Judge.

 **\*1** Defendants Robert and Ellen Kant ("Kant Defendants") move to dismiss on grounds of fraudulent joinder. Doc. 10. Plaintiffs oppose the motion (Doc. 13), and the Kant Defendants have filed a reply (Doc. 16). Plaintiffs also filed a motion to remand the case to Maricopa County Superior Court. Doc. 14. All Defendants oppose (Doc. 17), and Plaintiffs have filed a reply (Doc. 23). For the reasons that follow, the Court will grant Plaintiffs' motion for remand and decline to rule on the Kant Defendants' motion to dismiss.[1]

[1]   The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b); *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998).

**I. Background.**
The relevant allegations in the complaint (Doc. 1–1) are summarized as follows. Defendants Greenberg Traurig, LLP ("GT") and Robert Kant were securities counsel for Mortgages, Ltd. ("ML") during the period leading up to ML's bankruptcy.[2] GT and Kant prepared at least eleven Private Offering Memoranda ("POM") for ML to use in connection with its efforts to procure funds from investors. Doc. 1–1 ¶ 50. In June of 2008, some of ML's creditors forced ML into an involuntary bankruptcy proceeding. *Id.* at ¶ 161.

[2]   As part of its Chapter 11 plan, Mortgages, Ltd. changed its name to ML Servicing Co., Inc. The Court will refer to the entity as ML for purposes of this motion.

On May 20, 2009, the Bankruptcy Court confirmed ML's Chapter 11 reorganization plan ("Plan"). The Plan allows the liquidating trust to pursue ML's claims against professionals such as Defendants. *Id.* at ¶ 4. On January 10, 2010, the Securities and Exchange Commission "entered an Order Instituting Administrative Proceedings Pursuant to § 15(b) of the Securities Exchange Act of 1934, Making Findings, and Revoking Broker–Dealer Registration" ("SEC Order") against ML. *Id.* at ¶ 183. Plaintiffs and GT on its own behalf and on behalf of its affiliates executed a tolling agreement ("Agreement") which tolled all applicable statutes of limitations. *Id.* at ¶ 14.

Almost one year after the parties signed the Agreement, Plaintiffs commenced this action against Defendants in Maricopa County Superior Court, alleging legal malpractice and breach of fiduciary duty. *Id.* On April 25, 2011, Defendants removed the case to this Court on two independent grounds: (1) bankruptcy jurisdiction under 28 U.S.C. § 1334(b) because the case is "related to" the ongoing bankruptcy proceeding;[3] and (2) diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. On May 26, 2011, Plaintiffs filed the motion to remand for lack of subject matter jurisdiction. Doc. 14.

[3]   The bankruptcy case in question is *In re Mortgages Ltd.,* No. 2:08–bk–07465.

**II. Removal and Remand Principles.**
Pursuant to 28 U.S.C. § 1441(a), a civil case brought in state court over which the federal district courts have original jurisdiction may be removed to the federal court in the district

ML Servicing Co., Inc. v. Greenberg Traurig, LLP, Not Reported in F.Supp.2d (2011)

2011 WL 3320916

where the action is pending. The statute is to be strictly construed against removal jurisdiction. *See Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). This "strong presumption" against removal "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). Federal jurisdiction must be rejected, and the case remanded to state court, "if there is any doubt as to the right of removal in the first instance." *Id.; see* 28 U.S.C. § 1447(c). Moreover, the burden of showing jurisdiction exists is allocated to the party asserting jurisdiction. *Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir.1990) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). The Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983); *see Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987).

### III. "Related To" Bankruptcy Jurisdiction.

 **\*2**  Federal courts have original jurisdiction over cases "related to" bankruptcy proceedings. 28 U.S.C. § 1334(b). Bankruptcy "related to" jurisdiction is not limitless, *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), and the "Ninth Circuit has adopted the *'Pacor* test' for determining the scope of 'related to' jurisdiction" generally. *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1193 (9th Cir.2005) (internal citation omitted). Under the *Pacor* test, federal courts have "related to" jurisdiction over any proceeding where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Id.* (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)).

The Ninth Circuit has stated, however, that bankruptcy jurisdiction after a reorganization plan has been approved (i.e., post-confirmation jurisdiction) is necessarily more limited than pre-confirmation jurisdiction, and has adopted the Third Circuit's "close nexus" test for determining whether post-confirmation "related to" jurisdiction exists. *Pegasus,* 394 at 1194. The Third Circuit concluded that "matters affecting the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.' " *Id.* (quoting *In re Resorts Int'l, Inc.,* 372 F.3d 154, 167 (3rd Cir.2004)). Bankruptcy courts generally do not retain "related to"

jurisdiction over claims that "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *In re Ray,* 624 F.l3d 1124, 1135 (9th Cir.2010).

Although a bankruptcy plan has already been confirmed here, rendering this a post-confirmation action, Defendants argue that *Pacor's* "any effect" test should be used instead of the narrower "close nexus" test adopted by the Ninth Circuit in *Pegasus.* Doc. 17 at 8. Defendants assert that *Pegasus* is not analogous to this case and suggest that the "close nexus" test does not apply to "post-confirmation cases involving liquidating plans." Doc. 17 at 10 n. 3. This argument is unpersuasive because the bankruptcy plan in *Pegasus* created a liquidating trust just as the plan in this case. 394 F.3d at 1194. Absent case law suggesting otherwise, the Court will apply the "close nexus" test in determining whether post-confirmation "related to" bankruptcy jurisdiction exists here.

Defendants argue in the alternative that "related to" jurisdiction exists because "recovery for actions pursued by [Plaintiff] ML Liquidating Trust is placed in a Liquidation Fund and used to pay creditors under the Plan," Doc. 17 at 11, but the Ninth Circuit has rejected a similar argument as overbroad. *Pegasus,* 394 F.3d at 1194 n. 1 ("[W]e are not persuaded by the Appellees' argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction." (citation omitted)). Defendants have not shown that this case is different, or that the Court would be required to interpret the bankruptcy plan in order to resolve Plaintiffs' claims, *see id.* at 1194 (holding that "related to" jurisdiction existed where resolution of claims involved interpretation of the bankruptcy plan). In light of the presumption against removal, Defendants have not shown that Plaintiffs' claims satisfy the "close nexus" test necessary for "related to" jurisdiction to be found in this case.

### IV. Diversity Jurisdiction.

 **\*3**  A federal court's diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds ... $75,000 ... and is between ... [c]itizens of different states. 28 U.S.C. § 1332(a)(1). Plaintiffs argue that diversity does not exist here. It is undisputed that ML Servicing Co., Inc. and ML Liquidating Trust's ("Trust") trustee are both citizens of Arizona (Doc. 1 ¶¶ 5–6), that at least one beneficiary of the Trust is a citizen of New York (Doc. 14–3), that GT is a citizen

2011 WL 3320916

of New York (Doc. 1 ¶ 7), and that the Kant Defendants are citizens of Arizona (Doc. 1 ¶ 9). The Court will address the two parties at issue, namely the Trust Plaintiff and the Kant Defendants.

### A. Citizenship of Trust.

In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity. *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir.2006). In *Navarro Sav. Ass'n v. Lee,* the Supreme Court held that a business trust's trustees—who had legal title, managed assets, and controlled litigation—were the real parties to the controversy and could invoke diversity jurisdiction on the basis of their own citizenship without regard to the citizenship of the trust's beneficiaries. 446 U.S. 458, 465–66, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Ten years later, the Supreme Court stated that it has "never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). In clarifying *Navarro,* Justice Scalia explained that *"Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Id.* at 192–93. On the issue of whether a trust has the citizenship of only its trustees or of both its trustees and its beneficiaries, the circuits are split. *Carden* did not define which entities qualify as "members" for the jurisdictional analysis.

In this circuit, however, *Johnson* held that "[a] trust has the citizenship of its trustee or trustees." 437 F.3d at 899. Despite this unambiguous language, Plaintiffs contend that the Ninth Circuit has not addressed the issue squarely and that *Johnson* is not controlling because it did not consider the citizenship of the trust's beneficiaries when making its jurisdictional analysis. Doc. 23 at 5. Plaintiffs urge this Court to follow Third and Eleventh Circuit case law holding that a trust has the citizenship of its trustee(s) and beneficiaries. Doc. 23 at 4–7. Defendants argue that *Johnson* clearly holds that the citizenship of a trust is determined by the citizenship of its trustee only. Doc. 17 at 4.

Although the relevant language in *Johnson* is terse and relies on *Navarro,* the court appears to have considered *Carden* by citing to it more than once. Moreover, the language in *Johnson* is unambiguous. *Johnson* is binding on this Court, and therefore only the citizenship of the trustees is relevant. Because the trustee is a citizen of Arizona, the Trust also

is a citizen of Arizona. The dispositive issue, therefore, is whether the Kant Defendants—also Arizona citizens—have been fraudulently joined.

### B. Fraudulent Joinder.

**\*4** Removal under diversity jurisdiction is proper "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added); *see* 28 U.S.C. § 1332(a)(1). Because diversity jurisdiction requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants. *Morris v. Princess Cruises, Inc..,* 236 F.3d 1061, 1067 (9th Cir.2001) (citing *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)). "Nevertheless, one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.' " *Id.*

"[F]raudulent joinder is a term of art." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' " *Martori v. Golden Rule Ins., Co.,* Case No. 09–00212, 2009 WL 1257389 at *2–4 (D.Ariz. May 14, 2009) (quoting *Morris,* 236 F.3d at 1067).

In evaluating the allegations and evidence, courts employ a presumption against finding fraudulent joinder. *See Plute v. Roadway Package Sys., Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001); *Diaz v. Allstate Ins. Group,* 185 F.R.D. 581, 586 (C.D.Cal.1998). The Court must "resolve all ambiguities in state law in favor of the plaintiff[ ]." *Diaz,* 185 F.R.D. at 586. "[A]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." *Plute,* 141 F.Supp.2d at 1008; *see Levine,* 41 F.Supp.2d at 1078; *Charlin v. Allstate Ins. Co.,* 19 F.Supp.2d 1137, 1140 (C.D.Cal.1998).

Defendants argue that the claims against the Kant Defendants are time-barred and that their joinder therefore is fraudulent. As the removing party, Defendants must defeat the presumptions against removal and against a finding of fraudulent joinder by showing the statute of limitations under state law clearly bars the claim. *See Bertrand v. Aventis Pasteur Laboratories, Inc.,* 226 F.Supp.2d 1206, 1212 (D.Ariz.2002) ("To establish that an instate defendant has been fraudulently joined, the removing party must show" that

"there is no possibility that the plaintiff would be able to establish a cause of action against the instate defendant in state court"). The statute of limitations in Arizona for legal malpractice and breach of fiduciary duty is two years, and begins to run when the cause of action accrues. A.R.S. § 12–542. These causes of action accrue when (1) "the client knew or should have known of his attorney's negligence," and (2) "the plaintiff-client has sustained some injury or damaging effect from the malpractice." *Ariz. Mgmt. Corp. v. Kallof,* 142 Ariz. 64, 688 P.2d 710, 712–13 (Ariz.App.1984); *see also CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.,* 198 Ariz. 173, 7 P.3d 979, 981–82 (Ariz.App.2000).

 **\*5** "[U]nder Arizona law, the question of when [a client] knew or should have known of [an attorney's] negligence is critical in determining whether the statute of limitations has run." *Cannon v. Hirsch Law Office, P.C.,* 222 Ariz. 171, 213 P.3d 320, 331 (Ariz.Ct.App.2009) (quoting *Long v. Buckley,* 129 Ariz. 141, 629 P.2d 557, 559 (Ariz.Ct.App.1981)). The discovery issue itself involves questions of reasonableness and knowledge, matters which courts are particularly wary of deciding as a matter of law. *Id.* (citing *Long,* 629 P.2d at 560).

Defendants argue that Plaintiffs' complaint clearly demonstrates that Plaintiffs, through their predecessor ML, were on notice of all the facts underlying their claims against Kant and had allegedly suffered harm by June 20, 2008, the date ML was forced into voluntary bankruptcy. Doc. 10 at 7–8. Defendants cite the following allegations in the complaint, all occurring by June 20, 2008:(1) Kant had drafted his last ML POM; (2) ML Managing Director Robert Furst had become "very concerned about the inadequacies in [Mortgages Ltd.'s] disclosures to its investors, including the disclosures that had been prepared by GT and Kant;" and (3) ML was no longer raising money from investors or distributing the POMs drafted by Kant. *Id.*

Defendants also argue that even if Plaintiffs did not or should have not known of potential claims against the Kant Defendants by June 20, 2008, ML was directly informed that it might have claims against them on June 27, 2008. *Id.* at 8, 629 P.2d 557. Defendants cite a brief, filed by the group of creditors who forced ML into involuntary bankruptcy, stating that "[t]o the extent any improprieties tainted these private offerings, [Mortgages Ltd.'s] estate may possess claims against Greenberg for its work associated with the same." *Id.* Based on this statement, Defendants assert that there can be no doubt ML was on notice of its claims against Kant by the end of June 2008. *Id.*

Plaintiffs assert that ML did not know nor should it have known about actual claims against GT and Kant until the SEC Order was entered on January 19, 2010. Doc. 13 at 10. According to Plaintiffs, the SEC Order made it evident that Kant and GT had breached their duties to ML and failed to provide correct and complete legal advice regarding ML's securities. Doc. 14 at 5. If ML's cause of action did not accrue until the SEC Order was entered, ML's suit against the Kant Defendants would not be time-barred and the Kant Defendants would not be fraudulently joined.

Plaintiffs counter Defendants' argument regarding ML's knowledge before ML was forced into involuntary bankruptcy by stating that the Kant Defendants are merely speculating about when ML knew that it had viable claims against them. Doc. 13 at 10. Plaintiffs argue that ML's knowledge that it was in serious financial trouble does not equate to knowledge that GT or Kant had done anything to cause the financial trouble. *Id.* Plaintiffs also contend that ML would not have continued to allow GT to represent ML in its bankruptcy proceeding through May 2009 had ML known or even suspected that Kant and GT's action had caused ML to deepen its insolvency. *Id.;* Doc. 14 at 8.

 **\*6** Plaintiffs do not contest Defendants' statement that ML was directly informed it might have claims against Defendants on June 27, 2008. But Plaintiffs do contest Defendants' assertion that the June 27, 2008 brief created the knowledge or even reasonable suspicion of Plaintiffs' claims against the Kant Defendants that is required for the action to accrue. Doc. 14 at 7. The Court agrees. Simply because ML was informed that it might have claims against the Kant Defendants "to the extent that improprieties" occurred does not equate to ML's knowledge that it actually had those claims. Whether ML reasonably should have known that it had claims against the Kant Defendants on June 27, 2008 is a question of fact that cannot be resolved at this stage.

Given the presumption against fraudulent joinder and the factual issues that must be resolved before claims against the Kant Defendant are time-barred, the Court cannot conclude that fraudulent joinder has occurred. As already noted, "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." *Plute,* 141 F.Supp.2d at 1008. Because the Court cannot conclude that the Kant Defendants have been fraudulently joined, the Court lacks diversity jurisdiction and this case must be remanded. In light

ML Servicing Co., Inc. v. Greenberg Traurig, LLP, Not Reported in F.Supp.2d (2011)

2011 WL 3320916

of this ruling, the Court need not address whether the case should be remanded on equitable grounds under 28 U.S.C. § 1452(b). Because remand is appropriate, the Kant Defendants' motion to dismiss will not be ruled upon by this Court.

**IT IS ORDERED:**

1. Plaintiffs' motion to remand (Doc. 14) is **granted.**

2. The Clerk shall remand the action to the Maricopa County Superior Court.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3320916

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Negative Treatment**

There are no Negative Treatment results for this citation.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:26-cv-00311-RLP    ECF No. 1-3    filed 07/23/26    PageID.314    Page 266 of 275

VHS Liquidating Trust v. Blue Cross of California, Not Reported in B.R. Rptr. (2021)
2021 WL 11134503

2021 WL 11134503
Only the Westlaw citation is currently available.
United States Bankruptcy Court, N.D. California.

VHS LIQUIDATING TRUST, a liquidating
trust for Verity Health System of California,
Inc. A California corporation; et al. Plaintiffs,
v.
BLUE CROSS OF CALIFORNIA, et al. Defendants.

Case No. 21-4034
|
Signed: November 22, 2021

**Attorneys and Law Firms**

Tobias S. Keller, Thomas B. Rupp, Keller Benvenutti Kim LLP, San Francisco, CA, Mark McKane, Michael P. Esser, Kirkland & Ellis LLP, San Francisco, CA, David Zott (pro hac vice), Daniel Laytin, (pro hac vice), Zachary Holmstead (pro hac vice), Kirkland & Ellis LLP, Chicago, IL, Attorneys for Defendant Blue Cross Blue Shield Association.

Patrick M. Ryan, John F. McLean, Oliver Q. Dunlap, Sean R. McTigue, Bartko Zankel Bunzel & Miller, San Francisco, CA, Attorneys for Plaintiffs.

Timothy S. Laffredi Office of The United States Trustee, San Francisco, CA, Assistant United States Trustee.

**ORDER DENYING MOTION TO STAY
AND GRANTING MOTION TO REMAND**

Charles Novack, United States Bankruptcy Judge

**\*1** On November 12, 2021, this court conducted a hearing on a) Defendant Blue Cross Blue Shield Association's motion to stay this adversary proceeding pending the Judicial Panel on Multidistrict Litigation's resolution of plaintiffs VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc. and Prime Healthcare Management, Inc.'s objection to the conditional transfer of this adversary proceeding to the Northern District of Alabama, and b) Plaintiffs' motion to remand the adversary proceeding to Alameda County Superior Court. All appearances were noted on the record. For the reasons stated below, the motion to stay is denied and the motion to remand is granted.

The pertinent facts are not in dispute. In July 2021, Plaintiffs, which, as stated above, include VHS Liquidating Trust, an entity created by a confirmed Chapter 11 plan in the Central District of California case of *In re Verity Health Systems of California, Inc., et. al.*, sued numerous BlueShield/Blue Cross related entities in Alameda County Superior Court on allegations of price fixing and antitrust violations in the health insurance field (the "Alameda County litigation"). After Plaintiffs filed an amended complaint, the Defendants removed the Alameda County litigation to this court on September 22, 2021, alleging, as their jurisdictional basis, that the Alameda County litigation satisfied this court's "related to" jurisdiction under 28 U.S.C. § 1334(b). Defendants also contend that the Alameda County litigation bears striking similarities to the claims asserted in multidistrict litigation – *In re Blue Cross Blue Shield Antitrust litigation*, MDL No. 2406 – which is pending in the United States District Court for the Northern District of Alabama (the "MDL Court"). The Defendants notified the Judicial Panel on Multidistrict Litigation (the "MDL Panel") that this adversary proceeding may be a "Tag-Along Action," and as a result, the MDL Panel issued a Conditional Transfer Order on September 29, 2021. The Plaintiffs have objected to the transfer, and the MDL Panel will consider their objection in early December, 2021. In the interim, Defendant Blue Cross Blue Shield Association ("BlueCross/Blue Shield") filed a motion to stay this adversary proceeding pending the outcome of the transfer objection, which motion was filed on September 30, 2021. Plaintiffs thereafter filed their motion to remand.

Defendants contend that they are entitled to litigate in federal court under this court's "related to" jurisdiction. Their argument fully relies on VHS Liquidating Trust's presence in the litigation. Plaintiff VHS Liquidating Trust (the "Trust") was created under the confirmed Chapter 11 plan of reorganization in the Verity Health Systems' Chapter 11 bankruptcies. Verity Health Systems operated several hospitals and medical clinics throughout the State of California, and it filed a Chapter 11 bankruptcy in 2018 in the United States Bankruptcy Court for the Central District of California. [1] During its Chapter 11 (which was consolidated with several other Chapter 11 cases), Verity Health Systems sold several of its hospital centers (including the Seton and St. Francis Medical Centers). The Seton and St. Francis Medical Center asset purchase agreements extensively documented the terms of sale, and they provided, among other things, that the Verity Health bankruptcy estate would retain certain assets of these medical centers (the purchase agreements frequently

described these retained assets as "Excluded Assets"). For example, the Seton Medical Centers' APA "Excluded Assets" provision defines the assets retained by the Verity bankruptcy estate as:

**\*2** "except as set forth in Section 1.7(w) and 1.8(g), all claims, counterclaims and causes of action of such Seller or such Seller's bankruptcy estate ... including, without limitation, rights of recovery or set-off of every kind and character against third parties, causes of action arising out of any claims and causes of action under chapter 5 of the Bankruptcy Code and any related claims, counterclaims and causes of action under applicable non-bankruptcy law, and any rights to challenge liens asserted against property of such Seller's bankruptcy estate, including, but not limited to, liens attaching to the Purchase Price paid to such seller, and the proceeds from any of the foregoing ...."

See § 1.8(i) of the Seton APA [2]. It therefore appears that the Verity Health bankruptcy estate retained the antitrust/price fixing claims that accrued before the Seton Medical Centers' sale.

[1] The Plaintiffs allege in their complaint that the low Blue Shield/Blue Cross reimbursement rates were one of the reasons for Verity Health's bankruptcy filing.

[2] The Seton asset purchase agreement is generally governed by California law. *See* Seton APA § 12.3.

Verity Health Systems filed its modified second amended Chapter 11 plan on August 12, 2020 (the "Plan"), which was confirmed on August 14, 2020. The Plan called for the Chapter 11 debtors' liquidation, and it created the Trust for that purpose. The Trust's primary function is to liquidate and distribute the "Trust Assets," a phrase which, when several Plan definitions are consulted, includes the type of anti-trust/ price fixing claims asserted in this adversary proceeding. *See, e.g.*, Plan §§ 1.30, 1.97, 1.115, 6.2 and 13.9. The claims at issue in this adversary proceeding constitute one of many classes of litigation claims that were transferred to the Trust for prosecution (*see* Plan § 13.9), and neither the Plan nor its disclosure statement further defined, assessed or valued them. The Plan further provides in § 6.5(g) that "[o]n and after the Effective Date, the Liquidating Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or Governmental Unit and/or provide any notices under any applicable laws ... to implement the terms of the Plan." While

the Plan was confirmed more than a year ago, the Chapter 11 case remains open.

The Alameda County litigation claims are premised on the anti-trust provisions (and related laws) of several states. The Trust describes itself and the claims it is pursuing in paragraphs 110 through 114 of the complaint:

"110. Plaintiff VHS Liquidating Trust ("Verify") is the bankruptcy liquidator for Verity Health System of California, Inc.

111. Verity Health System of California, Inc. was a not-for-profit healthcare services organization based in California. It was the sole owner of six medical centers serving the San Francisco, Los Angeles, and San Jose metropolitan areas: Seton Medical Center in Daly City, Seton Coast in Moss Beach, St. Vincent Medical Center in Los Angeles, O'Connor Hospital in San Jose, St, Louise Regional Hospital in Gilroy and St. Francis Medical Center in Lynwood. These hospitals had 1,650 patient beds, 6 active emergency rooms, a trauma center, and a host of medical specialities including tertiary and quaternary care.

112. Verity Health System of California, Inc. filed for bankruptcy on August 31, 2018.

113. The Bankruptcy Court on August 14, 2020 ordered the creation [of] Verity (VHS Liquidating Trust) and subsequently vested in it and transferred to it the Verity Health System of California, Inc. claims asserted in this lawsuit.

114. Thus, Verity controls the claims of St. Louise, St. Francis (up until the date of its sale to Prime), St. Vincent, Seton, Seton Coastside, and O'Connor hospitals, their affiliated medical foundations and affiliates, and Verity Health System of California, Inc."

**\*3** As described in more detail below, the Defendants assert that the Trust may have overstated the scope of its claims. The court now turns to the two motions before it.

## MOTION TO STAY

While the pertinent facts are not in dispute, the parties wholeheartedly disagree a) regarding which legal standard this court should apply to determine the motion to stay, b) which motion (stay or remand) should be decided first, and c) whether this court should even reach the motion to remand.

In truth, these motions simply debate which court – the MDL Court or this bankruptcy court – should determine the motion to remand. Plaintiffs do not strongly dispute that their causes of action resemble those pending in the MDL Court, and their objection to the MDL Panel's conditional transfer order simply restates their contention that there is no subject matter jurisdiction here. Moreover, their Alameda County litigation complaint alleges that some of the MDL Court's substantive rulings demonstrate the strength of their anti-trust claims.[3] Simply, the critical issue is whether, under these circumstances, this court should defer to the MDL process, stay the litigation, and not decide what is usually a gatekeeper question: subject matter jurisdiction.

[3]    The Rules of the MDL Panel do not favor either side. MDL Rule 2.1(d) states that "[t]he pendency of a motion ... [or] conditional transfer order ... before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court."

Generally speaking,

> "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. While a district judge 'should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation,' '[c]ourts frequently grant stays pending a decision by the MDL panel regarding whether to transfer a case.' " [citations omitted.]

*Johnson v. Sanofi, S.A.*, 2017 WL 132631, *2 (E.D.Cal. April 11, 2017).

Plaintiffs contend that this court should apply the so called "*Meyers*" test to determine the order in which to resolve the stay and remand motions. This test, arising out of *Meyers v. Bayer AG*, 143 F.Supp. 2d 1044 (E.D.Wisc. 2001), requires a court to initially scrutinize the remand motion to determine its degree of difficulty, ascertain whether the MDL court has considered or is likely to consider an identical or similar subject matter jurisdiction question, and if both elements are met, address the motion to stay first. Blue Cross/Blue Shield posits another test. It argues that since the Ninth Circuit has not adopted the *Meyers* test, this court should apply the

"*Rivers*" test, which is based on more generic, albeit well-established Ninth Circuit case law which instructs a court to consider whether a stay will promote judicial economy and avoid prejudice and hardship for the parties. *See Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D.Cal. 1997); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The *Rivers* test assesses "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation." *Rivers, supra*, at 1360. Regardless of the test used, the party seeking the stay bears the burden of establishing that a stay is appropriate. *Ohio Envtl. Council v. U.S.Dist. Court*, 565 F.2d 393, 396 (9th Cir. 1977). Numerous District Courts within the Ninth Circuit have addressed this conflict[4].

**\*4**   "Despite their slightly different formulations, both tests focus on the same essential inquiry: how similar is the jurisdictional issue in the instant case to cases that are or will be in the MDL? If the remand issue is highly similar to cases in the MDL, then judicial economy counsels in favor of a stay so that, if transferred, the MDL court can resolve all the related issues together. However, if the remand issue is unique to the case at hand, no efficiencies are achieved through transfer – the same amount of judicial resources must be expended, whether by the transferee court or the MDL court." *City of Corona v. 3M Company*, 2021 WL 3829700, *2 (C.D.Cal. 2021).

[4]    The court respectfully refers the parties to their memoranda for evidence of this conflict.

Regardless of which test is applied, the motion to stay is denied. While Blue Shield/Blue Cross is only seeking a short reprieve, a stay under the *Rivers* test will not conserve judicial resources or eliminate prejudice or inequity (particularly because none exist). First, there is no evidence indicating that the MDL Court has or is likely to address the specifics of this subject matter jurisdiction question. Since the parties' alleged jurisdictional dispute arises from the terms of a carefully crafted Chapter 11 plan, extensively negotiated asset purchase agreements, and a lengthy superior court complaint, it is hard to imagine how the MDL Court would ever address this exact (or similar) fact pattern. For the same reasons, neither Plaintiffs nor Defendants have demonstrated that they will be prejudiced or harmed by this court denying the stay and determining the motion to remand. Simply, some court must resolve the question of subject matter jurisdiction, and this court is in as good a position to decide the remand motion as

the United States District Court for the Northern District of Alabama. [5]

[5]  This court recognizes that its remand order could be reviewed by the MDL Court if the MDL Panel overrules the Plaintiffs' objection to its conditional transfer order. Under such a scenario, two courts indeed might consider the same motion. See *In re Aldelphia*, 2005 WL 1026559 (S.D.N.Y. May 2, 2005). This court does not believe, however, that this prospect should deter it or any other bankruptcy court from carefully considering the merits of competing motions to stay and remand and determining how to proceed.

Application of the *Meyers* test leads to the same result. Notwithstanding the results of a preliminary scrutiny of the subject matter jurisdiction question, there is no evidence that the MDL Court has addressed or will address an identical or similar jurisdiction scenario. Accordingly, deferring to the MDL process will not avoid possibly inconsistent or contradictory subject matter jurisdiction analyses.

**MOTION TO REMAND**

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.3d 709, 712 n.3 (9th Cir. 1990). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Blue Cross/Blue Shield argues that this court has "related-to" jurisdiction under 28 U.S.C. § 1334(b). The Defendants' Notice of Removal supports this contention by stating, among other things, that the Plan "explicitly reserves to the Liquidating Trust claims 'arising from claims against health Plans' such as the Blue Plans," and that any damages that the Trust may recover on these claims "would likely affect the administration of the estates and the amount of property available for distribution." Notice of Removal, ¶¶ 30 – 32. The Notice of Removal also alleges (notwithstanding its earlier statement that the Plan explicitly assigned the claims to the Trust) that the Trust's standing to assert some portion of its anti-trust/price fixing claims may be in question and thus require this court to interpret the Plan:

**\*5**  "Specifically, Plaintiffs seek damages for hospitals that were allegedly harmed by Defendants' conduct starting in 2008 and continuing until today, and seek to recover

assets. Compl. ¶ 627. The Liquidating Trust, however, did not receive a wholesale transfer of every hospital's assets; the Plan's definition of 'Liquidating Trust Assets' carves out, inter alia, 'Operating Assets' as well as 'Hospital Purchased Assets,' Plan § 1.97. [6] An interpretation of the Plan may therefore be necessary in this Action." Notice of Removal, § 33.

[6]  The Plan defines the phrase "Hospital Purchased Assets" as "the assets purchased by Prime and AHMC pursuant to the [St. Francis] Asset Purchase Agreement and the Seton Asset Purchase Agreement, respectively. For the avoidance of doubt, the Hospital Purchased Assets relate only to the Hospitals subject to the [St. Francis] and Seton Sale. The Plan defines "Operating Assets" to "mean, collectively, (a) the Hospitals; (b) the Hospital Purchased Assets; and (c) the Post-Effective Date Debtors' right to Quality Assurance Payments." Defendants have not stated how these definitions bring into substantial question the Trustee's "standing."

Defendants' arguments, while artfully drafted, are insufficient. The Ninth Circuit's general test for determining whether a bankruptcy court has post-confirmation, "related-to" jurisdiction is well established. Such related-to jurisdiction requires "a 'close nexus' to the bankruptcy plan or proceeding sufficient to uphold bankruptcy jurisdiction over the matter." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005). Matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Ibid*. Application of the close nexus test "requires particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013). The *Wilshire* court cautioned that the test "can only be properly applied by looking at the whole picture." *Ibid*.

While the Ninth Circuit has not provided explicit guidance regarding which factors should be considered nor "the relative importance to ascribe to each factor," *In re Consol. Meridian Funds*, 511 B.R. 140, 147 (W.D.Wash. 2014), certain patterns can be discerned. First, matters that truly involve the interpretation or enforcement of a significant plan provision create a close nexus. The case summaries provided by the District of Hawaii in *Batiste v. Sun Kon Fin. I, LLC*,

Case 2:26-cv-00311-RLP ECF No. 1-3 filed 07/23/26 PageID.318 Page 270 of 275

VHS Liquidating Trust v. Blue Cross of California, Not Reported in B.R. Rptr. (2021)
2021 WL 11134503

2016 U.S. Dist. LEXIS 23697 (D. Hawaii February 26, 2016) are instructive.

> "[I]n *Pegasus*, the court found a close nexus where the complaint included allegations that the appellants in the case had 1) breached both the bankruptcy plan and a settlement agreement approved by the bankruptcy court prior to confirmation of the plan; 2) breached "the covenant of good faith and fair dealing with respect to these agreements"; and 3) "committed fraud in the inducement at the time it entered into" the agreements. 394 F.3d at 1194. The court determined that "[r]esolution of these claims will likely require interpretation of the [settlement] Agreement and the Plan," id., contrasting the case with Resorts Int'l, in which the Third Circuit found the bankruptcy court lacked jurisdiction where the claim at issue did not require that a court "interpret or construe the Plan or the incorporated Litigation Trust Agreement," id. (quoting *Resorts Int'l*, 372 F.3d at 170). The court acknowledged that "the majority" of the claims in the complaint involved only "post-confirmation conduct," but did not view these claims as barring the bankruptcy court's "related-to" jurisdiction. Id.

> **\*6** Similarly, in *Wilshire*, the Ninth Circuit determined there was a close nexus where "the ultimate merits question depend[ed] in part on the interpretation of the confirmed Plan." 729 F.3d at 1289. Although the court acknowledged that the "Plan itself [was] ambiguous" as to a key issue raised in the relevant litigation and "ma[de] no mention of state tax consequences" also at issue, the court held that resolution of these issues would "require[ ] a close look at the economics of the transaction [at issue] as detailed in the Plan and Confirmation Order." Id. More recently, in *In re Valley Health System*, 584 Fed. App'x. 477, 479 (9th Cir. 2014), the Ninth Circuit cited affirmatively to *Wilshire* in determining that "related-to" jurisdiction existed post-confirmation where resolution of the mandamus petition at issue required interpretation of the bankruptcy plan and the bankruptcy court's confirmation order.

Id. at \*\*218-20.

Second, the litigation of a significant claim by a liquidating trustee that was expressly part of the "calculus of the parties when negotiating the Plan" is a factor that may be considered in determining jurisdiction. In *Calvert v. Berg (In re Consol. Meridian Funds)*, 511 B.R. 140 (Dist.W.Wash. 2014), the District Court reversed the bankruptcy court's finding that there was no "related-to" jurisdiction over a liquidating trustee's professional negligence and fraud claims against the Chapter 11 debtor's controlling officer and pre-petition accountants/auditors. The confirmed Chapter 11 plan in that case created a liquidating trust and assigned to it, among other things, any claims that the participating investors in the failed investment funds had against the fund's auditors/accountants, and the funds controlling officer. The trustee commenced his action in bankruptcy court, and the defendants successfully moved to dismiss for lack of "related-to" jurisdiction. The District Court reversed, holding that several factors favored a finding of a "close nexus" between the adversary proceeding and the Chapter 11 plan. The District Court noted that the potential claims against the auditor "were specifically mentioned" in the Plan and assigned to the trustee for the purpose of benefitting the investors. It also found that the parties "expressly considered those claims and their value when negotiating the Plan and the trustee has sought to implement and execute the terms of the Plan by pursuing those claims." The District Court also determined that there were potential statute of limitations and standing issues regarding the liquidating trustee's right to assert the claims which would require the presiding court "to discern" the meaning and effect of the Plan. Under these circumstances, the District Court found that there was "related-to" jurisdiction.

Finally, many courts have held that there is "no-related" jurisdiction when its only justification is the litigation of a claim that, if successful, may lead to a greater plan distribution to creditors. *See, e.g.*, *In re Heller Ehrman LLP*, 461 B.R. 606, 610 (Bankr. N.D.Cal. 2011); *ML Servicing Co. v. Greenberg Traurig, LLP*, 2011 U.S. Dist. LEXIS 85066 (D.Az., August 2, 2011).

When reduced to its essence, this adversary proceeding involves nothing more than the liquidating trustee pursuing one of many classes of litigation claims that the Plan assigned to the Trust to pursue on behalf of creditors. Section 13.9 of the Plan listed thirteen categories of litigation claims that were assigned to the Trust, and they are all generically described. In contrast to the scenario presented in *In re Meridian Funds*, the Plan and accompanying disclosure statement did not value the claims at issue, and there is no evidence that the transfer of these claims to the Trust was a significant point of contention or negotiation between the interested parties in the *Verity Health System* bankruptcy. Moreover, if the proposed Plan is a liquidating one, where else can these claims go? Blue Shield/Blue Cross acknowledges the explicit language of Plan § 13.9, but contends that the scope of the assigned health

2021 WL 11134503

care plan claims may require a court to interpret the Plan (in particular, whether these claims are possibly "Operating Assets" or "Hospital Purchase Assets" that thus not included in the Claims for Relief assigned to the Trust). Absent some cogent analysis regarding how these other asset categories create a bonafide dispute that requires this court to "interpret" the Plan, Blue Shield/Blue Cross's argument leaves this court wanting. The court should not find "related-to jurisdiction" on a speculative assessment regarding how state law litigation

may unwind. Accordingly, Plaintiffs' motion to remand is granted.

**\*7  \* \* \* END OF ORDER \* \* \***

**All Citations**

Not Reported in B.R. Rptr., 2021 WL 11134503

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

**Negative Treatment**

There are no Negative Treatment results for this citation.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:26-cv-00311-RLP    ECF No. 1-3    filed 07/23/26    PageID.321    Page 273 of 275

In re Bergeron, Not Reported in Fed. Supp. (2025)

**2025 WL 1167929**
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

IN RE: Carmen Astrid BERGERON, Debtor.
Carmen Astrid Bergeron, Defendant/Appellant,
v.
Edmund J. Wood, Trustee., Plaintiff/Appellee.

CASE NO. C24-1682 MJP
|
Bankruptcy No. 23-12506-CMA
|
Signed April 22, 2025

**Attorneys and Law Firms**

Carmen Astrid Bergeron, Everett, WA, Pro Se.

Rory C. Livesey, The Livesey Law Firm, Seattle, WA, for Plaintiff/Appellee.

ORDER DENYING MOTION FOR LEAVE
TO FILE INTERLOCUTORY APPEAL

Marsha J. Pechman, United States Senior District Judge

 **\*1** This matter comes before the Court on Appellant's "Motion for Leave to Appeal Interlocutory Order." (Dkt. No. 15.) Having reviewed the Motion and all supporting materials, the Court DENIES the Motion.

The Court previously dismissed this bankruptcy appeal for lack of jurisdiction because Appellant seeks to appeal a non-final order of the Bankruptcy Court. (Order of Dismissal at 2 (Dkt. No. 9).) Although the case has been dismissed and the Court has denied a motion for reconsideration, Appellant now argues that the Court should exercise jurisdiction over the appeal on the theory that the Court should exercise its discretion to consider an interlocutory appeal under 28 U.S.C. § 158(a)(3). The Court does not agree.

If an order is not final, the Court may exercise jurisdiction to hear an appeal of an interlocutory order of a bankruptcy court if it grants leave to appeal. See 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8002, 8004(a)(2)(b). Leave to appeal an interlocutory order is appropriate where (1) there is a controlling question of law, (2) as to which a substantial ground for a difference of opinion exists, and (3) an immediate appeal could materially advance the ultimate termination of the litigation. See In re Cement Antitrust Litig. (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981) (under Section 1292(b), an interlocutory appeal is within court's discretion where there is a controlling question of law, substantial grounds for difference of opinion, and the appeal may materially advance the ultimate termination of the litigation, as well as under "exceptional circumstances"). In deciding whether to grant leave to appeal under Section 158(a)(3), courts look to the analogous provisions of 28 U.S.C. Section 1292(b) governing review of interlocutory district court orders by the courts of appeal. See Belli v. Temkin (In re Belli), 268 B.R. 851, 858 (9th Cir. BAP 2001).

There are two flaws with Appellant's argument. First, Appellant failed to raise the theory in either her response to the Motion to Dismiss or the Motion for Reconsideration. The argument was therefore waived and there are no grounds to permit this attempt to relitigate the issue. Second, even if the Court considers the late-identified theory, it finds Appellant has not identified sufficient grounds to grant leave for an interlocutory appeal. Appellant suggests that the order being appealed presents a variety of issues implicating due process, trustee fraud and abuse, and other related issues. But the order being appealed does not contain the issues as Appellant frames them. Even if it did, Appellant has not identified any grounds to find a substantial difference of opinion on these issues or why an immediate appeal would advance the ultimate termination of the litigation. Accordingly, the Court finds no grounds to entertain the interlocutory appeal. For these two independent reasons, the Court DENIES the Motion.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 1167929

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

In Re:

iCAP ENTERPRISES, INC., *et al.*

                        Debtors.

Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,

       Plaintiffs,

v.

Perkins Coie LLP, a Washington limited liability partnership,

       Defendant.

Case No. _____

United States Bankruptcy Court for the Eastern District of Washington Lead Case No. 23-01243-WLH11 (Jointly Administered)

Adv. Case No. 25-80084-WLH

[PROPOSED] ORDER GRANTING DEFENDANT PERKINS COIE LLP'S MOTION FOR LEAVE TO APPEAL ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

THIS MATTER came before the Court upon the Motion for Leave to Appeal Order Denying Motion to Dismiss for Lack of Subject-Matter Jurisdiction (the "Motion") submitted by Defendant Perkins Coie LLP. The Court has reviewed the Motion and the record and files herein and finds cause to order the requested relief. Now, therefore, it is hereby ORDERED AS FOLLOWS:

1.    The Motion is GRANTED. Pursuant to 28 U.S.C. § 158(a)(3), Perkins Coie LLP is granted leave to appeal from the Bankruptcy Court's Order on Perkins Coie LLP's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [ECF 38].

[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO APPEAL
Page 1

/// End of Order ///

Presented By:

MUNDING, P.S.


By: /s/ John D. Munding
John D. Munding (WSBA #21734)
309 E. Farwell Road, Suite 310
Spokane, WA  99218
Telephone: 509.590.3849
Email: john@mundinglaw.com


and


WHEELER, TRIGG, O'DONNELL LLP


By: /s/ Nicholas J. Steverson
Carolyn J. Fairless (admitted pro hac vice)
Jennifer J. Oxley (admitted pro hac vice)
Nicholas J. Steverson (admitted pro hac vice)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:   303.244.1879
Email: fairless@wtotrial.com
       oxley@wtotrial.com
       steverson@wtotrial.com


*Attorneys for Defendant Perkins Coie LLP*


[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO APPEAL
Page 2